**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL,<br><br>    **Plaintiffs,**<br><br>vs.<br><br>McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG<br><br>    **Defendants.** | **Case No. 1:20-cv-00117**<br><br>**Honorable Mary M. Rowland**<br><br>**Jury Trial Demanded** |

## AMENDED COMPLAINT FOR DEPRIVATIONS OF CIVIL RIGHTS

Plaintiffs, Victoria Guster-Hines and Domineca Neal, by attorneys Carmen D. Caruso and Linda C. Chatman, bring suit under the Civil Rights Act of 1870 (42 U.S.C. §1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et.seq., against Defendants McDonald's USA, LLC, McDonald's Corporation, Steven Easterbrook, Christopher Kempczinski, and Charles Strong to redress intentional race discrimination, disparate treatment, hostile work environment and unlawful retaliation.

## INTRODUCTION

1

1.     Plaintiffs Victoria Guster-Hines ("Vicki") and Domineca Neal ("Domineca") are African American senior executives at McDonald's USA, LLC, the franchisor of the McDonald's restaurant system in the United States.  They bring suit to redress McDonald's continuing pattern and practice of intentional race discrimination that should outrage everyone, especially those who grew up going to McDonald's and believing the "Golden Arches" were swell.

2.     Vicki joined McDonald's in 1987 and Domineca joined McDonald's in 2012.  They are highly qualified, high-achieving franchising executives, but McDonald's subjected them to continuing racial discrimination and hostile work environment impeding their career progress, even though they both did great work for McDonald's, which the Company consistently acknowledged in their performance reviews. And then, when they protested internally not only for themselves but for all other similarly situated African Americans, McDonald's subjected them to unlawful retaliation that was irrational, vile, and cruel.

3.     In the United States, the McDonald's restaurant system grew to  over 14,000 franchised restaurants and 683 company-owned McDonald's restaurants across the U.S.A. by the end of 2018.

4.     Over the years McDonald's engaged in systematic but covert racial discrimination impeding the career progress of its African American executives, including these Plaintiffs, but in 2015, things turned sharply for the worse. McDonald's Corporation (the global parent company) imported Defendant Steven Easterbrook from England to be its president and CEO, to replace Don Thompson,

2

who had been the only African American to hold these top positions in the Company's history. Easterbrook quickly proclaimed McDonald's intent to be "seen as a modern, progressive burger company"[1] and to be "more progressive around our social purpose in order to deepen our relationships with communities on the issues that matter to them."[2] But instead of "*deepen[ing] [its] relationships with [the African American community] on the issues that matter to them,"* McDonald's vision of "progress" under Easterbrook and Chris Kempczinski, then president of McDonald's USA who had been hand-picked by Easterbrook, intentionally discriminated against African Americans in multiple, interrelated, overt, unmistakable, non-coincidental and highly damaging ways, severely injuring both Vicki Guster-Hines and Domineca Neal.

### Under Easterbrook and Kempczinski, McDonald's *Expressly* Abandoned Its Commitment to Racial Equality

5. On its corporate web page, where the Company has total control over its message, McDonald's under Easterbrook and Kempczinski proclaimed a commitment to gender diversity but conspicuously omitted any mention of a corresponding commitment to diversity based on race. McDonald's stated:

> "Building a gender-balanced organization is a strategic priority for McDonald's, as it helps us better understand and meet the needs of our customers, enables us to access the talent we need to succeed, and is at

---

[1] https://www.npr.org/2015/05/04/404236476/McDonald's-plans-to-rebrand-itself-as-a-progressive-burger-company (Screenshot November 4, 2019 -- Exhibit A).

[2] https://www.nationalreview.com/2015/06/why-does-McDonald's-want-rebrand-progressive-burger-company-george-will/ (Screenshot November 4, 2019 – Exhibit B).

the heart of our culture, where we want everyone to feel safe, valued, and free to be themselves."[3]

6.     This omission accurately reflects that under Easterbrook and Kempczinski, McDonald's became *overtly* hostile to African Americans in both words and deeds.  The Company made no effort to "build a [racially] balanced organization" and include African Americans in "*the talent [it] need[ed] to succeed;*" and it did not try to include African American women in the "*everyone*" that McDonald's wants to "*feel safe, valued and free to be themselves.*"  To reiterate this point, at a meeting of the National Black McDonald's Operators' Association (NBMOA) in 2016, and on other occasions, Easterbrook confirmed that "diversity" at McDonald's meant "women", omitting African Americans.  Kempczinski further reiterated this exclusion in April 2019 at a meeting requested by senior African American executives to discuss the lack of African American representation in upper management, when he stated point blank that the "*numbers [of African Americans] don't matter.*"

7.     In making these statements and allowing themselves to be quoted, Easterbrook and Kempczinski were *not merely* making a brazen admission the Company had become overtly racist against African Americans. They were purposefully and maliciously insulting the intelligence of everyone within earshot:  it was well-known that Easterbrook and Kempczinski were striving to make McDonald's *a data driven company* in which *number*s are all-important[4] -- *except*

---

[3] https://corporate.McDonald's.com/corpmcd/scale-for-good/our-people-and-communities/gender-balance-and-diversity.html  (Screenshot November 4, 2019 – Ex. C).

[4] *See* https://medium.com/@Orcanintell/how-does-mcdonalds-use-big-data-439403bc3fee  (April 18, 2018) (screenshot January 6, 2019) (Ex. D):  "With their daily customer traffic reaching numbers as huge as 60 million in over 100 countries, it's clear that McDonalds has a wealth of data on their

4

when it came to African Americans in senior management, when suddenly "*numbers don't matter*" according to Kempczinski, who was acting as a proxy for Easterbrook. These statements by the Company's leaders were an intentional slap in the face to African American senior executives, franchisees, customers, supply chain members, and other business partners.

8.    McDonald's racist conduct under Easterbrook and Kempczinski matched their racist words.  When Easterbrook replaced Don Thompson, he inherited a Company in which senior African American employees (including Vicki Guster-Hines) had created a vibrant employee group, the McDonald's African American Council (MA2C), that worked hard to develop African American leadership talent in the Company and in the ranks of its franchise owners (by supporting the efforts of the NBMOA), and contributing to the Company's revenues and profitability.  Both Vicki and Domineca Neal had been active in the MA2C.

9.    After Easterbrook and Kempczinski arrived, the MA2C strangely went dormant.  The MA2C's support structure, activities and budgets were rendered useless.    The programs to build and support African American talent development pipeline quietly went away, sending another unmistakable message to all African Americans in the McDonald's community (and anyone else paying attention) that the

---

customers just waiting to be turned into measurable metrics for analysis. *McDonalds [has] evolved into a more information-centric company that is inherently driven by data based decisions.* By combining data across every McDonalds store and creating data visualizations, the chain [is] able to create more comparable insights that would help garner a more holistic view of their customers. This meant that they [are] more able to create relevant and actionable outcomes, resulting in time and money saved."  (Emphasis added).

dream of racial equality was dead and buried at this supposedly All-American iconic company.

10.     No one announced that the MA2C was being put out to pasture, but at McDonald's, no one under the level of Easterbrook or Kempczinski would have dared diminish the MA2C without their express or tacit approval.  Easterbrook and Kempczinski excluded African Americans from their inner circles of trusted advisors, such as Defendant Charles Strong, who they used to carry-out their ruthless humiliation and expulsion of highly qualified African Americans including Vicki and Domineca.  In shocking ways difficult to overstate, McDonald's under Easterbrook and Kempczinski declared war against the African American community.

11.     Furthermore, McDonald's, Easterbrook and Kempczinski have tried to hide the true depth of their racism against African Americans by lauding McDonald's "pseudo" diversity, using code words such as "people of color" but failing to acknowledge the exclusion of African Americans from the "people of color" that have supposedly done well at McDonald's in the Easterbrook/Kempczinski era.

### McDonald's Unprecedented Loss of African American Customers and Franchisees

12.     Nowhere was McDonald's corporate racism under Easterbrook and Kempczinski more plainly visible than by omission at the cash registers of McDonald's restaurants across the United States.  Historically, as the result of marketing that cultivated African American patronage (in which talented African Americans marketing personnel had played a role in developing and successfully implementing), African American consumers were *over-represented* at McDonald's

cash registers, generating about 20% of all revenue in McDonald's U.S. restaurants (as approximately 13% of the U.S. population in the 2010 Census).

13.    Easterbrook and Kempczinski caused McDonald's to decrease the advertising to attract African American patronage.  The plainly foreseeable result was that system-wide purchases by African Americans as a percentage of total U.S. customers declined by six percent (6%) from 20% to 14% in 2019.  There was no corresponding decrease in marketing intended to attract Hispanic customers.  As a consumer block, African Americans were singled out as less desired by McDonald's.

14.    This staggering loss of approximately 6% of its total U.S. customer base occurred just as McDonald's (a data-driven Company under Easterbrook and Kempczinski) was hypocritically proclaiming in its 2017 "Velocity Growth Plan" that *retaining existing customers* and *regaining lost customers* were key business goals.[5] Losing 6% of its customers would presumably alarm any business, but not McDonald's, which had no rational business justification for accepting these multiyear losses that harmed every McDonald's restaurant in America and harmed the Company, which earns revenue only when consumers purchase its product in a franchised or non-franchised restaurant. As plain as day, McDonald's no longer valued African American as paying customers under the Golden Arches (where the Company was simultaneously working to re-image the look and feel of its restaurants to reflect a sleeker and more modern image).

---

[5] *See* "Velocity Growth Plan" introduced March of 2017 -- www.corporate.mcdonald's.com/investors/overview (Screenshot November 4, 2019 -- Ex. E).

15.     Furthermore, this highly noticeable loss of approximately 6% of its total U.S. customer base coincided with a startling decrease in restaurants owned by African Americans to the point the NBMOA became highly critical of McDonald's in the Easterbrook/Kempczinski years – a fact well-known to Vicki, Domineca and other African American executives at the Company that were appalled by these developments and protested internally.  Nearly one out of three African American franchisees left the McDonald's system since Easterbrook arrived, which was starkly disproportionate to the loss of non-African American franchisees.

16.     The disproportionate loss of nearly one-third of the African American franchisees in the Easterbrook and Kempczinski era was intentional or, in the alternative, it was in reckless disregard of plainly foreseeable consequences of business decisions made by Easterbrook and Kempczinski and their minions. Without limitation, McDonald's imposed onerous costs on its franchisees by requiring them to make expensive capital expenditures, most notably through a program known as "Big Bolder Vision 2020" (BBV2020) that McDonald's rolled out in 2017, sparking widespread franchisee discontent.   McDonald's knew or recklessly disregarded the likelihood that BBV2020 (among other financial stresses imposed by the Company) would put disproportionate financial stress on African American franchisees and cause a disproportionate number of them to leave the system. McDonald's knew but did it anyway.

17.     McDonald's uses strong-arm tactics to drive unwanted franchisees out of the system, such as unfairly grading franchised restaurants and jeopardizing a

franchisee's rights under his or her franchise agreement; and then preventing an unwanted franchisee from selling his or her restaurants in an open market. All McDonald's franchisees are vulnerable to these strong-arm tactics (among others) but, on information and belief, African American franchisees were disparately strong-armed, driving them out of the system in record numbers, and damaging them by the loss of equity in their businesses.

18. The foreseeable disproportionate loss of African American franchisees in the Easterbrook and Kempczinski era occurred simultaneously with a business decision by McDonald's to reduce its restaurant ownership, significantly increasing franchisee ownership and operations responsibility. In recent filings with the Securities & Exchange Commission, McDonald's acknowledged it is more reliant on "the financial success and cooperation of its franchisees" including their "willingness and ability … to implement major initiatives" including "financial investment[s]" and to "remain aligned with [McDonald's] on operational, promotional and capital-intensive reinvestment plans."[6] However, the Company failed to disclose it was disproportionally excluding African American franchisees from the Owners/Operators it hoped would achieve "financial success" and sought to align with.[7]

19. By systematically devaluing and discarding African American franchisees and customers, McDonald's waged insidious psychological warfare on its

---

[6] *See https://corporate.McDonald's.com/content/dam/gwscorp/investor-relations-content/company-overview/2Q_2019_Risk_Factors.pdf* (Screenshot November 4, 2019) – Ex. F).

[7] The term Owner/Operator (or just Owner, or just Operator) reflect McDonald's nomenclature and are synonymous with "franchisee" – meaning a person or entity that purchased a franchise as defined by the Federal Trade Commission at 16 CFR 436.1.

African American executives, who were in positions to see the big picture racial carnage, but were powerless to stop it. As African Americans themselves, they were forced to face the fact that McDonald's necessarily held them in contempt along with the franchisees and customers. Consequently, Vicki and Domineca suffered a personal and disparate impact from McDonald's racially hostile treatment of African American franchisees and customers. Non-African Americans did not have that personal connection.

### McDonald's Purges African Americans from Senior Leadership

20.    Having publicly abandoned its commitment to racial equality, caused increasing numbers of African American consumers to make their restaurant purchases elsewhere, and driven nearly one out of three African American franchisees out of the system often into financial ruin, McDonald's under Easterbrook and Kempczinski conducted a ruthless purge of African Americans from the ranks of its senior executives. Through the racist eyes of McDonald's leadership, African American senior executives were: (i) *less necessary* since there were fewer African American customers to serve and fewer African American franchisees to work with; and (ii) *less desirable* because African American executives were in positions to see the "big picture" systemic discrimination, and potentially blow the whistle. The fewer African Americans with an inside view of the Company's racist conduct, the better for Easterbrook and Kempczinski and their minions at McDonald's.

21.    Between 2014 and 2019, McDonald's terminated thirty (30) African American Officers who were Vice-Presidents or higher; and demoted six (6) African

American Officers who were Vice-Presidents or higher (including Vicki and Domineca) with a commensurate benefit reduction and loss of stature and future opportunities. Combining the dismissals and demotions, McDonald's reduced its total of African American Officers at the level of Vice President or higher from forty-two (42) to seven (7).[8]

22.     White Officers at the level of Vice President or higher were not purged in anything close to the same or comparable numbers.

23.     McDonald's disproportionate elimination of African Americans from executive leadership at the level of Vice President or higher (including but not limited to Vicki and Domineca) was race conscious, intentional, undeserved, and not justified by the merits of their comparative job performance or any legitimate business reasons.

24.     McDonald's disproportionate elimination of African Americans from executive leadership at the level of Vice President or higher (including but not limited to Vicki and Domineca) came with a viciously hostile work environment intended to humiliate and punish the targeted African American executives and send them the unmistakable message they are not wanted at McDonald's. The hostile work environment includes without limitation labelling Vicki and Domineca and other African American women in leadership "Angry Black Women" — an ugly racial

---

[8] At McDonald's the term "Officer" was used prior to July 2018 to describe anyone holding the title of vice president or higher. McDonald's then changed its nomenclature to include persons below the vice-president level as "officers" in name only, but without the stature, benefits and opportunities associated with being an "Officer" when (before July 2018) the Officer level meant vice-president or higher.

11

stereotype used to silence and shame Black women and pressure them into being passive, servile, nonthreatening, and unseen.

25.     Plaintiffs Vicki Guster-Hines and Domineca Neal have endured continuing pattern and practice racial discrimination in deprivation of their civil rights that has included disparate treatment, hostile work environment, and unlawful retaliation for their audacity in protesting internally against the Company's racism.  They have been repeatedly insulted, marginalized, and humiliated in open and notorious ways, constituting an attempt by McDonald's to constructively terminate them.

26.     To avoid suffering greater damages, and avoid giving McDonald's another undeserved "victory" over its victims, after so many other African Americans were forced out of the Company in demeaning circumstances, these brave Plaintiffs refuse to resign and remain ready, willing and able to perform their jobs in an exemplary way as always.   But, they refuse to be silenced.

27.     On or about September 23, 2019, these Plaintiffs by their attorneys, gave McDonald's written notice, in substance, of their claims, which include under Section 1981:

Count I:      Victoria Guster-Hines' claim for disparate treatment based upon race in violation of 42 U.S.C. §1981 (sometimes "Section 1981").

Count II:     Domineca Neal's claim for disparate treatment based upon race in violation of 42 U.S.C. §1981.

Count III:    Victoria Guster-Hines' claim for hostile work environment violating 42 U.S.C. §1981.

Count IV:     Domineca Neal's claim for hostile work environment violating 42 U.S.C. §1981.

Count V: Victoria Guster-Hines' claim for unlawful retaliation in violation of 42 U.S.C. §1981.

Count VI: Domineca Neal's claim for unlawful retaliation in violation of 42 U.S.C. §1981.

28. By agreement with the Defendants, all statutes of limitations applicable to Plaintiffs' claims under 42 U.S.C. § 1981 were tolled as of September 23, 2019.

29. Subsequently, Plaintiffs filed Race Discrimination and Retaliation Charges with the U.S. Equal Employment Opportunity Commission and both received Right to Sue Letters from said Commission dated January 13, 2020 and hereby timely amend their Complaint adding Title VII claims against the corporate defendants, as follows:

Count VII: Victoria Guster-Hines' claim for Race Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et.seq. ("Title VII") including disparate treatment and disparate impact.

Count VIII: Domineca Neal's claim for Race Discrimination in violation of Title VII including disparate treatement and disparate impact.

Count IX: Victoria Guster-Hines' claim for Retaliation in violation of Title VII.

Count X: Domineca Neal's claim for Retaliation in violation of Title VII.

Count XI: Victoria Guster-Hines' claim for Hostile Work Environment in violation of Title VII.

Count XII: Domineca Neal's claim for Hostile Work Environment in violation of Title VII.

30. Plaintiffs seek actual and compensatory damages to redress substantial economic injury, severe emotional distress, and related physical suffering; punitive

damages to punish these wrongdoers and deter other companies and high-ranking executives from like misconduct; and the recovery of costs and attorneys' fees.

## JURISDICTION AND VENUE

31.     Plaintiffs bring federal claims under 42 U.S.C. §1981 and 42 U.S.C. §2000e-5(f)(1), invoking jurisdiction under 28 U.S.C. §§ 451, 1331, 1337, 1343(a)(3) and 42 U.S.C. §1988.

32.     Plaintiffs' claims are properly joined under the "permissive joinder" provisions of Fed.R.Civ.P. 20, as their claims arise out of the same series of transactions and occurrences and raise common questions of law and fact.

33.     Venue is proper under 28 U.S.C. § 1391 because the Defendants reside in this District and the unlawful conduct occurred or was orchestrated at McDonald's headquarters within this District.

## PARTIES

34.     Plaintiff Victoria (Vicki) Guster-Hines is an African American female executive at McDonald's USA, LLC, born and raised in Saginaw, Michigan and now residing in Texas and Illinois.

35.     Plaintiff Domineca Neal is an African American woman born and raised in Detroit, Michigan and now residing in Texas and Illinois

36.     Defendant, McDonald's USA, LLC ("McDonald's USA"), is a Delaware limited liability company with its principal place of business in Chicago, Illinois at 110 North Carpenter Street. It is a wholly owned subsidiary of McDonald's Corporation, and the franchisor of the McDonald's restaurant brand in the U.S.

37. Defendant McDonald's Corporation is a publicly traded Delaware corporation and the sole member of McDonald's USA, and is the worldwide franchisor of the McDonald's restaurant brand. It has its principal place of business in Chicago, Illinois in the same building at 110 North Carpenter Street. Collectively McDonald's USA and McDonald's Corporation are "McDonald's" or the "Company" unless otherwise indicated. This nomenclature reflects the reality that McDonald's Corporation exercises close control over McDonald's USA to the point that in the United States, they *de facto* function as a single company regarding the employment practices challenged here.

38. Defendant Steven Easterbrook ("Easterbrook"), a native of the United Kingdom, became president and CEO of McDonald's Corporation in March 2015; and in those positions, Easterbrook exercised *de facto* control over McDonald's USA at the policymaking and business planning levels; and without limitation, Easterbrook set McDonald's on the overtly racist course alleged here. On or about November 3, 2019, McDonald's terminated Easterbrook for the stated reason Easterbrook violated company policy by having an alleged consensual relationship with an employee. On information and belief Easterbrook resides in Chicago, Illinois; and worked at McDonald's headquarters in Chicago until terminated.

39. Defendant Christopher Kempczinski ("Kempczinski") became president of McDonald's USA in 2016 after being hired by McDonald's in or about 2015 to lead global strategy, business development, and innovation. Kempczinski had no position at McDonald's before 2015, when Easterbrook selected Kempczinski to be president

of McDonald's USA; and Kempczinski joined Easterbrook in setting McDonald's on the overtly racist course alleged here. On or about November 3, 2019, after the Company received notice of these claims, McDonald's promoted Kempczinski to president and CEO of McDonald's Corporation replacing Easterbrook. On information and belief Kempczinski resides in Chicago, Illinois; and works at McDonald's headquarters in Chicago.

40.    Defendant Charles ("Charles") Strong was the Company's West Zone President, where he supervised the Plaintiffs, until December 2019, when he was promoted to Chief Field Officer (after the Company received notice of these claims). On information and belief, he resides in Chicago, Illinois and in Florida, and works at McDonald's headquarters in Chicago, where he was a confidant of Easterbrook and Kempczinski.

41.    McDonald's acts through its officers, directors, and employees. All acts and omissions by McDonald's officers and employees were done in McDonald's business and are imputed to McDonald's under *respondeat superior*.

## FACTS

### Covert Racial Discrimination prior To Easterbrook and Kempczinski

42.    McDonald's did not become a racist company upon the arrival of Easterbrook and Kempczinski. For many preceding years, McDonald's engaged in covert, continuing racial discrimination amounting to *de facto* Company policy. The existence of this previously *covert* policy was the foundation that enabled Easterbrook and Kempczinski to embark on the *overtly* racist course of conduct alleged in

paragraphs 1-26 not only victimizing these Plaintiffs and other African American employees, but also targeting African American consumers and franchisees for a substantially reduced presence in the McDonald's system.

43.  As elements of McDonald's covert pattern and practice of racial discrimination against African American employees over the years, without limitation:

a.  The Company had always proclaimed its commitment to racial equality never revealing an intent to discriminate.

b.  But African Americans were consistently held to double standards requiring them to be more qualified and work harder than White persons in comparable positions, but they were not promoted on par with their White peers.

c.  McDonald's historically allowed White employees without college degrees (sometimes only with a high school diploma) to rise high. Examples include Bill Garrett (Sr. VP Operations), Charles Strong (West Zone President), Tim Andersen (VP Operations), Gregg Erieo (VP Corporate Owned Restaurants), and Charles Robeson (Chief Restaurant Operating Officer).  In contrast, African Americans are invariably required to hold college degrees or advanced degrees to reach the same, or sometimes lower, executive levels as White executives lacking any degree. African Americans frequently wound up reporting to White executives with inferior credentials and experience.

    d. McDonald's historically rewarded numerous White executives with the opportunity to become owner/operators of highly desired McDonald's restaurants. Those opportunities were not extended to African Americans on equal terms.

### Vicki Guster-Hines

44. When Vicki joined McDonald's in 1987 as a Management Trainee, she was highly qualified. She had graduated from Central Michigan University with three (3) undergraduate degrees, in business, psychology and sociology; and then graduated from Indiana Wesleyan University with an MBA. Before joining McDonald's, she worked for Dow Chemical and as a tax preparer for H&R Block.

45. Throughout her career at McDonald's, which began in 1987, Vicki has been a loyal, talented, hard-working, dedicated and excellent executive performer for McDonald's. In her annual performance ratings, she has been predominantly rated "Exceptional", the highest ranking, and consistently rated either "High Significant" to Exceptional.

46. Over the years at McDonald's, Vicki rose through the ranks due to her hard work, perseverance, accomplishments and consistently strong reviews and rankings:

    a. From 1990 through 2003, Vicki held numerous positions in Michigan and Indiana and rose to the level of Field Operations Manager with responsibility for as many as 279 McDonald's restaurants.

b. In 2004, Vicki reached the level of "Director" when she was named Director of Operations in its Ohio region with responsibility for as many as 400 McDonald's restaurants, and she held that position from 2004 through 2007.[9]

c. In 2007/2008, Vicki participated in a 12-month program called LAMP (Leadership at McDonald's Program) that McDonald's created in or about 2004; and which was intended to accelerate the progress of its "Directors" to vice president and senior vice president levels, and beyond. Participating in LAMP was by invitation only to those Directors deemed among the top talented 1%. Meeting that strict criteria, Vicki was invited to participate and successfully completed the LAMP in 2007/2008 and rightfully believed she was on track at McDonald's to become an "Officer" which, at that time, began at the vice president level, and to progress to senior vice president and beyond in the highest levels of McDonald's leadership.

d. From 2008 to 2010, Vicki worked at McDonald's then-headquarters in Oak Brook, Illinois as Gatekeeper, Strategist and Deployment (System Processes and Procedures); and in this position she affected over 11,000 McDonald's restaurants.

---

[9] At McDonald's the term "director" is a title for executive employees that are one step below a vice-president title, and in this usage, the term "director" should not be confused with membership on the Company's Board of Directors.

    e. From 2010 to 2013, Vicki served McDonald's as its West Division Senior Operations and Technology Director with responsibility for approximately 4,700 McDonald's restaurants.

47. Even before the arrival of Easterbrook and Kempczinski, Vicki should have been promoted higher in the Company based on her qualifications, skills and performance as compared to non-African Americans that were treated better, but she was victimized by McDonald's unwritten policy of racial discrimination that impeded her rise in the Company. Without limitation:

    a. From 2004-2007, McDonald's promoted at least three non-African Americans (Laura Ramirez, Barbara Dawson, and Paula Richards) to the Director or Senior Director level; and

    b. From 2008-2012, numerous non-African Americans (Walt Maney, Steve Kerley, William McKernan, Bianca Olivias, Jerry Angelotti, Greg Erieo, Alvaro Bonta, William Armstrong, Mike Ray and Atila Noronha) were promoted to the Vice President level with "Field" responsibility for a regional office; or "McOpCo" responsibility for the restaurants McDonald's owns and operates through its "operating company" subsidiary (known as McOpCo); and/or at other levels higher than Vicki's.

48. Vicki was equally or better qualified for the promotions alleged in paragraph 47 but was not similarly promoted.

49.     When Vicki was promoted to Gatekeeper in January 2009, she became one of only five persons in McDonald's history to hold that position.  Each of the other four "Gatekeepers" were White males holding the title of Vice-President (including John Owen, Bob Marshall, Jim McCabe before Vicki; then Bob Marshall again as a part time Vice President after Vicki; and currently Tim Andersen).  McDonald's did not promote Vicki, the only African American woman to be a Gatekeeper, to Vice-President, even though she performed the same "Gatekeeper" duties that the White men performed when they held this position, and thus she was again subjected to disparate treatment.

50.     In 2013, after Don Thompson became the Company's first African American leader, Vicki finally received the title of Vice-President, when she was promoted to Vice President for Franchising & Operations in Houston.   As a Vice President, she had significant responsibility including without limitation:

a. Accountability for Field Performance, Franchising, Operating Income, year over year increases in Sales, Guest Counts, and Market Share, and establishing systems and processes to create ease of execution, shown through excellent customer satisfaction.

b. Building a robust Talent Pipeline by leveraging a talent pool both internally and externally for the system and ensuring training and development execution.

c. Responsibility for $2 Billion-plus in annual sales, and Operating Income exceeding $250 Million by collaboratively working with and influencing

150 Franchisees, 63 Staff Team Members, in 870 restaurants in Texas and Louisiana.

d. Collaborating effectively with Franchisees, Staff, and Agency Partners to execute a national plan to grow restaurant visits, market share, cash flow, and operating income, while improving guest satisfaction.

e. Responsibility for creating opportunities for next generation Owners by ensuring only the best of the best candidates enter the system and become properly trained to own and operate multiple restaurants.

f. Conducting annual business reviews to ensure fair and consistent practices with existing Franchisees to ensure they continue to meet the national standards and excel in People, Operations, Building the Business through Guest Satisfaction, Finance, Re-investments and Franchisee Involvement within the communities they serve.

g. Working collaboratively with all support departments, Marketing, HR, Operations, Finance, Business Insights, and Real Estate & Development to build market share and year over year comps.

h. Responsibility for executing high level gold standard operations in all restaurants; and

i. Responsibility for ensuring that processes, systems, and routines are in place to drive both internal and external, everyday great customer satisfaction.

51.     Due to disparate treatment, Vicki's career advancement to Director and Senior Director levels had been delayed compared to her White and/or other non-African American counterparts who received favorable treatment compared to African Americans.

52.     Due to disparate treatment, Vicki's career advancement to Vice President levels had been delayed compared to her White counterparts or other non-African American counterparts who received favorable treatment comparable to African American persons.

53.     But by 2013, having attained a promotion to the Vice President level, and with an African American in the Company's highest positions, Vicki reasonably believed she would be treated fairly going forward, e.g., her hard work and perseverance had finally paid off.  As of 2013, becoming a Vice Presidents meant reaching the Officer level – a significant distinction at McDonald's that for most White persons is a springboard for further success.

54.     As a Vice President, Vicki was rated "Exceptional" (the highest ranking) in each of the last four years (just as she had been an "Exceptional" Director and Senior Director qualifying her for LAMP as alleged in paragraph 46(c)).  Therefore, she had every reasonable expectation of advancing in a reasonable length of time to Senior Vice President and higher.

55.     But Vicki did not realize that becoming a Vice President for Franchising & Operations would prove to be a glass ceiling she would not be allowed to rise above,

as covert discrimination against Vicki in career trajectory continued.  Without limitation:

a. In or about 2014, three white persons (Greg Erieo, Scott Rockwell and Jim Carras) were promoted to Vice President & General Managers of field offices (a step up from being a Vice President for Franchising & Operations); Vicki had equal or better qualifications but was not similarly promoted; and

b. In or about 2015, several non-African Americans (Tim Anderson, Robert Garcia, Dan Geheret and Bianca Olivas) were promoted to Vice President & General Manager within McOpCo; and again, Vicki had equal or better qualifications but was not similarly promoted.

### Domineca Neal

56.     Domineca earned a BA in Accounting from Michigan State University and an MBA from the University of Michigan; and she is a Certified Public Accountant.  Her scope of professional experience includes practicing as a CPA for a top global accounting firm for five (5) years; brand management/marketing of multi-million-dollar consumer package goods brands for eight (8) years; and running her own businesses including a Wendy's restaurant franchise, a Cartridge World franchise, and a consulting practice, for eight (8) years.

57.     In 2012, Domineca joined McDonald's as a Director Trainee in the Accelerated Operations Program (AOP) and was based in Chicago.  The AOP was a program to fast track the advancement of mid-level executives to entice them to move

laterally to McDonald's. As a participant in the AOP, Domineca was identified as a highly qualified employee; and her qualifications were more impressive than many other persons in the AOP. In every way, Domineca reasonably believed she was poised for rapid advancement at McDonald's.

58. Throughout her career at McDonald's, Domineca has been a loyal, talented, hard-working, dedicated and excellent executive performer and leader for McDonald's. In her annual performance assessments and discussions, she has consistently been designated as "top talent" by U.S. Leadership, and since 2018 she has been ranked #1 out of 19 peers. She has been highly qualified for the positions she held:

     a. In 2015, as the result of her hard work and perseverance, McDonald's named Domineca the Director of Operations, Indianapolis Region, where she revamped restaurant evaluations including cultural evolution and approach to Owner/Operator engagement for 80+ franchisees with 250+ locations; and

     b. In 2017, as the result of more hard work and perseverance Domineca became an Officer (a Vice President Franchising & Operations), assigned to the Indianapolis Field Office, with responsibilities for 100+ franchisees representing $1.5 Billion in annual revenue and 500+ locations; and with duties and responsibilities comparable to Vicki's duties and responsibilities alleged in paragraphs 50 (a)-(i).

59.     In becoming a Vice President Franchising & Operations in 2017, Domineca achieved near parity with Vicki in position and salary in 2017 despite joining the company in 2012, a full quarter century (25 years) after Vicki joined McDonald's in 1987.  Since Vicki had been rated "Excellent" or above throughout her career, this parity in the face of such a huge disparity in length of service, confirmed the existence of an unlawful race-based glass ceiling applied to African Americans , especially women, at McDonald's.

60.     Domineca has been a top performer and thus she has consistently been designated as "top talent" during her time at McDonald's, and but for the Company's unlawful discrimination she would have been promoted to the Vice President level in Franchising & Operations (or a comparable Officer position) in 2015 or 2016 and progressed upward from there.   That would have been her trajectory had she been treated fairly compared to her White counterparts.

61.     The Company's continuing pattern of discriminatory non-promotion (and other slights) before Easterbrook and Kempczinski was done in a covert manner making it impossible for Vicki, Domineca, or other African Americans to isolate and challenge specific instances as discriminatory.  For example, the Company did not (and does not) hold out the possibility of executive-level promotions as "open positions" that interested persons could apply for.  Career progress was (and is) discussed behind closed doors.  Vicki and other African Americans were repeatedly assured they would receive fair promotions.   When those promotions did not arrive, they were left to guess the real reasons.

## Hostile Work Environment

62.     As part of the Company's pattern and practice of discrimination, African American employees such as Vicki and Domineca endured racist incidents prior to Easterbrook taking the helm in March 2015; but they persevered in doing excellent work for their employer (as they had always done).  For example, in or about 2005, a White VP & GM of the Ohio Region (Marty Ranft) told Vicki and another African American (Joe Woods) that "90%" of what African American franchisees had to say about their experiences in the McDonald's restaurant system was a "goddamn lie" and he (Ranft) told Vicki "You are a [N-Word] like all the rest – you just believe you are better because you are a smart one."  Further:

a.  Vicki immediately told Ranft he could not speak to her using that ugly word or in any similar words, but Ranft responded to Vicki he could say whatever he wanted.

b.  Vicki was rightfully outraged and upset, and she reported Ranft to her superiors clarifying that she would not tolerate being called the N-Word within McDonald's.

c.  Ranft was correct in saying that as a McDonald's executive he could call an African American the N-Word to her face, without consequence, because McDonald's did absolutely nothing in response.  Ranft's career with McDonald's was not harmed. McDonald's promoted him to Vice-President of Development for the entire U.S. and later, he was rewarded

with the opportunity to become the owner/operator of several McDonald's restaurants.

63.    Also in 2005, Ranft called Vicki "stupid" in front of her team.  The next day, team member Tom McWeeny apologized to Vicki and expressed his shock at the way Ranft humiliated her in front of her team.

64.    As a further example, a White male Field Service Operations Director (Joe Kraft) was openly rude, abrasive, and disrespectful to Domineca on multiple occasions in 2014 and earlier years, causing Domineca to experience substantial stress.  However, in the years before Easterbrook and Kempczinki, African Americans in senior leadership were able to intercede and shield Domineca.   This changed for the worse in the Easterbrook/Kempczinski years in which Joe Kraft, Charles Strong and other White executives were no longer constrained and openly targeted Domineca for elimination as alleged below.

65.    The incidents and courses of hostile conduct alleged in paragraphs 62-64 are examples not intended to be exhaustive.  When racist hostile behavior occurs, all African Americans are victimized, not merely the immediate victim.  Word of these incidents and similar ones quickly reaches other African American employees, and all persons of color "get the message" that they are second class citizens when a company like McDonald's allows racist speech and/or racist conduct to occur then go unpunished.

66.    Prior to the Easterbrook/Kempczinski years, Vicki, Domineca and other African Americans at McDonald's dealt with incidents of racial hostility such as those

described in paragraphs 62-64 by working harder and seeking to achieve constructive change within McDonald's. They sought to make White leadership feel comfortable working with them and believed they would eventually succeed. As African Americans they knew that some racial hostility is an unfortunate fact of American life and to protect their careers, they did not wish to be seen as complainers. Vicki and Domineca did not view these incidents as cause to sue until more recent events alleged below.

### Overt Racial Bias and Intensified Hostile Work Environment<br>Under Easterbrook and Kempczinski

67.    When they took the helm at McDonald's Corporation and McDonald's USA, Easterbrook and Kempczinski noticeably surrounded themselves with White subordinates as their most trusted advisors and they embarked on the course of overtly racist speech and conduct alleged in paragraphs 1-26. The work environment at McDonald's became increasingly hostile for African American employees including but not limited to Vicki and Domineca, who in their positions were eyewitnesses to shocking conduct alleged (without limitation) in paragraphs 1-26, which they found hard to believe, leaving them in the position of either speaking out in protest or appearing to agree with the Company's racist course of action.   In this time period, it was widely known in McDonald's executive circles that (without limitation):

> a. Vicki and Domineca, and other African American executives, supported
> the NBMOA and disapproved of the overtly racially discriminatory
> policies and practices instituted at McDonald's after Easterbrook and
> Kempczinski took control of the Company; and

      b.  Vicki had been instrumental in founding MA2C, which was silenced by the new regime; and Domineca too was an active participant in MA2C.

68.    Similarly, Vicki and Domineca spoke out when they saw African American franchisees being treated less favorably than Whites. As one example, in or about 2015, Domineca went to bat for an African American Next Generation (NG) potential Owner Operator. His father, James Daughtry, had been a highly successful Nashville Operator with highly coveted stores, who died in or about 2012. His spouse took over as Owner/Operator, but she also died in or about 2015, leaving their son, Jemond, who had worked in the business for years. The day after Mrs. Daughtry died, Vice President, William McKernan (White male) accepted calls from non-African American Owner/Operators regarding her stores and Domineca told McKernan it was disrespectful to entertain those calls even before the lady was buried. McKernan and his friend, Alvaro Bonta did everything they could to prevent Daughtry's son from getting his deceased parents' stores, including besmirching the young man's name and reputation. When Domineca pointed out exceptions he made for a White female Next Generation candidate, Bonta was forced to back off and Jemond Daughtry became a successful Owner/Operator.

69.    After Easterbrook and Kempczinski took the helm at McDonald's, incidents of overt hostility towards Blacks, for which White perpetrators suffered no consequence, increased in both frequency and severity. As examples of incidents involving Defendant Charles Strong, the "West Zone President" reporting directly to the president of McDonald's USA (then Kempczinski), without limitation:

30

a. In or about December 2016, Vicki reported to her White supervisors including Charles Strong (and also Maureen Mulvhill (McDonald's legal counsel), Troy Brethauer (U.S. VP Franchising – Retired) and Cody Teets (U.S. VP Franchise Relations – Separated) and also to Juan Marcos (Chief People Officer) that a White franchisee (Dan Carmichael) had threatened her personally when she informed Carmichael that McDonald's was exercising a Right of First Refusal to buy certain restaurants Carmichael had wanted to purchase. McDonald's was within its express contractual rights, but Carmichael's words, as Vicki relayed them to her supervisors, were: *"Vicki, I am concerned about your wellbeing and your mental state... You are acting irrational and incompetent and everyone knows it…I am giving you the chance now to change this decision, based upon what I can do to you... I have stuff on you... You would be surprised of what I can do to you… You have no idea what I can do to you Vicki... You will need God when I am done with you."* McDonald's ignored this threat against Vicki and did nothing to protect her from Carmichael.

b. In or about 2017, Charles Strong instructed Domineca not to consult with or take the advice of two African American women (Bridgette Hernandez and Barbara Calloway) that had been promoted over Strong's opposition, stating "[*we] don't need any of that Black woman attitude. They are too angry and aggressive*." (To get her promotion,

31

Calloway had to accept a transfer to the East Zone to get away from Strong).

c.  In September of 2017, McDonald's placed Vicki under so much stress, that she was forced to take approximately twelve (12) weeks medical leave (September 22nd – December 5th).  She notified Charles Strong, Francisco Gonzalez, and Juan Marcos (Chief People Officer) that her doctor recommended an immediate medical leave.

d.  On or about March 21, 2018, Charles Strong told Vicki that five African American women (Chioke Elmore, Barbara Calloway, Regina Johnson, Bridgette Hernandez and Domineca Neal) were "angry Black women" that "always seemed to be mad about something" and asked Vicki if she could explain the source of their anger.  These five African American women that Charles Strong disparaged in offensive racial terms:

   i.   Constituted 40% of the African American female vice presidents at McDonald's *globally* as of March 2018.

   ii.  Constituted 50% (4 of 8) of the African American female vice presidents at McDonald's in the U.S. as of March 2018;

   iii. Constituted 60% (3 of 5) of the African American female vice presidents reporting to Strong when he made these statements; and

   iv.  Constituted 75% (3 of 4) of the African American female vice presidents reporting to Strong when he made these statements

that McDonald's had not already pushed into taking an early retirement.

e.  Strong repeated the same comments alleged in paragraph 69(d) to Vicki and Francisco "Pancho" Gonzalez (VP and GM of the Houston Region) and to Owner/Operators the next day while attending a meeting of the NBMOA (National Black McDonald's Operators Association) in Houston.

f.  Even after promoting Domineca to Vice President, Charles Strong warned her to "watch [her] delivery and be "softer"; he still continued to tell staff and franchisees she was "angry."

70.  Charles Strong is not the only White executive that calls African American women "Angry Black Women." Using that term or the underlying allegation that African American women are angry without having cause to be angry is common among the White leadership at McDonald's.

71.  Ranft's use of the N-Word (paragraph 62) and Strong's use of the stereotypical "Angry Black Women" insult (paragraph 69) was condoned at McDonald's and on information and belief, they are not the only ones using racially insulting and hurtful language. The fact that hateful language can be used, without consequence to the hateful speaker, is a hostile work environment.

72.  Even when they do not use profanity or hurl other racial insults, White executives at McDonald's are free to openly disclose their racial biases without penalty. For example, in or about 2017, Laura Granger, a native South African White

woman then serving as the regional HR director in Houston revealed her racial animosity when she told Vicki that Granger's fourteen-year-old daughter was uncomfortable in a school that had too many Black students. Laura Granger told Vicki that when she [Laura] sat outside of her daughter's school, she did not see that many Black students coming or going. But Granger changed her daughter's class to one with fewer Black students to make her more comfortable. Vicki complained to Melissa Kersey, CPO McDonald's USA, that Granger was revealing an innate racist attitude that should disqualify her from working in human resources and affecting the careers of African Americans, but that complaint was ignored and McDonald's promoted Granger to a national HR position as HR Officer of McOpCo (which operates McDonald's company-owned restaurants).

73.     Like Charles Strong, who unfairly blocked deserving African Americans from advancement in the Company, in or about June 2018, Laura Granger made false and disparaging statements about an African American employee, Theo Webb, to block Webb from being re-hired for an open position after he retired in good standing. She stated that Theo was not a good employee, he did no good job or have good workplace relationships. None of that was true.

74.     Likewise, and also acting out of racial bias, Vice President William McKernan repeatedly made false and disparaging statements about Domineca that negatively affected her advancement at McDonald's.

75.     The racially hostile incidents alleged in this Complaint are examples and not exhaustive of the events causing a hostile work environment at McDonald's.

34

These incidents reveal that White executives at McDonald's are comfortable openly displaying their hostility to African Americans. This open, "in your face" display of racism is intended by the perpetrators to signal to African Americans they should stay in their place and have no choice but to accept second- or third-class citizenship at McDonald's.

## **Intensified Disparate Treatment**

76.     In 2016, a white person (Jackie Bunting) was promoted to the Vice President level in the Heartland region.    But Domineca, who was then a Director, had equal or better qualifications but was not similarly promoted.   In addition, but without limitation:

    a.  In 2016, McDonald's brought in a non-African American from Australia, Skye Anderson, as a Vice President and General Manager of Pac Sierra, which is a position higher than Vicki and Domineca held; and again, Vicki and Domineca had equal or better qualifications but were not similarly promoted.

    b.  From 2017 through 2019, several non-African Americans (Harish Ramalingam, Bill Garrett, Paulo Pena, Luis Quintiliano, Michelle Borninkhof, Karen Garcia, Medy Valenzuela, and Gianfranco Cuneo) were promoted to Field Vice President / Senior Vice President and/or other positions higher than Vicki's and Domineca's; and again, Vicki and Domineca had equal or better qualifications but was not similarly promoted.

77. In addition, White male Jeff Wilfong "retired" several times but McDonald's recalled him at least three times to fill positions that both Vicki and Domineca were qualified to fill.

**Vicki and Domineca Continued to Protest McDonald's Racist Policies**

78. On multiple occasions after Easterbrook and Kempczinski took charge, both Vicki and Domineca attended NBMOA meetings and, with the knowledge of their White supervisors in a chain of command reaching Easterbrook and Kempczinski, they expressed empathy with the racial grievances expressed by the African American franchisees, without limitation:

a. In 2017, as a Field Service Senior Director, Domineca relayed complaints from African American franchisees to Charles Strong and Finance Director Dave Hatton that McDonald's was grading their African American Consumer Market stores differently, in a negative way. Specifically, when McDonald's previously co-owned these stores in partnership with a franchisee, it gave them a passing grade. But, after McDonald's ended the partnership, McDonald's found the same stores in the same condition to suddenly be non-compliant and deficient. Domineca also shared her thoughts on this with Strong and Hatton.

b. In the summer of 2018, Domineca sent Melissa Kersey an email suggesting a network of Owner/Operators in AACMs to identify solutions to their unique challenges; Melissa had shared her concern with Domineca that McDonald's was on the cusp of something

happening due to diversity concerns and she wanted Domineca's help. Melissa did not respond to Domineca's email; and when Domineca asked her in person, Melissa stated, "It was a good idea but nothing happened."

c. Also in 2018, Vicki learned that, during a world-wide convention in 2018, a White male McDonald's Owner Operator from the Pac Sierra region made highly offensive statements to an African American female McDonald's employee.[10] The franchisee told her she was a beautiful Black woman; that he wanted to have sex with her right at that moment; and that he believed crossbreeding was good. Seeking to protect her fellow employee from this racist and sexist behavior, Vicki complained about this incident to a White human resources director, Laura Granger, but to Vicki's knowledge McDonald's did nothing about this incident.

### The Decimation of African American Officers at the Vice President Level or Higher

79. In July 2018, as part of the Company's announced initiative to be a more data driven company, McDonald's implemented a wide-ranging reduction in force called "Field First Restructure (FFR) under which the number of field offices serving the franchised restaurants was substantially reduced, with each one of the reduced field offices to serve an increased number of restaurants.

80. Because of the July 2018 FFR, the top eight (8) Officers in McDonald's USA were exclusively White executives.

---

[10] The employee's name is withheld to protect her privacy.

81.    In the July 2018 FFR, McDonald's demoted both Vicki and Domineca to the level of Senior Director, which was below the Vice President levels they held. Their work responsibilities were not reduced, and McDonald's demanded as much or more from each as it did before the FFR.   However, McDonald's reduced their standing in the Company, and it reduced their benefits, including reduced bonus opportunities and fringe benefits, making their positions less attractive financially, as the benefit package is a key reason executives are attracted to McDonald's.  These demotions carry a loss of stature and loss of future career opportunity at McDonald's. The demotions were an undeserved insult to both Vicki and Domineca.

82.    Between 2015 and July 2018, the following African Americans were adversely affected by McDonald's intentionally discriminatory conduct in the FFR and other actions:

a. **Separated from Employment at McDonald's**: Danitra Barnett; James Collins; Yolanda Cook; James Floyd; Darren Hall; Pat Harris; Steven Hilton; Jacquelyn Howard; Ubong Ituen; Robert Johnson; Cedric Jones; Kelvin McLaurin; Kevin Newell; Robert L. Palmer; Terrence D. Reese; Debbie Roberts; Shirley Rogers-Reese;  Heidi B. Sa Shekham; Wendell Sconiers; Sharlene M. Smith; Donald Thompson; Greg Watson; Alex Williams; Barbara Calloway-Nebe; Chioke Elmore; Dave Thomas; and Valerie Williams.

b. **Demoted**:  Victoria Guster-Hines (Demoted to Sr. Director); Domineca Neal (Demoted to Sr. Director); Bridgette Hernandez (Demoted to Sr.

Director); Matt Ajayi (demoted in 2018 but promoted again in 2019); and Barbara Calloway-Nebe and Chioke Elmore, both of whom were demoted before they felt it necessary to leave McDonald's due to the Company's overt racism.

c. **Remaining**: Debra Ballard; Marion K. Gross; William Lowery; Mason Smoot; Harry Thomas, Jr.; Matt Ajayi (Demoted in 2018 but promoted again in 2019); Christa Small (promoted in Q2 2019); Wendy Lewis.

83. In total, between 2015 and July 2018, McDonald's demoted or severed ties with 31 of the existing 37 African American Officers at the level of Vice President or higher. Eighty-Three percent (83%) of African American Officers at the level of Vice President or higher were demoted or left McDonald's employ involuntarily.

84. In the July 2018 FFR, White Officers at the level of Vice President or higher were not dismissed or demoted in the same proportions as African Americans. That is not surprising since Laura Granger, the White South African who moved her daughter to a new class because she thought there were too many African American children in her class, was a decision maker in the July 2018 FFR.

85. In the July 2018 FFR, and without limitation, White Officers Scott Rockwell, Gianfranco Cuneo and Gregg Erieo were retained and/or promoted even though objectively their performances would have led to their being dismissed or demoted if McDonald's applied its standards consistently:

a. Scott Rockwell, Heartland Region General Manager, consistently ranked in the bottom 3rd of the scorecard but during the restructuring he was promoted to VP International Developmental Market Japan.

b. Prior to the FFR, Gianfranco Cuneo, VP Franchising & Operations, was ranked in the bottom 3rd of the scorecard but prior to FFR was promoted to International Development Licensee Market VP – Chief Officer.

c. Gregg Erieo was consistently ranked in bottom category (19-21 out of 21) among General Managers and was initially terminated due to poor performance. But even though he was the absolute worst General Manager and initially terminated in the FFR, Charles Strong and Charles Robeson went to bat for him and got Kempczinski to rehire him. Even worse, McDonald's found new and enhanced positions for Erieo; McDonald's put Erieo in charge of an important program affecting every McDonald's restaurant (the Experience of the Future program) and also put him in charge of the "McOpCo" division that operates the approximate 683 company owned restaurants. And, to add insult to injury, to make room for Erieo, McDonald's terminated Alex Williams, an African American that had been in charge of EOTF.

86. In the July 2018 FFR, McDonald's also gave undeserved preferential treatment to two White females, Kristy Cunningham and Allyson Peck when McDonald's "grandfathered" Cunningham and Peck, allowing them to retain their Senior Vice President and QSC VP titles respectively.

87.     McDonald's generally allowed non-African Americans to extend their employment and otherwise leave with dignity including, but not limited to, Mike Soenke, Juan Marcos, Heather Darcy and Mike Andres.  McDonald's did not afford African Americans the same dignified departures and just abruptly terminated and humiliated them including, but not limited to, Darren Hall, Dave Thomas and Debbie Roberts.

88.     If the July 2018 FFR had been free from racial bias, Vicki and Domineca would not have been demoted; and in the FFR or on other occasion a they would have been promoted and would have substantially higher positions in the Company.

89.     If the July 2018 FFR had been free from racial bias, the disparity in the percentage of African American Officers at the level of Vice President or higher that were terminated and demoted as opposed to the percentage of White Officers at those levels terminated and demoted would not have been so wide.

## **Unlawful Retaliation**

90.     The demotions given to Vicki and Domineca in the 2018 FFR were discriminatory because Vicki and Domineca were more qualified than many White executives not demoted.

91.     The demotions given to Vicki and Domineca in the 2018 FFR  were in retaliation for their empathy and advocacy to support the National Black McDonald's Owners Association (NBMOA) in their ongoing protests against McDonald's racially unfair conduct.

92.     Vicki and Domineca, along with other African American executives and African American franchisees, protested to Easterbrook and Kempczinski the disproportionate reduction of African American senior executives was unacceptable (particularly when their advancement had been impeded to begin with).  McDonald's, led by Easterbrook and Kempczinski, did not want to listen to any criticism and pursued a racially biased campaign of harassment and retaliation.

93.     The intensified hostile work environment and disparate treatment after Easterbrook and Kempczinski embarked the Company on the overtly racist course of conduct alleged in paragraphs 1-26 were in retaliation against Vicki and Domineca for their advocacy against McDonald's discriminatory conduct against African American employees, franchisees and customers.

94.     Prior to the FFR, Vicki sat on two (2) national teams (Franchising and Restaurant Operations Improvement Process) but, in 2018  just after the FFR, Vicki was unceremoniously removed from both teams, without notice;  McDonald's just stopped inviting her.

95.     In or about August 2018, after Domineca requested a raise in pay, her supervisor, Luis Quintiliano, who had substantially weaker credentials than either Vicki or Domineca, falsely accused Domineca of yelling at him and "offered" Domineca a coach.  This offer was supposedly meant to be helpful.  In fact, the offer of a coach was purposefully insulting and stigmatizing as it implied Domineca had weaknesses for which "coaching" might be helpful.  Given Domineca's performance reviews, the suggestion she needed to be "coached" was objectively false; but she reluctantly

accepted the "suggestion" for a coach because she did not want to be uncooperative. On information and belief, Charles Strong was behind the offer of a coach; and on further information and belief, McDonald's was using Vicki and Domineca to train Quintiliano and/or acclimate him to the Dallas region, and would likely have terminated both Vicki and Domineca in the July 2018 FFR but for its desire for these African American executives to prop up the inferior employee the individual Defendants could rely on to do their bidding.

96.     In or about August 2018, Human Resources manager Carlos Dias admitted to Vicki that the only reason Vicki was merely demoted in the July 2018 FFR (and not dismissed) was to train and acclimate Luis Quintiliano to the Dallas Field office.  Dias predicted McDonald's would terminate Vicki when it determined Quintiliano no longer needed Vicki's assistance.  And, four months later, in or about December 2018, Quintiliano told Vicki that Domineca would be gone (from McDonald's) by March 2019 even though, during this same time period, both the U.S. President (Kempczinski) and the U.S. Chief People Officer (Kersey) had deemed Domineca "top talent".

97.     In February 2019, Domineca was the over-all top performer in the Company when she attended a McDonald's leadership meeting in Chicago where top performers from 2018 and year-to-date 2019 were to be recognized and applauded. But, rather than allow Domineca to receive and enjoy her hard-earned accolade, Bill Garrett (SVP of US Operations) intentionally and repeatedly skipped her name as he publicly read off the list, and then Garrett even recognized White employees who did

not even make the list.[11]  McDonald's would not allow Domineca to have the honor it had allowed all preceding White top performers and Domineca was subjected to intentional humiliation among all her peers who knew she was being subjected to this cruel, undeserved and unprecedented insult.

98.    Shortly after Domineca's humiliation in February 2019, both Vicki and Domineca made personal, desperate pleas for racial equality within McDonald's.  In February 2019, Vicki initiated a meeting with Melissa Kersey (Chief People Officer, a White person) and Kempczinski to discuss her personal situation and to point out the overall lack of African Americans in leadership after the FFR.  Kersey and Kempczinski listened politely but no progress came out of that meeting.  Later, Vicki heard from Quintiliano that behind her back, Kersey was trivializing Vicki by characterizing her as being merely upset she had no secretary.

99.    At about the same time as Vicki approached Kempczinski and Kersey to plead for herself and other African Americans in February 2019, McDonald's was touting its claimed success in promoting gender diversity as indicated by "key performance indicators" (KPI's) the Company was tracking as part of external monitoring on gender diversity under a United Nations program.  When Domineca learned McDonald's was claiming success in diversity, she implored Kersey it was necessary to separately track the progress of African American women instead of lumping all women together.   By May of 2019, Kersey appeared to agree it would make sense to separately track the progress of African American women at

---

[11] Garrett, split the East and West zones so that he could award Tim Fischer (White) top performer in the East Zone.

McDonald's, but Kersey admitted she could not get permission for this from Kempczinski and/or Easterbrook. The race-specific review of McDonald's claimed progress on gender diversity that Domineca requested never occurred (or if it did, the results were kept secret); and it was in April 2019, in the middle of Domineca's effort to obtain a race-specific review of the Company's employment practices that Kempczinski stated bluntly that the "*numbers [of African Americans] don't matter*" as alleged.

100. Also in February 2019, Domineca shared feedback and concern with Charles Strong regarding negative interactions and poor treatment at the hands of her manager, Luis Quintiliano. Charles Strong ignored Domineca's appeal for help and gave no feedback.

101. From May through October 2019, McDonald's excluded Domineca from Field First Task Force meetings, which she had been selected and qualified for in Q1 2019 as a result of being a "Top Performer" (despite Garrett's refusal to recognize her as a "Top Performer" as alleged). Two White employees, Allyson Peck and Dan Camp, gave the Field First Task Force update in October 2019, even though their scorecard performance was inferior to Domineca's.

102. In June of 2019, on information and belief, Charles Robeson told Michael Peaster (African American VP of Security Nationally) that Vicki was "mad" and he didn't understand why because he knew where Vicki came from.

103. Also in the second quarter of 2019, McDonald's selected two White employees, Doug Lorimer and Charlie Newburger, to be accelerated to the Vice

President level even though their performance and experience was inferior to that of both Domineca and Vicki.

104.    In August of 2019, Luis Quintiliano and HR Director Lorelie Parolin (White) made false and vague accusations against Domineca that "'2 or 3 people were afraid of [her]" but refused to provide any particulars, once again setting Domineca up for the "Angry Black Woman" stereotype.

105.    In August of 2019, Quintiliano and HR Director Lorelie Parolin attempted to violate the confidentiality between Domineca and her personal coach to obtain negative feedback on Domineca; they questioned Domineca's coach and then demanded feedback from Domineca which McDonald's specifically stated would not happen when Domineca accepted the "voluntary" coach.

106.    In October 2019, after Vicki and Domineca through their attorneys brought the substance of this Complaint to McDonald's attention and after McDonald's engaged an outside counsel to respond:

a.  McDonald's targeted Vicki and Domineca for exclusion from the October 2019 MA2C meeting at the U.S. Executive Leadership Meeting in Chicago.  Vicki was one (1) of five (5) founders of the MA2C (McDonald's African American Counsel) which is dedicated to developing and supporting African American employees and increasing the quality and quantity of the Company's commitment to diversity and inclusion. McDonald's exclusion of Vicki and Domineca from this group is tragically ironic.

b. McDonald's placed targets on Vicki's and Domineca's backs and specifically notified their peers of these pending claims and instructed their peers to exclude and isolate them from usual and customary activities having nothing to do with these claims as punishment for speaking out against racism. When Vicki asked Harry Thomas, Jr., the host of the October 2019 MA2C meeting, why she wasn't invited, he stated that McDonald's leadership has specifically instructed him to not invite her because Vicki "had litigation" against McDonald's.

c. The number of company related and peer emails that Vicki and Domineca receive daily has substantially decreased (dried up), dwindling to a fraction of the number of emails received prior to October 2019.

107.  McDonald's conduct in 2019 as alleged made it increasingly impossible for Vicki and Domineca to do their jobs and constitutes constructive discharge in retaliation for their complaints. These acts and omissions were sufficiently egregious to establish constructive termination but these Plaintiffs refuse to resign from McDonald's.

## **Injury**

108.  Because of continuing discrimination, hostile work environment and unlawful retaliation, both Vicki and Domineca have suffered economic loss in diminished past and future earnings in amounts to be proven at trial.

109.  Had Vicki been given the same opportunities as her non-African American counterparts, she reasonably would have been promoted to much higher positions much earlier, would not have been demoted in the 2018 FFR, and would have a substantially higher position today.

110.  Over the years the continuing discrimination against Vicki in her career trajectory is estimated to have cumulatively cost her over $2 million in lost pay and benefits to date, including lucrative opportunities to acquire significantly more stock in McDonald's Corporation, as McDonald's subjected Vicki to a race-based glass ceiling she could not rise above despite doing excellent work for this Company since 1987 then unfairly demoted her.

111.  Vicki's economic losses will continue and can be projected through her remaining work horizon.  Her total damages will be several million dollars and will be proven at trial.

112.  Despite earning her advancement to near parity with Vicki in a comparatively short time, Domineca has also suffered discrimination in her career trajectory at McDonald's as she has not advanced as far as Whites that joined the Company in its AOP, many of whom had inferior credentials and did not attain Domineca's "top talent" designation.

113.  Had Domineca been given the same opportunities as her non-African American counterparts, she reasonably would have been promoted to much higher positions much earlier, would not have been demoted in the 2018 FFR, and would have a substantially higher position today.

114.    Over the years the continuing discrimination against Domineca in her career trajectory is estimated to have cumulatively cost her hundreds of thousands of dollars in lost pay and benefits (including lucrative opportunities to acquire significantly more stock in McDonald's Corporation) to date and lost opportunities for further promotions.

115.    Domineca's economic losses will continue and can be projected through her remaining work horizon (which is longer than Vicki's). Her total damages are estimated to be several million dollars and will be proven at trial.

116.    Because of continuing discrimination, hostile work environment and unlawful retaliation, both Vicki and Domineca have suffered emotional distress, humiliation and related physical suffering.

### Pattern & Practice Discrimination

117.    Prior to the leadership and control of Easterbrook and Kempczinski, McDonald's pattern and practice of discrimination against African American employees had been the Company's covert *de facto* policy.

118.    Under the leadership and control of Easterbrook and Kempczinski, the Company's previously covert pattern and practice of discrimination became overt and was extended to discrimination against customers and store Owner/Operators.

119.    The disparate treatment, hostile work environment, retaliation and conduct constituting constructive terminations suffered by Vicki and Domineca were intentionally inflicted upon them by McDonald's as part of the Company's pattern and practice of discrimination.

120.   Easterbrook intended that McDonald's perpetrate a pattern and practice of discriminatory conduct against African Americans or in the alternative, he ratified that pattern and practice and failed to stop it.

121.   Kempczinski intended that McDonald's perpetrate a pattern and practice of discriminatory conduct against African Americans or in the alternative, he ratified that pattern and practice and failed to stop it.

122.   In addition, as alleged in this Complaint, Kempczinski participated directly in one or more discriminatory actions against Vicki and Domineca, including but not limited to approving the 2018 Field First Restructure.

123.   Also as alleged in this Complaint, Charles Strong also participated directly in one or more discriminatory actions against Vicki and Domineca, and he participated at a supervisory level in the Company's pattern and practice of discrimination against African Americans.

### Section 1981 of the Civil Rights Act of 1870 (as amended)

124.   Section 1981 of the Civil Rights Act of 1870, 42 U.S.C. §1981 ("Section 1981") was enacted after the Civil War to empower the newly freed slaves and their descendants to participate in the American economy and other aspects of American life on equal terms with White citizens.  It provides:

    a)    **Statement of equal rights:**

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

b) **<u>"Make and enforce contracts" defined:</u>**

For this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

c) **<u>Protection against impairment:</u>**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

125. Vicki and Domineca are persons within the jurisdiction of the United States.

126. Vicki's and Domineca's employment by McDonald's are "contractual relationships" under Section 1981.

127. Under Section 1981, Vicki and Domineca have the same rights as white citizens to make and enforce her employment contract with McDonald's, including the making, performance, modification, and termination of their contracts, and the enjoyment of all benefits, privileges, terms, and conditions of their employment relationships with McDonald's.

128. The conduct of these Defendants egregiously violates Section 1981 and all other laws intended to promote racial equality in employment. Contrary to the intent of Section 1981 to integrate African Americans into American economic life, McDonald's and the individual Defendants have sought to intentionally exclude or otherwise reduce the visibility of African Americans as executive employees and in franchise ownership and as paying retail customers. The full weight of 42 U.S.C. §1981 must be brought to bear against these Defendants.

**Count I**

**Victoria Guster-Hines' Claim Against All Defendants for
Disparate Treatment based upon Race in Violation of  42 U.S.C. §1981**

129.    Plaintiff Victoria Guster-Hines re-alleges paragraphs 1-128 as though set forth herein.

130.    McDonald's violated 42 U.S.C. §1981, by engaging in the disparate treatment toward Vicki by subjecting her to worse terms of employment than comparable White employees.

131.    McDonald's further violated 42 U.S.C §1981 by denying Vicki her enjoyment of the benefits, privileges terms of her employment relationship as an executive with the company.

132.    Without limitations, as acts or omissions constituting disparate treatment, McDonald's denied Vicki:

  a.  Her right to be treated as an equal in a diverse environment.

  b.  Her right to equality in the work assignments, evaluation of her performance and professional advancement.

  c.  Her right to be treated with respect and dignity.

  d.  Her right to be considered for and receive opportunities, growth and promotion the same as White executives.

  e.  Her right to be fairly evaluated and fairly treated in the 2018 FFR.

  f.  Her right to be protected from being subject to hostile work environment, including but not limited to being called a "N Word" and other racist and stereotypical names at work.

g. Her right to be free from and not being subject to unlawful retaliation.

133. In violation of Section 1981, and without limitation, McDonald's discriminated against Vicki under the doctrine of *respondeat superior* regarding the acts and omissions of its officers and employees as alleged in this Complaint.

134. In the ways alleged in this Complaint, McDonald's and the individual defendants knowingly discriminated against Vicki based on race and knowingly treated comparable White Officers preferably.

135. The conduct of McDonald's and the individual defendants was intentional or in reckless disregard to Vicki's right to equality.

136. The conduct of McDonald's and the individual defendants was part of a pattern and practice of discriminatory treatment within McDonald's.

137. As the direct and proximate result of the Defendants' violations of Section 1981, Vicki has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts to be proven at trial.

138. As the direct and proximate result of the Defendants' violations of Section 1981, Vicki has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

139. The discriminatory conduct of the Defendants continued despite protestation by Vicki and other African American employees and owners/operators.

140.   McDonald's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter other companies from like misconduct.

141.   Steven Easterbrook's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

142.   Chris Kempczinski's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

143.   Charles Strong's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count I under 42 U.S.C. §1981 and 42 U.S.C. §1988, Plaintiff Victoria Guster-Hines requests the entry of judgment against each Defendant imposing individual and joint and several liability for:

A.   Actual and consequential damages, both economic and non-economic, to be proven at trial;

B.   Punitive damages sufficient to punish each Defendant and deter other companies and their controlling executives from like misconduct;

C.   Costs of suit;

    D.     Attorneys' fees; and

    E.     Such other relief available under law and deemed just and proper.

## Count II

### Domineca Neal's Claim Against All Defendants for Disparate Treatment based upon Race in Violation of 42 U.S.C. §1981

144.    Plaintiff Domineca Neal re-alleges paragraphs 1-143 as though set forth herein.

145.    McDonald's violated 42 U.S.C.§1981, by engaging in the disparate treatment toward Domineca by subjecting her to worse terms of employment than comparable White employees.

146.    McDonald's further violated 42 U.S.C §1981 by denying Domineca her enjoyment of the benefits, privileges terms of her employment relationship as an executive with the company.

147.    Without limitations, as acts or omissions constituting disparate treatment, McDonald's denied Domineca:

    a.  Her right to be treated as an equal in a diverse environment.

    b.  Her right to equality in the work assignments, evaluation of her performance and professional advancement.

    c.  Her right to be treated with respect and dignity.

    d.  Her right to be considered for and receive opportunities, growth and promotion the same as White executives.

    e.  Her right to be fairly evaluated and fairly treated in the 2018 FFR.

f. Her right to be protected from being subject to hostile work environment, including but not limited to being called racist and stereotypical names at work.

g. Her right to be free from and not being subject to unlawful retaliation.

148. In violation of Section 1981 McDonald's discriminated against Domineca under the doctrine of *respondeat superior* regarding the acts and omissions of its officers and employees as alleged in this Complaint.

149. In the ways alleged in this Complaint, McDonald's and the individual defendants knowingly discriminated against Domineca based on race and knowingly treated comparable white Officers preferably.

150. The conduct of McDonald's and the individual defendants was intentional or in reckless disregard to Domineca's right to equality.

151. The conduct of McDonald's and the individual defendants was part of a pattern and practice of discriminatory treatment within McDonald's.

152. As the direct and proximate result of the Defendants' violations of Section 1981, Domineca has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts to be proven at trial.

153. As the direct and proximate result of the Defendants' violations of Section 1981, Domineca has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

154. The discriminatory conduct of the Defendants continued despite protestation by Domineca and other African American employees and owners/operators.

155. McDonald's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter other companies from like misconduct.

156. Steven Easterbrook's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

157. Chris Kempczinski's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

158. Charles Strong's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count II under 42 U.S.C. §1981 and 42 U.S.C. §1988, Plaintiff Domineca Neal requests the entry of judgment against each Defendant imposing individual and joint and several liability for:

      A.    Actual and consequential damages, both economic and non-economic, to be proven at trial;

      B.    Punitive damages sufficient to punish each Defendant and deter

other companies and their controlling executives from like misconduct;

C.    Costs of suit;

D.    Attorneys' fees; and

E.    Such other relief available under law and deemed just and proper.

## Count III

### Victoria Guster-Hines' Claim Against All Defendants
### Hostile Work Environment in Violation of 42 U.S.C. §1981

159.    Plaintiff Victoria Guster-Hines re-alleges paragraphs 1-158 as though set forth herein.

160.    McDonald's violated 42 U.S.C.§1981 by subjecting Vicki to a hostile work environment by allowing and fostering an intolerant atmosphere and failing or refusing to address blatant discrimination, disrespect and disregard for African Americans and their work-place issues.

161.    Without limitation, McDonald's acts or omissions constituting a Hostile Work Environment include:

a. Steven Easterbrook's and Chris Kempczinski's utter disregard for African American employees' and owner/operator's deep concerns regarding troubling racial trends inside McDonald's.

b. Taking their lead from the top, White executives at McDonald's are comfortable openly displaying their bigotry and hostility toward African Americans to "keep them in their place" which is subordinate to White. For instance, HR executive Laura Granger felt comfortable telling

Plaintiff Vicki that her 14-year-old daughter was afraid to go to school because there were too many Black children there.

c. White executives have called African Americans names, including the N-Word, with no repercussions.

d. White executives threatened African Americans physically with no repercussions.

e. Kempczinski openly stated, in the presence of African American employees, that African American presence and participation in leadership does not matter.

f. McDonald's intentionally and publicly ignored Vicki's top of the chart performance while, publicly lauding the performance of much less successful White executives.

g. McDonald's has repeatedly ignored Vicki's pleas for equal treatment for herself and other African American employees.

h. McDonald's ignores overt and implicit bias against African Americans.

i. Since learning of Vicki's claims against McDonald's, it has notified her peers of the claims and instructed them to exclude her and isolate her from usual and customary activities having nothing to do with her claims as punishment for speaking out against racism.

162. In further violation of Section 1981, McDonald's subjected Vicki to hostile environment under the doctrine of *respondeat superior* regarding the acts and

omissions of Steven Easterbrook, Chris Kempczinski, Charles Strong, Melissa Kersey, Bill Garrett and Luis Quintiliano, among others.

163.   In further violation of Section 1981 McDonald's directly discriminated against Vicki and created a severe, pervasive, intimidating, hostile and abusive work environment when it openly stated that African American presence and participation in leadership does not matter and failed or refused to address incidents of verbal assault and physical threats against African Americans at McDonald's; McDonald's intent was to keep African Americans in their place.

164.   As the direct and proximate result of the Defendants' violations of Section 1981, Vicki has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts proven at trial.

165.   As the direct and proximate result of the Defendants' violations of Section 1981 Vicki has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights; the stress caused her to suffer a severe anxiety attack requiring hospital attention during a McDonald's regional meeting.

166.   McDonald's continued its discriminatory conduct creating a hostile environment despite Vicki's protestations.

167.   McDonald's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter other companies from like misconduct.

168.    Steven Easterbrook's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

169.    Chris Kempczinski's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

170.    Charles Strong's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count III under 42 U.S.C. §1981 and 42 U.S.C. §1988, Plaintiff Victoria Guster-Hines requests the entry of judgment against each Defendant imposing individual and joint and several liability for:

A.    Actual and consequential damages, both economic and non-economic, to be proven at trial;

B.    Punitive damages sufficient to punish each Defendant and deter other companies and their controlling executives from like misconduct;

C.    Costs of suit;

61

D.     Attorneys' fees; and

E.     Such other relief available under law and deemed just and proper.

### Count IV

**Domineca Neal's Claim Against All Defendants**
**<u>Hostile Work Environment in Violation of 42 U.S.C. §1981</u>**

171.   Plaintiff Domineca Neal re-alleges paragraphs 1-170 as though set forth herein.

172.   McDonald's violated 42 U.S.C.§1981 by subjecting Domineca to a hostile work environment by allowing and fostering an intolerant atmosphere and failing or refusing to address blatant discrimination, disrespect and disregard for African Americans and their work-place issues.

173.    Without limitation, McDonald's acts or omissions constituting a Hostile Work Environment include:

a. Steven Easterbrook's and Chris Kempczinski's utter disregard for African American employees' and owner/operator's deep concerns regarding troubling racial trends inside McDonald's.

b. White executives have called African Americans names, including the "N Word", with no repercussions.

c. White executives threatened African Americans physically with no repercussions.

d. Kempczinski openly stated, in the presence of African American employees, that African American presence and participation in leadership does not matter.

    e.  McDonald's intentionally and publicly ignored Domineca's top of the chart performance while, publicly lauding the performance of much less successful White executives.

    f.  McDonald's has repeatedly ignored Domineca's pleas for equal treatment for herself and other African American employees.

    g.  McDonald's ignores overt and implicit bias against African Americans.

    h.  Since learning of Domineca's claims against McDonald's, it has notified her peers of the claims and instructed them to exclude her and isolate her from usual and customary activities having nothing to do with her claims as punishment for speaking out against racism.

174.  In violation of Section 1981, and without limitation, McDonald's subjected Domineca to hostile environment under the doctrine of *respondeat superior* regarding the acts and omissions of Steven Easterbrook, Chris Kempczinski, Charles Strong, Melissa Kersey, Bill Garrett and Luis Quintiliano, among others.

175.  In violation of Section 1981 McDonald's directly discriminated against Domineca and created a severe, pervasive, intimidating, hostile and abusive work environment when it openly stated that African American presence and participation in leadership does not matter and failed or refused to address incidents of verbal assault and physical threats against African Americans at McDonald's; McDonald's intent was to keep African Americans in their place.

176.  As the direct and proximate result of the Defendants' violations of Section 1981, Domineca has suffered substantial damages, including, without

limitation, actual and consequential damages for economic loss in amounts to be proven at trial.

177.    As the direct and proximate result of the Defendants' violations of Section 1981 Domineca has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

178.    McDonald's continued its discriminatory conduct creating a hostile environment despite Domineca's protestations.

179.    McDonald's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter other companies from like misconduct.

180.    Steven Easterbrook's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

181.    Chris Kempczinski's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

182.    Charles Strong's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to

punish him and deter other corporate executives in similar positions of authority from like misconduct.

### **Prayer for Relief**

WHEREFORE, on Count IV under 42 U.S.C. §1981 and 42 U.S.C. §1988, Plaintiff Domineca Neal requests the entry of judgment against each Defendant imposing individual and joint and several liability for:

A. Actual and consequential damages, both economic and non-economic, to be proven at trial;

B. Punitive damages sufficient to punish each Defendant and deter other companies and their controlling executives from like misconduct;

C. Costs of suit;

D. Attorneys' fees; and

E. Such other relief available under law and deemed just and proper.

### **Count V**

### **Victoria Guster-Hines' Claims Against All Defendants Unlawful Retaliation in Violation of 42 U.S.C. §1981**

183. Plaintiff Victoria Guster-Hines re-alleges paragraphs 1-182 as though set forth herein.

184. McDonald's violated Section 1981, without limitation, by retaliating against Vicki for speaking out on issues of race, protesting racial discrimination against her and others within McDonald's, and prosecuting her claims against McDonald's.

185.    In violation of Section 1981, and without limitation, McDonald's retaliated against Vicki under the doctrine of *respondeat superior* regarding the acts and omissions of Steven Easterbrook, Chris Kempczinski, and Charles Strong, among others, as stated in paragraphs above.

186.    In violation of Section 1981, and without limitation, McDonald's retaliated against Vicki when she complained that it had discriminated against her by singling her out for demotion when comparable White executives with less credentials, experience at McDonald's and worse performance were not demoted.

187.    In violation of Section 1981, and without limitation, Steven Easterbrook, Chris Kempczinski and Charles Strong specifically retaliated against Vicki for speaking up *for* her rights to be treated equally with comparable White executives and requesting that she be restored to her Vice President position after the FFR.

188.    In violation of Section 1981, and without limitation, Steven Easterbrook, Chris Kempczinski, and Charles Strong, among others, retaliated against Vicki when her counsel notified McDonald's of the claims.  Specifically, in October of 2019, after being notified of Vicki's impending claims and  during the US Executive Leadership meeting in Chicago, McDonald's leadership intentionally excluded Vicki and Domineca from a MA2C meeting (a group that allowed minority employees to discuss diversity and inclusion issues); and by this and their other acts and omissions the Defendants attempted to constructively terminate Vicki.

189.    The conduct of McDonald's and the individual Defendants was intentional and/or in reckless disregard to Vicki's rights.

190.   As the direct *and* proximate result of the Defendants' violations of Section 1981, Vicki has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts proven at trial.

191.   As the direct and proximate result of the Defendants' violations of Section 1981, Vicki has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of *civil* rights.

192.   The unlawful retaliation by Defendants continued despite Vicki's protestations.

193.   McDonald's unlawful retaliation was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter other companies from like misconduct.

194.   Steven Easterbrook's retaliatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

195.   Chris Kempczinski's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

196.   Charles Strong's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to

punish him and deter other corporate executives in similar positions of authority from like misconduct.

## Prayer for Relief

WHEREFORE, on Count V under 42 U.S.C. §1981 and 42 U.S.C. §1988, Plaintiff Victoria Guster-Hines requests the entry of judgment against each Defendant imposing individual and joint and several liability for:

A. Actual and consequential damages, both economic and non-economic, to be proven at trial;

B. Punitive damages sufficient to punish each Defendant and deter other companies and their controlling executives from like misconduct;

C. Costs of suit;

D. Attorneys' fees; and

E. Such other relief available under law and deemed just and proper.

## Count VI

### Domineca Neal's Claims Against All Defendants
### Unlawful Retaliation in Violation of 42 U.S.C. §1981

197. Plaintiff Domineca Neal re-alleges paragraphs 1-196 as though set forth herein.

198. McDonald's violated Section 1981, without limitation, by retaliating against Domineca for speaking out on issues of race, protesting racial discrimination against her and others within McDonald's, and prosecuting her claims against McDonald's.

199.   In violation of Section 1981 McDonald's retaliated against Domineca under the doctrine of *respondeat superior* regarding the acts and omissions of Steven Easterbrook, Chris Kempczinski, and Charles Strong, among others, as stated in paragraphs above.

200.   In violation of Section 1981, and without limitation, McDonald's retaliated against Domineca when she complained it had discriminated against her by singling her out for demotion when comparable White executives with less credentials and less experience at McDonald's and worse performance were not demoted.

201.   In violation of Section 1981, and without limitation, Steven Easterbrook, Chris Kempczinski and Charles Strong specifically retaliated against Domineca for speaking up for her rights to be treated equally with comparable White executives and requesting that she be restored to her Vice President position after the FFR.

202.   In violation of Section 1981, and without limitation, Steven Easterbrook, Chris Kempczinski and Charles Strong retaliated against Domineca when her counsel notified McDonald's of the claims.  Specifically, in October of 2019, after being notified of Domineca's claims and  during a U.S. Executive Leadership meeting in Chicago, McDonald's leadership told Domineca's and Vicki's peers they were litigating against McDonald's and specifically instructed them to exclude Domineca and Vicki from a MA2C meeting (a group dedicated to developing and supporting African American and increase the quality and quantity of the Company's

commitment to diversity and inclusion); and by this and their other acts and omissions the Defendants attempted to constructively terminate Domineca.

203. The conduct of McDonald's and the individual Defendants was intentional and/or in reckless disregard to Domineca's rights.

204. As the direct and proximate result of the Defendants' violations of Section 1981, Domineca has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts proven at trial.

205. As the direct and proximate result of the Defendants' violations of Section 1981, Domineca has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

206. The unlawful retaliation by Defendants continued despite Domineca's protestations.

207. McDonald's unlawful retaliation was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter other companies from like misconduct.

208. Steven Easterbrook's retaliatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

209. Chris Kempczinski's retaliatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to

punish him and deter other corporate executives in similar positions of authority from like misconduct.

210.    Charles Strong's retaliatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other corporate executives in similar positions of authority from like misconduct.

### **Prayer for Relief**

WHEREFORE, on Count VI under 42 U.S.C. §1981 and 42 U.S.C. §1988, Plaintiff Dominica Neal requests the entry of judgment against each Defendant imposing individual and joint and several liability for:

A.    Actual and consequential damages, both economic and non-economic, to be proven at trial;

B.    Punitive damages sufficient to punish each Defendant and deter other companies and their controlling executives from like misconduct;

C.    Costs of suit;

D.    Attorneys' fees; and

E.    Such other relief available under law and deemed just and proper.

### **Count VII**

### **Victoria Guster-Hines' Claim Against McDonald's for**
### **Race Discrimination in Violation of  Title VII**

211.    Plaintiff Victoria Guster-Hines re-alleges paragraphs 1-210 as though set forth herein.

212. McDonald's violated Title VII by engaging in the disparate treatment toward Vicki by subjecting her to worse terms of employment than comparable Non-African American employees.

213. McDonald's violated Title VII, by engaging in racially discriminatory behavior toward other African Americans, including McDonald's franchisees and customers, which had a disparate impact upon Vicki and subjected her to worse terms of employment comparable to non-African American employees in addition to constituting intentional disparate treatment against her.

214. McDonald's further violated Title VII by denying Vicki her enjoyment of the benefits and privileges terms of her employment relationship as an executive with the company the same as non-African American executives..

215. Without limitations, as acts or omissions constituting disparate treatment and/or causing disparate impact, McDonald's denied Vicki:

    a. Her right to be treated as an equal in a diverse environment.

    b. Her right to equality in the work assignments, evaluation of her performance and professional advancement.

    c. Her right to be treated with respect and dignity.

    d. Her right to be considered for and receive opportunities, growth and promotion the same as White executives.

    e. Her right to be protected from being subject to hostile work environment, including but not limited to being exposed, on a day to day

basis, to McDonald's denigration, devaluation and dehumanization of African Americans, including executives, franchisees and customers.

f. Her right to be free from and not subject to unlawful retaliation.

216. In violation of Title VII, and without limitation, McDonald's discriminated against Vicki under the doctrine of *respondeat superior* regarding the acts and omissions of its officers and employees as alleged in this Complaint.

217. In the ways alleged in this Complaint, McDonald's knowingly discriminated against Vicki based on race and knowingly treated non-African Americans preferably.

218. McDonald's conduct was intentional or in reckless disregard to Vicki's right to equality.

219. McDonald's conduct was part of a pattern and practice of discriminatory treatment within McDonald's.

220. As the direct and proximate result of McDonald's violations of Title VII, Vicki has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts to be proven at trial.

221. As the direct and proximate result of McDonald's violations of Title VII, Vicki has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

222. McDonald's discriminatory conduct continued despite protestation by Vicki and other African American employees and owners/operators.

223.  McDonald's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

224.  Steven Easterbrook's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other corporations from like misconduct.

225.  Chris Kempczinski's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other corporations from like misconduct.

226.  Charles Strong's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other corporations from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count VII under Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et.seq., Plaintiff Victoria Guster-Hines requests the entry of judgment against McDonald's for:

  A.  Actual and consequential damages, both economic and non-economic, to be proven at trial;

  B.  Punitive damages sufficient to punish McDonald's and deter it and other companies from like misconduct;

  C.  Costs of suit;

  D.  Attorneys' fees; and

E.    Such other relief available under law and deemed just and proper.

## Count VIII

### Domineca Neal's Claim Against McDonald's
### for Race Discrimination in Violation of Title VII

227.   Plaintiff Domineca Neal re-alleges paragraphs 1-226 as though set forth herein.

228.   McDonald's violated Title VII by engaging in the disparate treatment toward Domineca by subjecting her to worse terms of employment than comparable Non-African American employees.

229.   McDonald's violated Title VII, by engaging in racially discriminatory behavior toward other African Americans, including McDonald's franchisees and customers, which had a disparate impact upon Domineca and subjected her to worse terms of employment comparable to non-African American employees in addition to constituting intentional disparate treatment against her.

230.   McDonald's further violated Title VII by denying Domineca her enjoyment of the benefits and privileges terms of her employment relationship as an executive with the company the same as non-African American executives..

231.   Without limitations, as acts or omissions constituting disparate treatment and/or causing disparate impact, McDonald's denied Domineca:

    a.  Her right to be treated as an equal in a diverse environment.

    b.  Her right to equality in the work assignments, evaluation of her performance and professional advancement.

    c.  Her right to be treated with respect and dignity.

    d.   Her right to be considered for and receive opportunities, growth and promotion the same as non-African American executives.

    e.   Her right to be protected from being subject to hostile work environment, including but not limited to being exposed, on a day to day basis, to McDonald's denigration, devaluation and dehumanization of African American franchisees and customers as part of purportedly legitimate business activities.

    f.   Her right to be free from and not subject to unlawful retaliation.

232.   In violation of Title VII, and without limitation, McDonald's discriminated against Domineca under the doctrine of *respondeat superior* regarding the acts and omissions of its officers and employees as alleged in this Complaint.

233.   In the ways alleged in this Complaint, McDonald's knowingly discriminated against Domineca based on race and knowingly treated non-African Americans preferably.

234.   McDonald's conduct was intentional or in reckless disregard to Domineca right to equality.

235.   McDonald's conduct was part of a pattern and practice of discriminatory treatment within McDonald's.

236.   As the direct and proximate result of the McDonald's violations of Title VII, Domineca has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts to be proven at trial.

237. As the direct and proximate result of McDonald's violations of Title VII, Domineca has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

238. McDonald's discriminatory conduct continued despite protestation by Domineca and other African American employees and owners/operators.

239. McDonald's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

240. Steven Easterbrook's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other corporations from like misconduct.

241. Chris Kempczinski's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other corporations from like misconduct.

242. Charles Strong's discriminatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other corporations from like misconduct.

**<u>Prayer for Relief</u>**

WHEREFORE, on Count VIII under Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et.seq., Plaintiff Domineca Neal requests the entry of judgment against McDonald's for:

A.  Actual and consequential damages, both economic and non-economic, to be proven at trial;

B.  Punitive damages sufficient to punish each Defendant and deter it and other companies from like misconduct;

C.  Costs of suit;

D.  Attorneys' fees; and

E.  Such other relief available under law and deemed just and proper.

## Count IX

### Victoria Guster-Hines' Claim Against McDonald's for Hostile Work Environment in Violation of Title VII

243.    Plaintiff Victoria Guster-Hines re-alleges paragraphs 1-242 as though set forth herein.

244.    McDonald's violated Title VII by subjecting Vicki to a hostile work environment by allowing and fostering an intolerant atmosphere and failing or refusing to address blatant discrimination, disrespect and disregard for African Americans and their work-place issues.

245.     Without limitation, McDonald's acts or omissions constituting a Hostile Work Environment include:

a.  Steven Easterbrook's and Chris Kempczinski's blatant and utter disregard for African American employees' and owner/operator's deep concerns regarding troubling racial trends inside McDonald's.

b.  Taking their lead from the top, White executives at McDonald's are comfortable openly displaying their bigotry and hostility toward African

Americans to "keep them in their place" which is subordinate to White. For instance, HR executive Laura Granger felt comfortable stating that her 14-year-old daughter was afraid to go to school because there were too many Black children there and stating it directly to Vicki.

c. White executives have called African Americans names, including the N-Word, with no repercussions.

d. White executives threatened African Americans physically with no repercussions.

e. Kempczinski openly stated, in the presence of African American employees, that African American presence and participation in leadership does not matter.

f. McDonald's intentionally and publicly ignored Vicki's top of the chart performance while publicly lauding the performance of much less successful White executives.

g. McDonald's has repeatedly ignored Vicki's pleas for equal treatment for herself and other African American employees.

h. McDonald's ignores overt and implicit bias against African Americans.

i. Since learning of Vicki's claims against McDonald's, it has notified her peers of the claims and instructed them to exclude her and isolate her from usual and customary activities having nothing to do with her claims as punishment for speaking out against racism.

246.   In further violation of Title VII, McDonald's subjected Vicki to hostile environment under the doctrine of *respondeat superior* regarding the acts and omissions of Steven Easterbrook, Chris Kempczinski, Charles Strong, Melissa Kersey, Bill Garrett and Luis Quintiliano, among others.

247.   In further violation of Title VII, McDonald's directly discriminated against Vicki and created a severe, pervasive, intimidating, hostile and abusive work environment when it openly stated that African American presence and participation in leadership does not matter and failed or refused to address incidents of verbal assault and physical threats against African Americans at McDonald's; McDonald's intent was to keep African Americans in their place.

248.   As the direct and proximate result of the Defendants' violations of Title VII, Vicki has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts proven at trial.

249.   As the direct and proximate result of the Defendants' violations of Title VII, Vicki has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights; the stress caused her to suffer a severe anxiety attack requiring hospital attention during a McDonald's regional meeting.

250.   McDonald's continued its discriminatory conduct creating a hostile environment despite Vicki's protestations.

251.   McDonald's discriminatory conduct had a disparate impact upon Vicki as she was forced to endure and, furthermore, appear to be complicit in a veiled but

targeted attack on the dignity, value and worthiness of African Americans, including executives, franchisees and customers.

252.   McDonald's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

253.   Steven Easterbrook's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

254.   Chris Kempczinski's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and  other companies from like misconduct.

255.   Charles Strong's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count IX under Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et.seq., Plaintiff Victoria Guster-Hines requests the entry of judgment against McDonald's imposing liability for:

> A.   Actual and consequential damages, both economic and non-economic, to be proven at trial;

B.  Punitive damages sufficient to punish each Defendant and deter it and other companies from like misconduct;

C.  Costs of suit;

D.  Attorneys' fees; and

E.  Such other relief available under law and deemed just and proper.

## Count X

### Domineca Neal's Claim Against McDonald's for Hostile Work Environment in Violation of Title VII

256.  Plaintiff Domineca Neal re-alleges paragraphs 1-255 as though set forth herein.

257.  McDonald's violated Title VII by subjecting Domineca to a hostile work environment by allowing and fostering an intolerant atmosphere and failing or refusing to address blatant discrimination, disrespect and disregard for African Americans and their work-place issues.

258.  Without limitation, McDonald's acts or omissions constituting a Hostile Work Environment include:

a.  Steven Easterbrook's and Chris Kempczinski's blatant and utter disregard for African American employees' and owner/operator's deep concerns regarding troubling racial trends inside McDonald's.

b.  Taking their lead from the top, White executives at McDonald's are comfortable openly displaying their bigotry and hostility toward African Americans to "keep them in their place" which is subordinate to White. For instance, in February 2019, Domineca was <u>the</u> top U.S. performer

in 2018 through year-to-date 2019, but Bill Garrett (SVP of US Operations) intentionally and repeatedly skipped Domineca's name as he publicly read off the list of top performers shown on a large screen; he simultaneously and intentionally denied her the recognition she deserved and humiliated her in front of her peers and Company executives.

c. White executives have called African Americans names, including the N-Word, with no repercussions.

d. White executives threatened African Americans physically with no repercussions.

e. Kempczinski openly stated, in the presence of African American employees, that African American presence and participation in leadership does not matter.

f. McDonald's intentionally and publicly ignored Domineca's top of the chart performance while publicly lauding the performance of much less successful White executives.

g. McDonald's has repeatedly ignored Domineca's pleas for equal treatment for herself and other African American employees.

h. McDonald's ignores overt and implicit bias against African Americans.

i. Since learning of Domineca's claims against McDonald's, it has notified her peers of the claims and instructed them to exclude her and isolate

her from usual and customary activities having nothing to do with her claims as punishment for speaking out against racism.

259.   In further violation of Title VII, McDonald's subjected Domineca  to hostile environment under the doctrine of *respondeat superior* regarding the acts and omissions of Steven Easterbrook, Chris Kempczinski, Charles Strong, Melissa Kersey, Bill Garrett and Luis Quintiliano, among others.

260.   In further violation of Title VII, McDonald's directly discriminated against Domineca and created a severe, pervasive, intimidating, hostile and abusive work environment when it openly stated that African American presence and participation in leadership does not matter and failed or refused to address incidents of verbal assault and physical threats against African Americans at McDonald's; McDonald's intent was to keep African Americans in their place.

261.   As the direct and proximate result of the Defendants' violations of Title VII, Vicki has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts proven at trial.

262.   As the direct and proximate result of the Defendants' violations of Title VII, Domineca has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

263.   McDonald's continued its discriminatory conduct creating a hostile environment despite Domineca's protestations.

264.   McDonald's discriminatory conduct had a disparate impact upon Domineca as she was forced to endure and, furthermore, appear to be complicit in a veiled but targeted attack on the dignity, value and worthiness of African Americans, including executives, franchisees and customers;

265.   McDonald's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

266.   Steven Easterbrook's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

267.   Chris Kempczinski's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

268.   Charles Strong's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count X under Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et.seq.,.  Plaintiff Domineca Neal requests the entry of judgment against McDonald's imposing liability for:

A.   Actual and consequential damages, both economic and non-economic, to be proven at trial;

B.   Punitive damages sufficient to punish McDonald's and deter it and other companies from like misconduct;

C.   Costs of suit;

D.   Attorneys' fees; and

E.   Such other relief available under law and deemed just and proper.

## Count XI

### Victoria Guster-Hines' Claims Against McDonald's for Unlawful Retaliation in Violation of Title VII

269.   Plaintiff Victoria Guster-Hines re-alleges paragraphs 1-268 as though set forth herein.

270.   McDonald's violated Title VII, without limitation, by retaliating against Vicki for speaking out on issues of race, protesting racial discrimination against her and others within McDonald's, and prosecuting her claims against McDonald's.

271.   In violation of Title VII, and without limitation, McDonald's retaliated against Vicki under the doctrine of *respondeat superior* regarding the acts and omissions of Steven Easterbrook, Chris Kempczinski, and Charles Strong, among others, as stated in paragraphs above.

272.   In violation of Title VII, and without limitation, McDonald's retaliated against Vicki when she complained that it had discriminated against her by singling her out for demotion when comparable White executives with less credentials, experience at McDonald's and worse performance were not demoted.

273.   In violation of Title VII, and without limitation, Steven Easterbrook, Chris Kempczinski and Charles Strong specifically retaliated against Vicki for speaking up *for* her rights to be treated equally with comparable White executives and requesting that she be restored to her Vice-President position after the FFR.

274.   In violation of Title VII, and without limitation, Steven Easterbrook, Chris Kempczinski, and Charles Strong, among others, retaliated against Vicki when her counsel notified McDonald's of the claims.  Specifically, in October of 2019, after being notified of Vicki's impending claims and  during the US Executive Leadership meeting in Chicago, McDonald's leadership intentionally excluded Vicki and Domineca from a MA2C meeting (a group that allowed minority employees to discuss diversity and inclusion issues); and by this and their other acts and omissions the Defendants attempted to constructively terminate Vicki.

275.   The conduct of McDonald's and the individual Defendants was intentional and/or in reckless disregard to Vicki's rights.

276.   As the direct *and* proximate result of the Defendants' violations of Title VII, Vicki has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts proven at trial.

277.   As the direct and proximate result of the Defendants' violations of Title VII, Vicki has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of *civil* rights.

278.    The unlawful retaliation by Defendants continued despite Vicki's protestations.

279.    McDonald's unlawful retaliation was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

280.    Steven Easterbrook's retaliatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

281.    Chris Kempczinski's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other corporate executives in similar positions of authority from like misconduct.

282.    Charles Strong's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count XI under Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et.seq., Plaintiff Victoria Guster-Hines requests the entry of judgment against McDonald's imposing liability for:

> A.    Actual and consequential damages, both economic and non-economic, to be proven at trial;

> B.    Punitive damages sufficient to punish McDonald's and deter it and

other companies and their controlling executives from like misconduct;

C.    Costs of suit;

D.    Attorneys' fees; and

E.    Such other relief available under law and deemed just and proper.

### Count XII

### Domineca Neal's Claims Against McDonald's
### for Unlawful Retaliation in Violation of Title VII

283.   Plaintiff Domineca Neal re-alleges paragraphs 1-282 as though set forth herein.

284.   McDonald's violated Title VII, without limitation, by retaliating against Domineca for speaking out on issues of race, protesting racial discrimination against her and others within McDonald's, and prosecuting her claims against McDonald's.

285.   In violation of Title VII, and without limitation, McDonald's retaliated against Domineca under the doctrine of *respondeat superior* regarding the acts and omissions of Steven Easterbrook, Chris Kempczinski, and Charles Strong, among others, as stated in paragraphs above.

286.   In violation of Title VII, and without limitation, McDonald's retaliated against Domineca when she complained that it had discriminated against her by singling her out for demotion when comparable White executives with less credentials, experience at McDonald's and worse performance were not demoted.

287.   In violation of Title VII, and without limitation, Steven Easterbrook, Chris Kempczinski and Charles Strong specifically retaliated against Vicki for

speaking up *for* her rights to be treated equally with comparable White executives and requesting that she be restored to her Vice President position after the FFR.

288.   In violation of Title VII, and without limitation, Steven Easterbrook, Chris Kempczinski, and Charles Strong, among others, retaliated against Vicki when her counsel notified McDonald's of the claims.  Specifically, in October of 2019, after being notified of Domineca's impending claims and  during the US Executive Leadership meeting in Chicago, McDonald's leadership intentionally excluded Vicki and Domineca from a MA2C meeting (a group that allowed minority employees to discuss diversity and inclusion issues); and by this and their other acts and omissions the Defendants attempted to constructively terminate Vicki.

289.   The conduct of McDonald's and the individual Defendants was intentional and/or in reckless disregard to Domineca's rights.

290.   As the direct *and* proximate result of the Defendants' violations of Title VII, Domineca has suffered substantial damages, including, without limitation, actual and consequential damages for economic loss in amounts proven at trial.

291.   As the direct and proximate result of the Defendants' violations of Title VII, Domineca has also suffered substantial non-economic damages, including, without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of *civil* rights.

292.   The unlawful retaliation by Defendants continued despite Domineca's protestations.

293.    McDonald's unlawful retaliation was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter other companies from like misconduct.

294.    Steven Easterbrook's retaliatory conduct was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

295.    Chris Kempczinski's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

296.    Charles Strong's discriminatory conduct creating a hostile environment was intentional and malicious, making punitive or exemplary damages necessary to punish McDonald's and deter it and other companies from like misconduct.

## **Prayer for Relief**

WHEREFORE, on Count XII under Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et.seq.,  Plaintiff Domineca Neal requests the entry of judgment against McDonald's imposing liability for:

     A.     Actual and consequential damages, both economic and non-economic, to be proven at trial;

     B.     Punitive damages sufficient to punish McDonald's and deter it and other companies from like misconduct;

     C.     Costs of suit;

D.  Attorneys' fees; and

E.  Such other relief available under law and deemed just and proper.

## **JURY TRIAL DEMANDED**

297.  Plaintiff Victoria Guster-Hines demands trial by jury in open court.

298.  Plaintiff Domineca Neal demands trial by jury in open court.

January 30, 2020.


Respectfully submitted,

**PLAINTIFF VICTORIA GUSTER-HINES**
**PLAINTIFF DOMINECA NEAL**

By:  /s/ Carmen D. Caruso

Carmen D. Caruso (# 6189462)
cdc@cdcaruso.com
CARMEN D. CARUSO LAW FIRM
77 West Washington Street, Suite 1900
Chicago, IL 60602
(312) 626-1160


By:  /s/ Linda C. Chatman

Linda C. Chatman ( #6201236)
lindachatman@chatmanlaw.com
CHATMAN LAW OFFICES, LLC
Two Prudential Plaza
180 N. Stetson Avenue Suite 3500
Chicago, Illinois, 60601

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was filed electronically on January 30, 2020. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Nigel F. Telman – ntelman@proskauer.com
Edward C. Young – eyoung@proskauer.com
PROSKAUER ROSE LLP
Three First National Plaza
70 W. Madison, Ste. 3800
Chicago, IL 60602

*Attorneys for Defendants*

/s/ Carmen D. Caruso