IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-00117 |
| v. | ) ) | Honorable Mary M. Rowland |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG, | ) ) ) ) ) ) ) | Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR A
PROTECTIVE ORDER FROM CERTAIN OF
PLAINTIFFS' WRITTEN DISCOVERY REQUESTS,
<u>OR, IN THE ALTERNATIVE, FOR A DISCOVERY CONFERENCE</u>**

Defendants, McDonald's Corporation ("McDonald's Corp."), McDonald's USA, LLC ("McDonald's USA"), Christopher Kempczinski, and Charles Strong (collectively "Individual Defendants"), by and through the undersigned counsel, hereby move this Court to enter a protective order limiting Plaintiffs' written discovery requests pursuant to Fed. R. Civ. P. 26(c), or, in the alternative, hold a discovery conference to determine the appropriate scope of discovery in this matter. In support of this Motion, Defendants state as follows:

## **INTRODUCTION**[1]

It is well settled that "the discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2019 WL 11583407, at *1 (N.D. Ill. Jan. 17, 2019). It has now become clear – after numerous attempts to resolve discovery disputes – that Plaintiffs believe that, because they have filed claims asserting that they each individually suffered adverse employment actions because of their race, they are somehow are entitled to broad discovery of information from Defendants that have nothing to do with their individual employment claims. Thus, Defendants are forced to bring this Motion in an effort to reign in Plaintiffs' unbounded discovery requests by asking that the Court make clear what categories of discovery Plaintiffs are reasonably entitled to given their claims as pled in the Third Amended Complaint.

To be clear, this case involves individual claims of workplace discrimination, harassment, and retaliation asserted by two Plaintiffs under Title VII of the Civil Rights Act of 1964 ("Title VII") and Section 1981. Essentially, Plaintiffs' claim that Defendants subjected them to race

---

[1] Pursuant to Judge Finnegan's Standing Order, Defendants reached out to Plaintiffs to attempt to agree on a briefing schedule. Plaintiffs declined to respond to Defendants' proposed schedule in time for this

discrimination when: (i) McDonald's USA decided in 2018 as part of a company-wide restructure to eliminate the Field Officer position that a number of employee's held, including Plaintiffs, and reclassify the role from an Officer position to a Senior Director position; (ii) McDonald's USA failed to promote them; and (iii) McDonald's USA terminated Neal's employment.  Plaintiffs also assert that they were subjected to a hostile work environment and retaliation because they complained about race discrimination at McDonald's.

The parties recently commenced discovery.  In their First Sets of Interrogatories and First Set of Requests for Production (the "Requests"), Plaintiffs served ***194 discovery requests on each Defendant***, including many that seek categories of information and documents that are well beyond the reasonable scope of Plaintiffs claims as pled and are not proportional to the needs of this case.  (Defendants' Responses and Objections to Plaintiffs' Requests are attached as Group Exhibit A).

Further, despite meet-and-confer efforts between the parties to attempt to reach an agreement on the appropriate boundaries for Plaintiffs' voluminous Requests, the parties have reached an impasse on several issues stemming from their fundamentally different viewpoints regarding what this case is and what this case is *not* about.  Defendants now seek judicial intervention limiting Plaintiffs Requests or for a discovery conference to discuss the following issues:[2]

---

filing. See Group Exhibit B. Defendants respectfully request that Plaintiffs have until December 7, 2021, to file their response to this Motion, and Defendants have until December 14, 2021, to file a reply.

[2] Defendants note that there are several other outstanding discovery issues on which the parties are still meeting and conferring, including Plaintiffs' discovery requests seeking production of all emails, text messages, and work product that Plaintiffs sent or received from 2014 to present; expansive information and documents related to other employees of McDonald's Corp. or McDonald's USA in an apparent effort to cobble together evidence to support Plaintiffs' alleged "pattern or practice" claims; and *all* documents related to McDonald's USA's Field First Restructure ("FFR").  To the extent the parties' meet-and-confer efforts fail on these or other issues, Defendants reserve the right to file a second Motion for Protective Order to address such disputes.

*First*, Plaintiffs' Requests improperly seek scores of documents regarding McDonald's Corp.'s and McDonald's USA's diversity and inclusion efforts. As McDonald's Corp. established in its Motion to Quash Non-Party Subpoenas (ECF. No. 118), the issue of these general diversity and inclusion efforts – which are not mandated by Title VII or Section 1981 – have no relevance to whether Plaintiffs were personally subjected to race-based discrimination or harassment. And, Plaintiffs' Requests seeking the Individual Defendants' *personal* views, "policies," or "efforts" on diversity and inclusion likewise have no bearing on Plaintiffs' individual claims and would in no way support Plaintiffs' allegations against Defendants.

*Second*, the Requests improperly seek documents and information related to Defendants' business decisions involving or related to third parties, including franchisees, customers, and vendors. Among many other examples, Plaintiffs seek information related to the "actual or foreseeable attrition in the ranks of African American franchisees and/or the causes of that problem and/or ways to cure it, "any known or suspected differentials or variances between the economic or financial results experienced by African American Owner/Operators [i.e. franchisees] of McDonald's Restaurants, in comparison to White Owner/Operators of McDonald's Restaurants," and "actual or projected financial impact of the Corporate Defendants' initiatives that would likely impose costs on franchisees." *See* Group Exhibit A. However, as the Court expressly stated in its Memorandum Opinion and Order granting in part McDonald's Motion to Dismiss ("Memorandum Opinion and Order"), "the treatment of African American franchisees…and African American customers…are not employment practices cognizable under Title VII." (ECF. No. 90 at 17). The vast amount of information related to Defendants' customers, vendors, and/or franchisees Plaintiffs seek here is not at all proportional to the needs of this matter, particularly in light of this Court's prior rulings.

3

**_Third_**, the Requests seek information and documents related to McDonald's Corp.'s or McDonald's USA's programs or initiatives unrelated to Plaintiffs' employment with McDonald's USA. These requests seek information and documents about, *inter alia*, advertising spend and programs focused on strategies to improve food, the customer experience, and being competitive on value. There is no question that these initiatives had no impact whatsoever on the terms and conditions of Plaintiffs' employment and have no relevance to whether Plaintiffs were personally subjected to discriminatory, harassing, or retaliatory treatment. Plaintiffs should not be allowed to utilize the discovery process to peruse all aspects of Defendants' business operations.

**_Fourth_**, the Requests seek evidence related to investors of McDonald's Corp. or other investment-related information. As set forth in McDonald's Corp.'s Motion to Quash (ECF No. 118), information related to or given to McDonald's Corp.'s investors is not relevant to this matter, which is focused on the treatment of two individual employees who did not even work for McDonald's Corp. and whose responsibilities were unrelated to investors.[3]

## ARGUMENT

### I. Legal Standard

While Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties engaged in civil litigation to seek discovery "regarding any non-privileged matter that is relevant to any

---

[3] Prior to bringing this Motion, Defendants engaged in substantive meet-and-confer efforts with Plaintiffs in an effort to resolve the issues addressed herein. On November 2, 2021, counsel for Defendants sent correspondence to Plaintiffs' counsel outlining their broader objections to Plaintiffs' Requests prior to serving their formal written responses and objections to Plaintiffs' Requests on November 3, 2021. The service of these letters was intended to expedite the meet and confer process, and copies of Defendants' correspondence are attached as Group Exhibit B. Defendants' counsel then requested a telephone conference with Plaintiffs' counsel as soon as possible to discuss the issues. The parties had a telephonic conference on November 11, 2021. Following the parties' call on November 11, Plaintiffs' counsel sent a short letter summarizing the call, and later responded to Defendants' November 2 letters more fulsomely on November 19. Defendants sent a follow-up response to Plaintiffs' November 19 letter on November

party's claim or defense," the bounds of such discovery are not limitless. *Allen v. City of Chicago,* 2010 WL 118372, at *2 (N.D. Ill. Jan. 8, 2010). Specifically, "the Rules preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden." *Smithkline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000).

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Schyvincht v. Menard, Inc.*, 2019 WL 3002961, at *2 (N.D. Ill. July 10, 2019). A court may "limit discovery if it determines that the burden of the discovery outweighs its benefit." *Kleen Prod. LLC v. Packaging Corp. of Am.* 2012 WL 4498465, at *9 (N.D. Ill. Sept. 28, 2012), *objections overruled*, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013). "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994).

Moreover, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Buonavolanto v. LG Chem, Ltd*., No. 18 C 2802, 2019 WL 8301068, at *2 (N.D. Ill. Mar. 8, 2019) (quoting Fed. R. Civ. P. 26, Advis. Comm. Notes for 2015 Amendments). In assessing proportionality, courts will examine "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *McGee v. Macon Cty. Sheriff's Dep't*, No. 16-CV-2221, 2019 WL 11626425, at *6 (C.D. Ill. Oct. 4, 2019) (granting motion for protective order).

---

23, 2021. Despite these efforts, the parties reached an impasse on the issues outlined herein, necessitating this Motion.

**II.     A Protective Order Should Issue because Many of Plaintiffs' Discovery Requests Are Exceedingly Overbroad, Are Not Proportional to This Matter, and Seek Information Not Relevant To Plaintiffs' Claims.**

        **a.     Plaintiffs' Requests Seek Substantial Evidence Related to Defendants' Diversity and Inclusion Efforts, Which are Not Proportional to the Needs of this Matter and are Not Relevant to this Case.**

First, Plaintiffs' Requests improperly seek scores of documents regarding McDonald's Corp.'s and McDonald's USA's diversity and inclusion efforts.  Specifically, Interrogatory No. 5 of Plaintiffs' First Set of Interrogatories issued to McDonald's Corp. and McDonald's USA, LLC, and Plaintiffs' Requests for Production Nos. 21(d)-(q), 22, 23, 24, 25(k), 36, 74(a), 74(b), 75(a), 75(b), 76, 77, 80, 81, 82, 83, 84(d), 85, 86, 87, 88, 89, 97, and 168, all seek this category of information and documents. *See* Exhibit C.  Defendants seek a protective order precluding Plaintiffs from seeking information or documents related to this topic, as Requests for such information are not proportional to the needs of this case and are not relevant to the claims or defenses asserted in this litigation.  The burden that would be placed on Defendants to identify all documents, communications, analysis, etc. regarding its "diversity and inclusion efforts" – efforts which involve employees, franchisees, suppliers, and customers – would be overwhelming and necessarily require, among many other things, discussions with every past and present hiring manager, and communications with outside partners, and many others, all of which ultimately would have no bearing on any of the evidence Plaintiffs are required to present in order to sustain their claims under Title VII or Section 1981.

As McDonald's Corp. established in its Motion to Quash Non-Party Subpoenas (ECF No. 118), McDonald's Corp.'s and McDonald's USA's diversity and inclusion efforts have no relevance to the limited questions at issue in Plaintiffs' lawsuit and, accordingly, Plaintiffs' extensive requests related to this topic are not proportional to the needs of this matter. Specifically, Plaintiffs carry the burden of establishing an adverse employment action motivated

6

by an unlawful impetus or adverse impact to support their discrimination claims. *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1105-09 (7th Cir. 2012). McDonald's Corp.'s and McDonald's USA's diversity and inclusion efforts, which Plaintiffs claim were "insufficient" because of an alleged focus on women instead of African Americans, are not mandated by Title VII or Section 1981, and have no bearing on this analysis. As noted in this Court's Memorandum Opinion and Order, the alleged impact of the alleged policy shift to focus on women "was psychological; it did not change the terms or conditions of the Plaintiffs' employment. They have therefore failed to state that the policy constituted an adverse employment action as required under Title VII." (Dkt. No. 90 at 16-17). *See also Davis v. Precoat Metals*, 328 F.Supp.2d 847, 855-56 (N.D. Ill. 2004) (requiring plaintiffs to "show that the challenged employment practice has a significantly adverse impact on a protected group"). The Memorandum Opinion and Order also noted that Easterbrook's alleged omission of African Americans from McDonald's diversity goals in order to focus on gender, alleged reduction of advertising directed towards African American consumers, and alleged allowance of a working group dedicated to increasing racial diversity to go dormant were not actions that constituted "harassment." (Dkt. No. 90 at 30).

Additionally, to the extent that Plaintiffs seek the Individual Defendants' *personal* views, "policies," or "efforts" on diversity and inclusion, such as requested in Request for Production No. 19, such Requests are also irrelevant. Such information has no bearing on Plaintiffs' claims and would in no way support Plaintiffs' allegations against Defendants.

Accordingly, Defendants request that this Court enter an order prohibiting Plaintiffs from seeking information or documents related to this topic.

7

        **b.**        **Plaintiffs' Requests Seek Irrelevant Information Related to Third Parties Not Involved in This Matter.**

The Requests also improperly seek documents and information related to Defendants' business decisions involving or related to third parties, including franchisees, customers, and vendors. Specifically, Interrogatory Nos. 6, 7, 25 of the First Interrogatories issued to McDonald's Corp., Interrogatory Nos. 2, 6, 7, 25 of the Interrogatories issued to McDonald's USA, LLC, and Requests for Production Nos. 20(a), 20(c), 20(d), 21(a), 21(e)-(n), 22(a), 22(c)-(l), 23(c)-(g), 23(i)-(k), 24, 66(b), 66(d), 67, 77, 86-90, 92, 94-96, 98-107, 111, 119, 154-158, 165, and 169, address, in whole or in part, this category of information and documents. *See* Exhibit D. To put this request in perspective, there are over 38,000 McDonald's locations in over 100 countries, and approximately 93% of McDonald's restaurants worldwide are owned and operated by independent franchisees. McDonald's restaurants serve tens of millions of customers per day; and McDonald's USA and McDonald's Corp. engage a substantial number of vendors every year for projects and services for the hundreds of departments worldwide within both companies. Defendants object to producing any information related to these Requests as they are overbroad, unduly burdensome, and seek information irrelevant to this litigation.

To take just a few examples, Plaintiffs seek information related to the "actual or foreseeable attrition in the ranks of African American franchisees and/or the causes of that problem and/or ways to cure it," "[a]ll documents, including but not limited to internal and external communications, related to each occasion on which the Corporate Defendants analyzed the racial demographics of their customers in the U.S.A.," and "[a]ll documents including but not limited to internal and external communications related to any efforts by any Defendant after September 23, 2019 whether general or specific…[t]o reverse the decline in national or regional spending with advertising agencies, or other vendors/suppliers, owned by African Americans."

8

*See* Group Exhibit A. However, information related to Defendants' customers, vendors, or franchisees is not related to the claims of discrimination and retaliation brought by Plaintiffs; indeed, the Court has already ruled that "the treatment of African American franchisees…and African American customers…are not employment practices cognizable under Title VII." (ECF. No. 90 at 17). Further, other courts have found that requests for such third-party evidence are overbroad on their face. *See, e.g., Burnett v. W. Res. Inc.,* No. CIV. A. 95-2145-EEO, 1996 WL 134830, at *3 (D. Kan. Mar. 21, 1996) ("Request 26, however, appears overly broad on its face. It seeks '[a]ll documents related to allegations of discrimination based on disability and/or retaliation by the defendant made by employees, customers, vendors or others.'").[4]

Accordingly, Defendants request that this Court enter an order prohibiting Plaintiffs from seeking information or documents related to this topic.

### c. The Requests Seek Information Regarding Business Initiatives Unrelated to Plaintiffs' Employment.

The Requests also seek information and documents regarding programs and initiatives at McDonald's Corp. and/or McDonald's USA unrelated to Plaintiffs' employment with McDonald's USA. Specifically, Interrogatory Nos. 8 and 9 of the First Interrogatories issued to McDonald's Corp., Interrogatory No. 8 of the Interrogatories issued to McDonald's USA, LLC, and Requests for Production Nos. 21-25, 59, 84, 88, 91, 93, 103, 123-124, 148, 159, 164, 166-168, address, in whole or in part, this category of information and documents. *See* Exhibit E.

---

[4] Despite this position, Defendants acknowledge the Court's ruling in its Memorandum Opinion and Order (ECF No. 90) regarding race-based comments or harassment directed to franchisees. However, Plaintiffs' Requests go vastly beyond the scope appropriate in this matter, and Defendants request the Court's assistance in appropriately narrowing the scope of these Requests such that only information relevant to Plaintiffs' claims may be sought based on the foregoing arguments herein.

These requests seek information and documents about, *inter alia*, McDonald's "Parity" program, the Big Bolder Vision ("BBV") / Velocity Growth Plan[5], and documents related to McDonald's advertising spend. However, these topics have no impact on the terms and conditions of Plaintiffs' employment and have no relevance to whether or not Plaintiffs were personally subjected to discriminatory or retaliatory treatment. Again, Plaintiffs simply may not utilize the discovery process as a fishing expedition into all aspects of Defendants' business operations. *See Kearse v. Varnell, Struck & Assocs., Inc.*, No. 05 CV 548, 2007 WL 1170598, at *1 (N.D. Okla. Apr. 18, 2007) ("The filing of a lawsuit does not necessarily open up all aspects of a defendant's business and financial dealings for inspection."). And, because these programs largely deal with third parties and not employees, the arguments in Section II.b *supra* apply with equal force here.

As such, Defendants request that this Court issue an order precluding discovery on these topics.

**d.      The Requests Seek Unrelated Investment Information Related to Defendants.**

As a final matter, the Requests seek documents and information related to investors of McDonald's Corp. or other investment-related information. Specifically, Request for Production No. 26 addresses, in part, this category of documents and seeks "[a]ll documents related to any Defendants' statements or other communications about this case, or about any facts alleged by Plaintiffs, in which any Defendant was in communications…[w]ith shareholders or potential investors, the investment community." *See* Group Exhibit A, Request for Production No. 26.

---

[5] The BBV Program was rolled out in 2017 and is a program aimed at improving the food, customer experience, and competitiveness of the McDonald's brand. This Program impacted the entire McDonald's brand, including McDonald's franchisees. (ECF No. 94 at ¶ 19, Ex. E to ECF No. 94).

Defendants have objected to producing any information related to this Request, as it is overbroad and seeks information irrelevant to this litigation.

As set forth in McDonald's Corp.'s Motion to Quash (ECF No. 118), information related to or given to McDonald's Corp.'s investors is not relevant to this matter, which is focused on the treatment of two individual employees whose responsibilities were unrelated to McDonald's Corp.'s investors. Further, Plaintiffs' request is a textbook example of an overbroad and unduly burdensome request. "[T]here are limits to the use of open-ended terms such as 'related to,' 'pertaining to,' or 'concerning.' A discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term…to modify a general category or broad range of documents or information." *Dauska v. Greenbay Packaging, Inc.,* No. 12-C-925, 291 F.R.D. 251, 261 (E.D. Wis. 2013) (internal citation omitted). Accordingly, McDonald's Corp. objects to producing information related to this topic and requests the Court issue an order precluding Requests on this topic.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that this Court issue an order limiting Plaintiffs' discovery requests in accordance with the above, or, in the alternative, an order limiting each of the specific discovery requests addressed herein which the Court finds to be objectionable; specifically, Interrogatory Nos. 2, 5, 6, 7, and 25 issued to McDonald's Corp., Interrogatory Nos. 5, 6, 7, and 25 issued to McDonald's USA, LLC, and Plaintiffs' First Requests for Production Nos. 20(a), 20(c), 20(d), 21-25, 26, 36, 39-47, 59, 66-67, 74(a), 74(b), 75(a), 75(b), 76, 77, 80-92, 94-107, 111, 119, 123-24, 148, 154-159, and 164-169. To the extent the Court would prefer to discuss these matters with the Parties, Defendants request a discovery conference to address the above issues.

11

Dated:  November 23, 2021                    Respectfully submitted,


                                             /s/ Nigel F. Telman
                                             Nigel F. Telman
                                             Edward C. Young
                                             Atoyia S. Harris
                                             Proskauer Rose LLP
                                             70 W Madison, Suite 3800
                                             Chicago, IL 60602-4342
                                             Phone: 312-962-3548
                                             Fax: 312-962-3551
                                             ntelman@proskauer.com
                                             eyoung@proskauer.com
                                             aharris@proskauer.com

                                             *Attorneys for Defendants McDonald's Corporation,
                                             McDonald's USA, LLC, Christopher Kempczinski,
                                             and Charles Strong*

                                             12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 23, 2021, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF System, and notice was provided to:

Carmen D. Caruso
Carmen D. Caruso Law Firm
77 West Washington Street
Suite 1900
Chicago, IL 60602

Linda C. Chatman
Chatman Law Offices, LLC
Two Prudential Plaza
180 N. Stetson Avenue, Suite 3500
Chicago, IL  60601

*/s/ Nigel F. Telman*
Nigel F. Telman