IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VICTORIA GUSTER-HINES and DOMINECA NEAL,
Plaintiffs,
vs.
McDONALD'S USA, LLC, McDONALD'S CORPORATION, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI and CHARLES STRONG,
Defendants.

No. 20 C 117
Chicago, Illinois
October 23, 2023
11:00 a.m.

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE SHEILA M. FINNEGAN

APPEARANCES:

For the Plaintiffs: LOEVY & LOEVY
311 North Aberdeen
3rd Floor
Chicago, Illinois 60607
BY: MS. ANNIE PROSSNITZ

For the Defendants: PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison
Suite 3800
Chicago, Illinois 60602
BY: MR. NIGEL F. TELMAN
MR. EDWARD C. YOUNG

Official Court Reporter: JENNIFER COSTALES, CRR, RMR, CRC
219 S. Dearborn St., Room 1928
Chicago, Illinois 60604
(312) 435-5895
*jenny.uscra@yahoo.com*

(Proceedings via teleconference)

THE COURTROOM DEPUTY: Case 20 CV 117, Guster-Hines, et al., versus McDonald's USA, et al., here for status.

THE COURT: Good morning. This is Judge Finnegan. Can plaintiffs' counsel please say your name.

MS. PROSSNITZ: Good morning, Your Honor. This is Annie Prossnitz on behalf of plaintiffs.

THE COURT: Good morning.

And counsel for the McDonald's group of defendants, please say your name.

MR. TELMAN: Good morning, Your Honor. Nigel Telman and Eddie Young on behalf of the McDonald's defendants.

THE COURT: Good morning.

And counsel for defendant Easterbrook.

All right. As you know, in my order on October 4, 2023, it's docket 377, I took under advisement plaintiffs' motion to compel responses to certain requests for production, including numbers 88, 89, 103 and 104, and I directed the parties to exchange certain information.

And on October 11, the parties filed a status report with the information I had requested them to exchange. That joint status report is docket 381.

And then as you know, on October 12, 2023, I had another status hearing on these particular requests for production and some other issues, I think. At that time

plaintiffs asked for an opportunity to confer and attempt to modify the requested search terms so they could hopefully reduce the number of hits and hence the burden of the search.

As you know, defendants had already run searches on those four requests for production based on terms and custodians that the parties had discussed.

And at that time the defendants complain that plaintiffs had two years to provide search terms and at the eleventh hour had identified no fewer than 36 owner/operators to search over a four-year period with a number of custodians. And this was narrowing what had been requested, you know, long before.

They also noted that the back and forth of doing these, you know, efforts to confer and, you know, iterative process takes time and money.

But regardless, I did direct the parties to confer on plaintiffs' new proposal and for the defendants to then run new searches to determine the impact and provide the results in an updated joint status report. That has now been done. And that joint status report was filed on October 21, 2023.

And it appears based on the information there that the plaintiffs' new search terms or, I should say, revised search terms did little to reduce the number of responsive -- or I shouldn't say "responsive" -- the number of hits. Instead of 2,795 hits, these new terms resulted in 2,241 hits.

And those were about evenly split between request for production 88 and 89, which had 1,195 hits, and requests 103 and 104 that had 1,046 hits.

11:07:21 According to the joint status report, the parties conferred yet again after this latest running of revised search terms, and the plaintiffs said they would, quote, "be willing to further narrow their request to obtain only the emails that are resulted in the hits listed above that responsive to these requests if defendants are able to segregate the type of document," close quote.

11:07:43 Obviously there is a typo or two in that sentence. So one thing I want to ask of the plaintiffs, tell me what you actually propose so that the record is clear on that point.

MS. PROSSNITZ: Yes, Your Honor. And I also wanted to offer our apologies. We had fully intended to file this Friday night. And Ms. Donnell thought she had clicked the ECF button when she had not. So we filed it Saturday morning. So we wanted to give our apologies for the delay.

11:08:00 Yes, we recognize there is a typo or two in that sentence. But essentially, if it's possible, we would ask that defendants segregate the type of documents, that they were only receiving the responsive emails, because we believe this will further narrow the results.

11:08:19 We didn't expect for -- because we had reduced our search terms by more than half for the owner/operators and

11:08:38

from 14 keywords to 11 keywords, we didn't expect it to yield such a considerable amount of documents when we had narrowed it. So we think this would substantially narrow the results if we just receive the emails.

11:08:54 THE COURT: All right. Then as I read in the joint status report, defendants' position is that I should proceed with my ruling at this time given the resources exerted on this issue to date. As they had said previously, based on a document review rate of 60 documents per hour, depending on 11:09:15 the size and complexity of the documents, they believe it would take about 37 hours in attorney time to conduct the first-level review and additional time for the second level and final review for privilege and responsiveness.

And as they noted at the last status hearing, the 11:09:32 back and forth itself takes attorney time and money. And we are two years into written discovery. So it is certainly late, very late to be providing new search terms and going through this iterative process on requests that are among, you know, hundreds of discovery requests that were made in this 11:09:53 case.

Again, I can't focus -- this isn't like we're in day one, and I'm looking at these in isolation, and the parties are, you know, meeting and conferring to try and reduce it. These requests are, you know, written discovery has been going 11:10:09 on two years. The requests were among very, very broad

written discovery. These requests themselves were very broad, which leads to burden, you know, in and of itself.

So while I appreciate that new counsel has done -- made an effort now to start going through the iterative process and, you know, reducing the search terms and, you know, suggesting ways to do it, we're going to end this here at this juncture.

And I'm thinking of the overall discovery in this case, which is broader, far broader than I have seen in any other case involving individual plaintiffs in my, you know, almost 14 years on the bench.

So I am going to require defendants to review 25 percent of the hits selected in a random process and produce responsive documents. This isn't a sampling. This isn't like a next step. This isn't part of the iterative process. This is to put an end to this, recognizing the burden. And, you know, who knows what will come of this.

So that will be -- that will reduce the burden. It will end the meet and confer, which, you know, that can take even more time.

So I don't know what random process will be done. Maybe it just makes sense to every fourth document or, you know, something like that, that that is reviewed for responsiveness and produced if responsive, unless it can be repelled based on privilege issues.

Let me ask first defense counsel because you have to conduct this if you have any questions, and then I'll ask plaintiffs' counsel if you have any questions or need for clarification.

MR. TELMAN: No questions or clarification, Your Honor. Thank you.

THE COURT: How about from plaintiffs' counsel?

MS. PROSSNITZ: Your Honor, my only question is whether it will just be the complete set of documents or if we could ask that it be permitted first to the emails, because we think those will be the most responsive, before they start the process of doing 25 percent of the review.

THE COURT: I don't know whether -- how easily can defendants exclude from among the random documents that you pull up to review those that don't have any attachments, so that you are only reviewing the emails?

MR. TELMAN: We don't know the answer to that, Judge. We'll need to check with our IT folks who are helping us with these runs, with these searches.

You know, the challenge is a number of emails will probably attach documents. So if there is documents that are attached to the email, it just becomes the same document.

THE COURT: Well, I think what she's saying is, let's assume you could easily not review any emails that have a document attached. Then you would only be reviewing

documents -- you would only be reviewing emails, and so it would also reduce the time it takes to review the email. And counsel is saying they are not going to be asking for any attachments, and you're not going to be expected to review any attachments.

So it would seem it would be a win-win. And I would think it could be easily done that you would exclude from the review process every hit that has an email attached, and then from among what's left you just do the random sampling.

But let me ask, did I miss something here from what plaintiffs' counsel is suggesting?

MS. PROSSNITZ: No. That's exactly it.

MR. YOUNG: Your Honor, Eddie Young on behalf of defendants.

Just to make sure I fully understand, the ask is to just limit the search to email, and then from what is contained there, a random review of 25 percent of the email?

THE COURT: Correct.

MR. YOUNG: Okay.

THE COURT: And then you'll produce anything that's responsive from that review.

MR. YOUNG: Okay. I understand.

THE COURT: I'm going to assume that you can, you know, exclude from the --

MR. YOUNG: We're fine.

THE COURT: -- review the things with attachments. So you are just doing emails that don't have any attachments. If that's a problem, talk to plaintiffs' counsel.

MR. YOUNG: Okay.

11:14:52 THE COURT: But let's assume that can be done.

Okay. I think at this juncture I will be in touch with you soon about scheduling the hearing on the Collins motion. I know you've got some other things that you are conferring about and I may see a motion on. Is there anything either side wants to raise right now?

11:15:10

Okay. All right. So I will be back in touch with you about setting the hearing on the Collins motion. And if I get something filed on some other issue, of course, we will set that for hearing.

11:15:29 Thank you, and have a good day.

MR. TELMAN: Thank you, Judge.

MS. PROSSNITZ: Thank you.

(Proceedings concluded)

C E R T I F I C A T E

I, Jennifer S. Costales, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the Honorable SHEILA M. FINNEGAN, one of the magistrate judges of said Court, at Chicago, Illinois, on October 23, 2023.

*<u>/s/ Jennifer Costales, CRR, RMR, CRC</u>*
Official Court Reporter
United States District Court
Northern District of Illinois
Eastern Division