# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 20 C 117 ) ) Judge Mary M. Rowland |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG, | ) Magistrate Judge Finnegan ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Plaintiffs Victoria Guster-Hines and Domineca Neal are former employees of McDonald's USA, LLC ("McDonald's USA"), a subsidiary of parent company McDonald's Corporation. In this lawsuit, Plaintiffs charge McDonald's Corporation, McDonald's USA, and three current and former McDonald's executives (Steven Easterbrook, Christopher Kempczinski, and Charles Strong) with race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Currently before the Court is Plaintiffs' motion to override assertions of privilege by the McDonald's defendants (hereinafter referred to as "McDonald's" or "Defendants") and Grace Speights of Morgan, Lewis & Bockius LLP. For reasons set forth here, the motion is granted in part, denied in part, and taken under advisement in part pending an *in camera* review.

**BACKGROUND**[1]

This privilege dispute arises from Defendants' retention of attorney Grace Speights to conduct workplace investigations concerning Plaintiffs. Early in discovery, Defendants disclosed that they had retained Speights on January 10, 2020 to investigate employee complaints about Neal. Defendants asserted the attorney-client and work product privileges over the investigation but also expressed their intention to use Speights' findings in this litigation as a justification for terminating Neal's employment. As a result of this position, Defendants produced a redacted copy of Speights' handwritten notes and a February 18, 2020 memorandum to in-house counsel setting forth her conclusions from the Neal investigation. (*See* Docs. 281-3, 281-9). On September 20, 2022, Speights sat for a deposition but declined to answer certain questions about the Neal investigation on privilege grounds. For example, she would not discuss the circumstances surrounding her retention, her communications with McDonald's counsel concerning the investigation, or the documents or emails she reviewed. Speights also would not answer questions as to whether she had conducted an investigation into Guster-Hines, or provide any related details.

**A.     The Original Motion and Compromise Agreement**

Plaintiffs moved to override Defendants' assertions of privilege and re-open Speights' deposition. Plaintiffs argued that no aspect of Speights' investigation into Neal was privileged in the first instance because Speights was not serving as a legal advisor. (Doc. 281, at 8). Alternatively, Plaintiffs claimed that by placing Neal's investigation at

---

[1] This opinion assumes the reader's familiarity with the allegations in the case and addresses relevant facts only as necessary to resolve the instant motion. *See, e.g., Guster-Hines v. McDonald's USA, LLC*, No. 20 C 117, 2021 WL 2633303 (N.D. Ill. June 25, 2021).

2

issue in the case, Defendants waived privilege over the entire subject matter of that investigation, making any continued assertion of privilege improper. (*Id.* at 12). Among other relief, Plaintiffs sought unredacted copies of Speights' handwritten notes from the Neal investigation, and the reopening of Speights' deposition for further questioning, including as to her retention and whether Speights investigated Guster-Hines. (*Id.* at 16).

Defendants and Speights responded that Speights was unequivocally retained to provide legal advice concerning Neal, and that all aspects of that investigation were privileged. (Doc. 288, at 3, 6; Doc. 291, at 2) (Speights was hired "to conduct an internal investigation and provide legal advice regarding Plaintiff Neal's impending return to the office from a leave of absence as a result of complaints raised by employees about Plaintiff Neal's conduct in the workplace."). Defendants acknowledged waiving the privilege in connection with the Neal investigation, at least to some extent, which led them to produce Speights' February 18, 2020 memorandum to in-house counsel and her handwritten notes. Defendants maintained that the only redactions they had made to the notes concerned "unrelated matters" that were not covered by the waiver. (Doc. 288, at 5). Defendants also expressed their willingness to allow Speights to provide a sworn written statement regarding her discussions with in-house counsel concerning the scope of the Neal investigation and whether Speights had requested specific documents. (*Id.* at 6). With respect to Guster-Hines, Defendants continued to assert privilege over any investigation and stated that, unlike with Neal, there had been no waiver as Defendants did not intend to rely on any such investigation to support their case. (*Id.* at 10).

The parties ultimately resolved this original motion with a compromise agreement. In exchange for Plaintiffs' agreement to withdraw the motion, Defendants would allow

Speights to answer written deposition questions and would conduct a search for some additional documents. The parties also agreed that Defendants or Speights could produce additional documents or answer questions without effecting a waiver of any attorney-client or work product protections. (Doc. 412, at 5; Doc. 412-2, at 3) ("Plaintiffs agree and acknowledge that documents produced or answers provided by McDonald's and Ms. Speights … will **not** amount to or otherwise be construed by Plaintiffs as a waiver … of the A/C privilege or work product privilege") (emphasis in original). Plaintiffs' counsel acknowledged that agreement in a hearing before this Court. (Doc. 412, at 6; Doc. 412-3, at 5:17-24).

On June 5, 2023, Speights provided answers to 48 written deposition questions, none of which concerned the investigation into Guster-Hines.[2] (Doc. 391-9). On June 21, 2023, Defendants produced some additional documents, including two memos that Speights sent to McDonald's Chief People Officer Melissa Kersey dated February 25, 2020. One of the memos summarized Speights' findings as to Neal (the "Neal Memo") (Doc. 391-3), and the other summarized Speights' findings as to her investigation of Guster-Hines (the "Guster-Hines Memo"). (Doc. 391-4). Defendants assert that they made this production "in reliance on the Parties' agreement that there would be no waiver of privilege," a point they specifically raised in the letter transmitting the documents to Plaintiffs. (Doc. 412, at 6; Doc. 412-5). That letter also described the Guster-Hines Memo in particular as "*unprivileged*" (emphasis original). (Doc. 412-5). Speights similarly represented in a sworn declaration that she specifically created the Guster-Hines memo

---

[2] Plaintiffs did include questions about whether Speights had investigated Defendant Easterbrook or fact witness Christy Crump. (Doc. 391-9, at 27-32, Questions 42-48).

4

to be "nonprivileged" (Doc. 413-1, Speights Decl., ¶¶ 7, 9-10),[3] a characterization that Plaintiffs do not dispute since they contend that Speights only ever provided business advice. (Doc. 426, at 4-5).

On July 12, 2023, Plaintiffs withdrew their original motion. (Doc. 347). In a Minute Order that day, this Court stated that "[i]f necessary and after conferring further with Defendants, Plaintiffs may file a revised motion that addresses only the narrowed issues and includes updated information." (*Id.*). Over the next few months, Plaintiffs attempted to ask three separate deponents questions about the Guster-Hines investigation. On September 29, 2023, Luis Quintiliano declined to answer questions at the instruction of defense counsel. (Doc. 391-6, at 3, Quintiliano Dep., at 246). At Melissa Kersey's deposition on October 13, 2023, she stated that she did not recall an investigation into Guster-Hines but thought Lorelie Parolin might. (Doc. 391-7, at 6, 8, Kersey Dep., at 181, 183). Parolin, however, denied having any knowledge of that investigation during her November 2, 2023 deposition. (Doc. 391-8, at 6-7, Parolin Dep., at 75-76).

**B.    The New Motion to Override Privilege**

On November 20, 2023, Plaintiffs filed this revised motion to override assertions of privilege. They argue that the Neal and Guster-Hines investigations, which began three days after they filed their lawsuit, are critical to show retaliation and pretext. Plaintiffs still want Speights' unredacted notes from her investigation into Neal, but now they are requesting unredacted copies of Speights' notes for the Guster-Hines investigation as

---

[3]    Speights prepared this nonprivileged memo so it could be provided to Chief People Officer Melissa Kersey. (Doc. 412, at 2) ("Ms. Speights had been directed to prepare [the nonprivileged memos] following the conclusion of her *attorney-client privileged* investigation and the preparation of her *privileged* investigation report.") (emphasis in original).

well.[4] Plaintiffs also seek to reopen the Speights and Quintiliano depositions on a limited basis to ask questions about the unredacted notes and the Guster-Hines investigation. As in the previous motion, Plaintiffs insist that the Speights investigations into Guster-Hines and Neal are not privileged because Speights was providing business and not legal advice. Plaintiffs also contend that by producing the February 25, 2020 Guster-Hines Memo as part of the compromise agreement, Defendants waived any privilege over other discovery related to the Guster-Hines investigation. Defendants dispute these contentions.

## DISCUSSION

**A.     The Motion is Timely**

Before considering the parties' substantive arguments, the Court briefly addresses Defendants' objection that this motion is untimely. Defendants note that Plaintiffs withdrew their motion to override privilege in July 2023 *after* receiving the Guster-Hines Memo in June 2023, and say that Plaintiffs unreasonably failed to pursue the matter again until November 2023. (Doc. 412, at 8, 9) (citing *LG Elecs. v. Whirlpool Corp.*, No. 08 C 242, 2009 WL 3294802, at *2 (N.D. Ill. June 22, 2009) ("[D]istrict courts may deny motions as untimely due to unexplained or undue delay.")). But as this Court instructed Plaintiffs in July 2023, any new motion was to address only narrowed issues and include updated information. (Doc. 347). Consistent with that order, Plaintiffs conferred again with Defendants and conducted three depositions between September 29 and November 2, 2023 during which they attempted to obtain further information about the Guster-Hines Memo. When those avenues proved unproductive in Plaintiffs' view, they filed this new

---

[4]     This Court understands that Defendants have not produced any versions of Speights' notes for the Guster-Hines investigation, redacted or otherwise.

motion. Since Plaintiffs showed diligence in pursuing their privilege assertions, the Court will consider the motion on the merits. *Compare Feit Elec. Co. v. CFL Techs. LLC*, No. 13 C 9339, 2023 WL 3436346, at *11 (N.D. Ill. May 12, 2023) (finding undue delay where the defendants had been aware of a clear impasse on certain discovery issues since June 2018 but "failed to take any action to resolve the issues until nine-and-a-half months after the stay of discovery was lifted [on July 1, 2021], and . . . did not seek judicial intervention until more than four months after the parties' June 1, 2022 meet-and-confer.").

**B.     Privilege Standard**

Defendants assert attorney-client protection over the discovery at issue.[5] The privilege protects "communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). To determine if a communication falls within the protection of the attorney-client privilege, we ask: (1) whether "legal advice of any kind [was] sought ... from a professional legal adviser in his capacity as such"; and (2) whether the communication was "relat[ed] to that purpose" and "made in confidence ... by the client." *Id.* (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). "The party seeking to invoke the privilege bears the burden of establishing that the privilege applies," *Green v. Meeks*, No. 20-CV-463-SPM, 2023 WL 1447817, at *3 (S.D. Ill. Feb. 1, 2023), and must show that "the confidential nature of the communication was not compromised by disclosure to

---

[5]     Defendants also state generally that Speights' "investigation" is covered by the work product doctrine (Doc. 412, at 11), but as Plaintiffs fairly point out, an investigation is not a document or tangible thing for purposes of Rule 26(b)(3)(A). (Doc. 426, at 6). Since Defendants do not identify the specific documents they say are subject to the work product privilege, the Court lacks sufficient information to assess this argument.

individuals outside the attorney-client relationship." *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 490-91 (7th Cir. 2007)).

C.  **Existence of Attorney-Client Privilege**

As in the original motion, the parties once again dispute the nature and scope of Speights' investigations into the conduct of Neal and Guster-Hines, leading to conflicting views on whether discovery related to those investigations is allowed. Plaintiffs renew their argument that no aspect of the investigations was ever privileged because Defendants retained Speights strictly to provide business advice. (Doc. 391, at 5, 7; Doc. 426, at 4) (citing *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010) ("The privilege does not . . . protect business decision advice, even when that business advice is rendered by an attorney or an attorney is one of those participating in the business decision.")).

This argument is unpersuasive because Speights and Defendants represent, and Speights confirms in her sworn declaration, that she was retained to "conduct an impartial investigation [and] make findings of fact" and "provide legal advice to McDonald's based on those facts." (Doc. 412, at 10-11; Doc. 413, at 4; Doc. 413-1, Speights Decl., ¶¶ 2-6, 10) (citing *Sandra T.E.*, 600 F.3d at 619) ("[F]actual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the attorney-client privilege.") (emphasis in original). More specifically, Speights "provided legal advice to counsel McDonald's regarding the risks and potential claims it may face from coworkers of each Plaintiff, including an assessment of the workplace culture, claims employees may assert against McDonald's for a hostile work environment, the possibility that employees may resign, and other litigation risks that may arise." (Doc. 413-1, Speights Decl., ¶ 4). *See*

*Sandra T.E.*, 600 F.3d at 619 (upholding assertions of privilege where the attorneys submitted affidavits indicating that their "investigation of the factual circumstances surrounding the abuse [of students by a teacher] was an integral part of the package of legal services for which it was hired and a necessary prerequisite to the provision of legal advice about how the District should respond."). This record establishes that the materials at issue fall within the attorney-client privilege.

Plaintiffs contend that Speights' declaration conflicts with the February 25, 2020 Guster-Hines and Neal Memos she sent to Kersey from HR and Speights' own deposition testimony, making it an unreliable "sham." (Doc. 426, at 5 n.1) (citing *James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020)) (a judge may "disregard a 'sham' affidavit – typically an affidavit that contradicts prior deposition testimony."). The Court disagrees. The memos reference an "attorney-client privileged and confidential investigation related to the McDonald's Dallas Field Office" (Doc. 391-3; Doc. 391-4), which is consistent with the fact that Speights sent a memo to in-house counsel on February 18, 2020 opining that McDonald's faced "exposure to liability for possible claims that may arise" from Neal's conduct. (Doc. 281-3, 2/18/2020 Memo from Speights to In-House Counsel, at 4-5).

As for Speights' deposition testimony, Plaintiffs ignore that McDonald's asserted privilege over any questions relating to Speights' conversations with in-house counsel about the scope of her investigation concerning Neal. (*See also* Doc. 391-1, at 5, Speights Dep., at 26). After the parties reached a compromise agreement, however, Speights unequivocally stated in response to written deposition questions that she "understood that she was to investigate . . . concerns [about Neal's negative treatment of employees working out of the Dallas Field Office] and provide an assessment of the legal

9

risk in Ms. Neal returning to the Dallas Field Office." (Doc. 412-4, Responses to Written Deposition Questions, at 10). *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) (attorney-client privilege applied where attorney "conducted a factual investigation to determine the nature and extent of . . . questionable payments [made by one of the company's foreign subsidiaries] *and to be in a position to give legal advice to the company with respect to the payments.*") (emphasis in original). This testimony is also consistent with Speights' declaration.

      Plaintiffs next argue that Speights effectively disavowed her role as a legal advisor by testifying at her deposition that she did not make conclusions of law as to whether Neal experienced retaliation, and that she was not "counsel or in any way associated with" Plaintiffs' lawsuit. (Doc. 391, at 9, 11) (quoting Doc. 391-1, at 7, 16, Speights Dep., at 28, 97). The fact that Speights' retention did not extend to these additional tasks, however, is irrelevant to the existence of the privilege. The attorney-client privilege protects "'confidential communications' made by a client to her lawyer '[w]here legal advice *of any kind* is sought ... from a professional legal advisor in his capacity as such.'" *In re Local TV Advertising Antitrust Litig.*, No. 18 C 6785, 2024 WL 165207, at *4 (N.D. Ill. Jan. 16, 2024) (quoting *Evans*, 113 F.3d at 1461) (emphasis added). That Speights denied advising Defendants on one legal issue (Plaintiffs' lawsuit) does not refute her assertion that she provided legal advice on another issue (potential legal risks Defendants could face if Plaintiffs were allowed to return to the office).

      Finally, in addition to submitting sworn statements about her legal representation, Speights took affirmative steps to "maintain[] attorney-client privilege throughout the investigations": she interviewed employees confidentially, provided *Upjohn* warnings to

10

all interviewees, and kept her handwritten notes of the interviews private. (Doc. 413, at 4-5; Doc. 413-1, Speights Decl., ¶ 5; Doc. 281-3, at 2). And Speights placed a confidential label on the privileged documents she created, styling her February 18, 2020 memo to in-house counsel concerning Neal a "Privileged and Confidential Attorney-Client Communication." (Doc. 281-3). These actions go beyond "merely saying [the] investigation is privileged," as Plaintiffs charge (Doc. 426, at 4), and further confirm that Speights was retained to provide legal advice. *See Sandra T.E.*, 600 F.3d at 620 (finding attorneys' investigative work privileged where they provided *Upjohn* warnings, labeled documents confidential, and submitted affidavits affirming they had been hired to provide legal advice). *Cf. Smith v. Bd. Of Ed. Of City of Chicago*, No. 17 C 7034, 2019 WL 2525890, at *3 (N.D. Ill. June 19, 2019) (no privilege over emails that did not discuss litigation risk or legal strategy and bore no indicia of confidentiality).

Accordingly, the Court finds that Speights' investigations of Neal and Guster-Hines are protected by the attorney-client privilege. The Court now addresses the implication of this finding as to the additional discovery materials sought by Plaintiffs.

**D.    The Redactions from Speights' Notes Concerning the Neal Investigation**

Defendants have conceded that they waived the attorney-client privilege as to the Neal investigation:

> Plaintiff Neal's employment was terminated as a result of the findings of Ms. Speights' investigation into her conduct. Accordingly, as part of these proceedings, McDonald's waived privilege with respect to the Neal Investigation, produced documents pertaining to that investigation, and permitted Plaintiffs to depose Ms. Speights regarding that investigation.

11

(Doc. 412, at 4).  As a result, the only relief Plaintiffs seek in the motion concerning that investigation is an order requiring Speights to produce unredacted copies of her notes.[6] (Doc. 391, at 5).  Defendants claim that the redacted portions concern "unrelated matters."  (Doc. 288, at 5).  Plaintiffs question this "given that the redacted portions of [Speights'] notes appear in the middle of handwritten passages about Ms. Neal."  (Doc. 391, at 5; Doc. 391-5).  To resolve this dispute, the Court will conduct an *in camera* review of the notes and determine whether the redactions are proper.

**E.     Waiver of Attorney-Client Privilege as to the Guster-Hines Investigation**

Unlike with the Neal investigation, Defendants do not agree that they waived the attorney-client privilege covering Speights' investigation of Guster-Hines.  Plaintiffs argue that when Defendants voluntarily produced the Guster-Hines Memo, they expressly waived the privilege as to any confidential information pertaining to the same subject matter.  (Doc. 391, at 12-13) (citing FED. R. EVID. 502(a), *Lerman v. Turner*, No. 10 C 2169, 2011 WL 62124, at *6 (N.D. Ill. Jan. 6, 2011)).  But the production fell within the parties' agreement – which was disclosed to the Court – that "documents produced or answers provided by McDonald's and Ms. Speights … will **not** amount to or otherwise be construed by Plaintiffs as a waiver … of the A/C privilege or work product privilege."  (Doc. 412-2, at 3) (emphasis original).  Though this was a prominent argument in Defendants' response brief, Plaintiffs failed to mention or address it in their reply.

The argument fails for the additional reason that the Guster-Hines Memo was never meant to be privileged, as Defendants and Speights have explained (Doc. 412-5; Doc. 413-1 ¶ 7, 9-10).  Recall that Speights authored three memos that Defendants

---

[6]     Though not articulated in Plaintiffs' motion, they presumably would also want to question Speights about any newly unredacted information in her notes.

12

produced to Plaintiffs. One memo dated February 18, 2020 that concerned Neal alone was a privileged document that Speights sent to inhouse counsel, but Defendants waived the privilege as to the Neal investigation and this memo. The other two memos (one focused on Guster-Hines and the other on Neal) were sent to Kersey (HR) on February 25, 2020 and were not privileged. Production of a nonprivileged document about Guster-Hines cannot effect a subject matter waiver of her investigation under Rule 502, which on its face applies only to "disclosure of a communication or information covered by the attorney-client or work-product protection." FED. R. CIV. P. 502. *See Maenza v. Uchicago Argonne LLC*, No. 18 C 4328, 2019 WL 13276114, at *2 (N.D. Ill. May 15, 2019) (if a document "is actually not privileged, then its production cannot waive the privilege afforded any other documents."). In such circumstances, there is no merit to Plaintiffs' assertion that Defendants are attempting to "manipulate the attorney client privilege doctrine" by selectively producing privileged materials. (Doc. 391, at 13). *Compare Lerman*, 2011 WL 62124, at *10 (where the defendants intentionally produced and relied upon a privileged investigation report, they waived the privilege over related documents and information).

Plaintiffs' invocation of implied waiver fares no better. As noted, implied waiver generally occurs when "a client asserts claims or defenses that put his or her attorney's advice 'at issue' in the litigation." *CSI Worldwide, LLC v. TRUMPF, Inc.*, No. 18 C 5900, 2023 WL 5830788, at *5 (N.D. Ill. Sept. 8, 2023) (Cummings, J.) (citing *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995)). "The implied waiver doctrine ultimately is based on considerations of fairness: that is, a party may not use privilege as a tool for manipulation of the truth-seeking process." *Patrick v. City of Chicago*, 154 F.

Supp. 3d 705, 711 (N.D. Ill. 2015) (citing *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)). It is not sufficient for a party to merely assert a claim or defense to which attorney-client communications are relevant. Instead, a party must "affirmatively put at issue the specific communication to which the privilege attaches before the privilege will be deemed waived." *CSI Worldwide*, 2023 WL 5830788, at *5 (quoting *Cage v. Harper*, No. 17 C 7621, 2019 WL 6911967, at *1 (N.D. Ill. Dec. 19, 2019) (Harjani, J.)).

Here, Defendants have repeatedly stated that they have no intention of using the Guster-Hines Memo (even assuming it was privileged) or that investigation in this action, and will not be relying on the advice of counsel to defend against Guster-Hines' claims. (Doc. 412, at 14-15). Instead, it is Plaintiffs who believe the investigation is significant to Guster-Hines' retaliation claim and so want access to Speights' notes and other confidential documents and communications. (Doc. 391, at 14). More specifically, Plaintiffs contend that "Defendants conducted the investigation to justify Ms. Guster-Hines' potential termination or constructive discharge." (*Id.* at 13).[7] But Plaintiffs do not identify any actions Defendants took against Guster-Hines in reliance on Speights' investigation. Defendants say there were no such actions, as Guster-Hines "requested to be placed on paid leave prior to the investigation, and remained on that leave until she voluntarily retired in 2021." (Doc. 412, at 4). And though the unprivileged Guster-Hines Memo indicates that Speights recommended counseling for Guster-Hines and placement in a non-operator facing role if she returned to work, Defendants never acted on those recommendations because Guster-Hines never returned to the office and instead chose to leave the company. (*Id.* at 4 n.1). Plaintiffs cannot manufacture a waiver by "inject[ing]

---

[7] The district court dismissed the constructive discharge claims against Kempczinski and Strong in March 2022. (Doc. 166, Order of 3/11/2022, at 4).

the issue of advice of counsel in the case, and then [seeking] to obtain that information." *Cage*, 2019 WL 6911967, at *2 (no implied waiver where the defendants "disavow[ed] any reliance upon advice of counsel," meaning the privilege holder did not place that advice at issue).

Nor is the Court persuaded by Plaintiffs' argument that Defendants waived the privilege by failing to produce the Guster-Hines Memo earlier in the litigation in response to discovery requests. (Doc. 391, at 15). To begin, Plaintiffs cite no legal authority for this proposition and it is well-established that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)). Moreover, the Guster-Hines Memo does not appear to be responsive to the document requests Plaintiffs identify. On its face, the Memo is not a "performance rating" or a communication made "in connection with any job openings or promotions" as contemplated by Request for Production ("RFP") Nos. 99 and 119. (Doc. 391-10, at 22, 25). And whether the memo qualifies as "notes from . . . interviews" (RFP No. 4) is at best debatable. (*Id.* at 2).[8]

## F.  Further Depositions and Scope of Questioning

Since Defendants did not waive the attorney-client privilege as to the Guster-Hines investigation, Plaintiffs' broad request to re-depose Speights and Quintiliano about the

---

[8]   For similar reasons, the Court declines to find waiver based on Plaintiffs' theory that "[t]o the extent Ms. Speights's investigation into Ms. Neal and Ms. Guster-Hines were part and parcel of the same investigation into the Dallas Field Office, Defendants have placed the Guster-Hines investigation at issue because they have placed the Neal investigation at issue." (Doc. 426, at 6 n.2). This argument, which fails to cite any case on point and was raised for the first time in a reply brief, has been waived. *Pearson v. Gomez*, No. 21 C 50148, 2022 WL 16553040, at *13 (N.D. Ill. Oct. 31, 2022) (citing *Stechauner v. Smith*, 852 F.3d 708, 721 (7th Cir. 2017)); *Rice v. Kim*, __ F. Supp. 3d __, 2023 WL 8281571, at *5 (N.D. Ill. Nov. 30, 2023) ("[C]ursory argument citing no case law" that was "raised only in defendants' reply brief" was waived).

subject matter of that investigation is denied. There is no dispute, however, that Defendants only recently produced the Guster-Hines Memo. Defendants may not plan on using the memo in this case, but that does not preclude Plaintiffs from asking questions about the document. Accordingly, Plaintiffs will be allowed to conduct a supplemental deposition of Speights of up to 2 hours to inquire about the contents of the Guster-Hines Memo. Absent any indication as to what specific questions Plaintiffs wish to pose, the Court is not in a position to determine whether some may invade the attorney-client privilege. Plaintiffs therefore may certify any questions that elicit privilege objections and seek court review. The request to re-depose Quintiliano is denied. He did not author the Guster-Hines Memo and his communications with Speights are protected by the attorney-client privilege.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Override Assertions of Attorney/Client Privilege by the McDonald's Defendants and Grace Speights of Morgan, Lewis & Bockius LLP [390, 391] is granted in part, denied in part, and taken under advisement in part. Defendants are to send an unredacted copy of Speights' investigation notes to chambers by March 12, 2024. After reviewing those notes, the Court will set a deadline for the limited re-deposition of Speights.

ENTER:

Dated: March 5, 2024

_____
SHEILA FINNEGAN
United States Magistrate Judge