IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | |
| Plaintiffs, | Case No. 1:20-cv-00117 |
| v. | Judge Mary M. Rowland |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG, | |
| Defendants. | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Victoria Guster-Hines and Domineca Neal ("Plaintiffs") sued Defendants McDonald's USA, LLC, McDonald's Corporation, Steven Easterbrook, Christopher Kempczinski, and Charles Strong (collectively, "Defendants") alleging various forms of discrimination under the Civil Rights Act of 1870 (42 U.S.C. § 1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII"). Before the Court are Plaintiffs' objections to the magistrate judge's opinion on Plaintiffs' motion to override Defendants' assertion of privilege [478] and Plaintiffs' motion for leave to file a fourth amended complaint. [475]; [482]. For the reasons stated herein, Plaintiffs' objections are overruled, and Plaintiffs' motion is denied.

1

I. Background

Plaintiffs are African American women who worked as senior executives at McDonald's USA. [94] ¶ 1. Plaintiffs brought their first complaint against Defendants on January 7, 2020, alleging that Defendants engaged in discriminatory practices against them in violation of § 1981. [1]. After Plaintiffs notified Defendants of their claims, they both agreed to be placed on a paid leave of absence. [94] ¶ 33. Defendants hired outside counsel, Grace Speights, to investigate the legal risks associated with both Guster-Hines (the "Guster-Hines Investigation") and Neal (the "Neal Investigation"). [475-1] ¶ 124. Defendants assert that both investigations were protected by attorney-client privilege, but Defendants intentionally waived the privilege assertion over the Neal Investigation. *See* [490]. Defendants continue to claim privilege over the Guster-Hines Investigation. *Id*. In June 2023, Defendants nonetheless produced to Plaintiffs a non-privileged memorandum that Speights authored that summarizes some conclusions from the Guster-Hines Investigation (the "Guster-Hines Memo"). [475-2].

The Guster-Hines Memo found that employee morale had improved since Guster-Hines was placed on leave, and Ms. Speights recommended that if Guster-Hines were to return to the office, she should "be placed in a non-operator facing role." [475] at 3-4. The memo also concluded that "Guster-Hines is a good leader" and that Guster-Hines's return "would [not] have a significant negative impact on the employee morale or workplace environment" to her office. [475-2] at 2-3. Conversely, the Neal Investigation found that "bringing Neal back into the office from leave

2

[would] cause a tremendous disruption," cause other employees to resign, and create legal risks for Defendants. [478-8] at 3. The Neal Investigation ultimately led to Neal's termination. *See* [490] at 2.

Plaintiffs moved for the magistrate judge to override Defendants' assertion of privilege over the Guster-Hines Investigation such that Plaintiffs would be able to depose Speights about the investigation and obtain her handwritten notes. *See* [472]. The magistrate judge denied Plaintiffs' motion, and Plaintiffs subsequently filed objections to that decision with this court. [472]; [478].

At the same time, Plaintiffs moved for leave to file a Fourth Amended Complaint (the "FAC") to add allegations in support of a constructive discharge claim. Plaintiffs' Third Amended Complaint (the "TAC"), filed on July 16, 2021, similarly alleged that Plaintiffs were constructively discharged in support of their retaliation claims. *See, e.g.,* [94] ¶¶ 121, 201. Defendants Strong and Kempczinski filed partial motions to dismiss those claims, which the Court granted on March 11, 2022. [105]; [108]; [166]. The Court dismissed Plaintiffs' retaliation claims against Strong and Kempczinski with prejudice because, among other things, Neal was actually—not constructively—discharged, and according to the then-operative complaint, Guster-Hines was still working for Defendants and thus hadn't been discharged at all. [166] at 4.

Plaintiffs argue they should be given leave to add constructive discharge allegations because Guster-Hines resigned from McDonald's on October 31, 2021[1], meaning that the Court's reasoning for granting Defendants' partial motions to dismiss is no longer applicable. [475] at 2. Plaintiffs further argue that the proposed amendments are not unduly delayed because Plaintiffs only learned about the Guster-Hines Investigation in June 2023. [506] at 5-6.

## II. Plaintiffs' Objection to the Magistrate Judge's Ruling

### a. Legal Standard

"A magistrate judge's ruling on a nondispositive matter may be reversed only on a finding that the order is 'clearly erroneous or contrary to law.'" *Bobkoski v. Bd. of Educ. of Cary Consol. Sch. Dist. 26*, 141 F.R.D. 88, 90–91 (N.D. Ill. 1992) (quoting Fed. R. Civ. P. 72(a)). A district court cannot "reverse the magistrate judge's decision simply because the district court judge would have come to a different conclusion." *Doe v. Individual Members of the Ind. State Bd. of Law Exam'rs*, No. 1:09-cv-842-WTL-JMS, 2010 WL 106580, at *1 (S.D. Ind. Jan. 4, 2010) (citing *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006)). Rather, the district court can "overturn the magistrate judge's ruling *only if* the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997) (emphasis added).

---

[1] Guster-Hines thus was not actually employed by McDonald's at the time the Court granted Defendants' partial motion to dismiss. Plaintiffs nonetheless did not seek to amend their complaint until March 19, 2024.

4

When a court is presented with a claim of attorney-client privilege, the court must evaluate (1) whether "legal advice of any kind [was] sought from . . . a professional legal adviser in his capacity as such," and (2) "whether the communication was relat[ed] to that purpose and made in confidence by the client." *Sandra T.E. v. S. Berwyn Sch. Dist.* 100, 600 F.3d 612, 618 (7th Cir. 2009) (internal quotations omitted); see also *In re Allen*, 106 F.3d 582, 603 (4th Cir. 1997) ("The relevant question is not whether [the attorney] was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services.") (internal quotations omitted).

### b. Analysis

Plaintiffs argue that the magistrate judge erred in finding that the Guster-Hines Investigation was protected by attorney-client privilege for three reasons, First, they argue that the Guster-Hines Investigation is not privileged because it was undertaken for business purposes rather than to provide legal advice. Second, Plaintiffs claim that even if the Guster-Hines Investigation was privileged, Defendants waived that privilege by both producing the Guster-Hines Memo and by allowing discovery into the Neal Investigation. Third, they argue that the fairness doctrine compels the Court to allow discovery into the entirety of the Guster-Hines Investigation. The Court disagrees.

First, the Court declines to find that the magistrate judge clearly erred in finding that Speights conducted the Guster-Hines Investigation to provide legal advice. Plaintiffs argue that the Guster-Hines Investigation could not have been for

5

a legal purpose and thus must have been for a business purpose because Defendants failed to identify a specific and concrete "legal risk [that] preceded the investigation," [478] at 10–11. But Plaintiffs cite to no authority suggesting that a specific, pre-existing risk must exist for attorney-client privilege to attach an investigation like the one at issue here. Indeed, attorney-client privilege protects confidential communications between a lawyer and her client "[w]here legal advice ***of any kind*** is sought . . . from a professional legal advisor in [her] capacity as such." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (emphasis added). Plaintiffs also argue that the investigation cannot be privileged because the Guster-Hines Memo was sent to business leaders as well as legal counsel for Defendants. [478] at 9. But the parties agree that the Guster-Hines Memo is not privileged and was not prepared for the purposes of providing legal advice. That Speights memorialized one non-privileged aspect of her investigation for non-legal personnel does preclude privilege from attaching to the rest of the investigation. Rather, as the magistrate judge found, Speights was hired to provide legal advice to Defendants regarding the risks and potential claims they may face from Plaintiffs. The magistrate judge found that the investigation at issue fell squarely within the attorney-client privilege. This was not error, let alone clear error.

Next, the magistrate judge did not clearly err by finding that Defendants had not waived privilege. Plaintiffs argue that the Guster-Hines Investigation and Neal Investigation were not two separate matters but rather one "joint investigation." [478] at 13. Plaintiffs believe Defendant's waiver regarding the Neal Investigation

6

constitutes a "subject matter waiver" such that Defendants have also waived privilege into the Guster-Hines Investigation. Subject matter waiver of otherwise protected materials occurs when a party discloses communications or information concerning the same subject matter. Fed. R. Evid. 502(a)(2).

Like the magistrate judge, the Court does not believe this was a "joint investigation" such that subject matter waiver would apply. In support of their argument, Plaintiffs highlight that Speights conducted both investigations into Guster-Hines and Neal, interviewed many of the same individuals for both investigations at the same time, and took notes regarding both Guster-Hines and Neal in the same notepad. Plaintiffs liken this to *Lerman*, where Defendants hired legal counsel to investigate the conduct of an employee but produced only one of the two privileged memoranda that counsel prepared. *Lerman v. Turner*, No. 10-cv-2169, 2011 WL 62124, at *6 (N.D. Ill. 2011). The *Lerman* court found that both memos concerned the same investigation into the same conduct, and that by producing just one of the memos Defendants had waived privilege as to the other. *Id.* at *10. The Court reasoned that in the interest of fairness, Defendants should not be allowed to selectively choose which privileged materials concerning the same subject matter that Plaintiffs could review. *Id.*

Here, the Court agrees with the magistrate judge that Speights was separately investigating legal risks related to "***each*** Plaintiff." [472] at 8 (emphasis added). Speights investigated both Guster-Hines and Neal, prepared separate reports regarding both Guster-Hines and Neal, and ultimately concluded that different

7

actions were appropriate for Guster-Hines and Neal. Unlike in *Lerman*, Defendants here are not selectively waiving privilege over discrete aspects of one investigation. The fact that both investigations were headed by the same person who took notes in the same notepad does not transform two distinct investigations into distinct individuals with distinct findings and outcomes into one joint investigation.

Plaintiffs separately argue that Defendants' production of the Guster-Hines Memo is a "partial waiver" and thus Defendants have waived privilege over the entire investigation into Guster-Hines. [478] at 14. But partial waiver only occurs when "disclosure of a part of a privileged document or set of such documents is argued to waive privilege in the rest of it." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1127 (7th Cir. 1997). Plaintiffs acknowledge, however, that the Guster-Hines Memo is not and was never privileged. As a matter of law, then, Defendants' disclosure of the Guster-Hines Memo cannot constitute a partial waiver of privilege over the entire Guster-Hines Investigation.

Finally, Plaintiffs' argument that the fairness doctrine compels an override of privilege over the Guster-Hines Investigation fails for similar reasons. Plaintiffs rely only on cases where the Court found there was a subject matter waiver; here, there is none. Plaintiffs seek to combine two separate investigations with separate reports and separate conclusions into one "joint investigation," and then argue that denying discovery into the entirety of both investigations would be unfair. But Plaintiffs have failed to explain how waiving privilege over the Neal Investigation but not the Guster-Hines Investigation is in anyway unfair. The magistrate judge found that

8

fairness did not compel an override of privilege, and this Court does not find that the magistrate judge clearly erred in doing so.

The Court declines to find that the Magistrate Judge clearly erred in finding that the Guster-Hines Investigation is protected by attorney-client privilege. Plaintiffs' objections to the contrary are overruled.

### III. Motion for Leave to Amend

#### a. Legal Standard

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). But leave to amend "is not an absolute right." *Ewing v. 1645 W. Farragut, LLC*, No. 16-CV-9930, 2018 WL 11276811, at *1 (N.D. Ill. Nov. 9, 2018), aff'd, 90 F.4th 876 (7th Cir. 2024). District courts have broad discretion to deny leave to amend where there is "undue delay, bad faith, dilatory motive, or undue prejudice to the non-moving party . . . or where the proposed amendment is futile." *Id*.

An amendment is futile when it "'reasserts a claim previously determined[,] . . . fails to state a valid theory of liability, or could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir.1992) (internal citations and quotations omitted). The Court applies Rule 12(b)(6) to determine whether the proposed amendments are futile. *See Garcia v. City of Chi.*, 24 F.3d 966, 970 (7th Cir. 1994). A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state

a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

The Seventh Circuit has recognized two forms of constructive discharge. The first occurs when "an employee resigns due to alleged discriminatory harassment." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008). The second form occurs when "an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id*. (internal quotations and citations omitted). A plaintiff bringing this second kind of constructive discharge claim must demonstrate that "the axe was about to fall." *Id*. (internal quotations and citations omitted). Under either form, a plaintiff must establish that "working conditions . . . had become unbearable." *Id*. at 410. "An employees work environment [] becomes intolerable under the second form when *the employer's actions communicate to the employee that she immediately and unavoidably will be terminated.*" *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 529 (7th Cir. 2015) (emphasis in original). Further, the Seventh Circuit has "set a high bar to establish a constructive discharge claim, because 'employees are generally

10

expected to remain employed while seeking redress.'" *Malas v. Hinsdale Twp. District #86*, No. 15-CV-10490, 2019 WL 2743590, at *25 (N.D. Ill. July 1, 2019) (citing *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).

### b. Analysis

In the proposed FAC, Plaintiffs seek to amend their claims under Count V to include allegations that Guster-Hines was constructively discharged as a form of retaliation in violation of § 1981. [506] at 7; [475-1] ¶ 210. Defendants argue that the Court should deny Plaintiffs' motion for leave to file a fourth amended complaint because their proposed amendments are futile, unduly delayed, prejudicial, made in bad faith, and time-barred by 42 U.S.C. § 2000e-5(e)(1). Without deciding on every argument, the Court agrees that the proposed amendments are futile and unduly delayed, and thus denies Plaintiffs' motion.

The thrust of Plaintiffs' argument is thus: (1) Guster-Hines gave McDonald's notice of her claims October 2019, (2) Guster-Hines and Defendants agreed that she go on paid leave in October 2019, (3) Defendants hired Speights to conduct an investigation of Guster-Hines, (4) Speights recommended that Guster-Hines be placed in a non-operator facing role if she were to return, (5) Defendants acted on Speights's recommendation by never bringing Guster-Hines back from paid leave, and (6) Defendants thereby constructively discharged Guster-Hines. *See* [475-1] ¶¶ 121 – 129; [506] at 3–4. Plaintiffs argue that by acting on the Guster-Hines Memo's recommendation, Defendants constructively discharged Guster-Hines by "set[ting]

11

her on a dead-end path towards termination." [506] at 3 (quoting *Fischer v. Avenade*, 519 F.3d 393, 411 (7th Cir. 2008)).

Plaintiffs argue that good cause exists to add allegations regarding Guster-Hines's constructive discharge over four years after filing their first complaint in part because the basis for the Court's prior dismissal—that Guster-Hines was still employed by Defendants and thus could not have been constructively discharged—was no longer applicable. But Guster-Hines resigned from McDonald's in October of 2021, *two and a half years* before Plaintiffs filed this motion. To explain why they did not seek leave to amend their complaint at that point, Plaintiffs claim that they "could not have known that *the investigation led to* [Guster-Hines's] constructive discharge" until Defendants produced the Guster-Hines Memo. [475] at 6 (emphasis added).[2]

But the FAC does not allege any plausible facts showing that the investigation led to Guster-Hines's discharge. Notably, Defendants *did not* act on any recommendation in the Guster-Hines Memo, despite Plaintiffs' claims otherwise. The Guster-Hines Memo contained no recommendation as to whether Guster-Hines should be reinstated; it only made a recommendation as to what role Guster-Hines should be placed in were she to return. If Defendants had acted on the Guster-Hines Memo's recommendation, Guster-Hines would have been reinstated in a non-operator facing role, which never occurred. The Guster-Hines Memo also concluded that "Guster-Hines is a good leader" and that Guster-Hines's return "would [not] have a significant negative impact on the employee morale or workplace environment" to her

---

[2] Assuming *arguendo* that this is true, Plaintiffs still do not explain why they waited until nine months after Defendants produced the Guster-Hines Memo to file this motion.

12

office. [475-2]. The Court does not find it plausible that such an investigation could have "caused" Guster-Hines to voluntarily resign, nor that the investigation was done as retaliation.

Further, Plaintiffs are required to allege that her employer's actions communicated to Guster-Hines that her termination was immediately pending and unavoidable. *Wright*, 789 F.3d at 529. Plaintiffs do not plausibly allege that the investigation communicated *anything* to Guster-Hines because Guster-Hines did not know about the investigation at the time she resigned.

Plaintiffs' proposed amendments are also futile because they fail to assert that Guster-Hines's working conditions had "become unbearable," as they must to allege constructive discharge. *See Fischer*, 519 F.3d at 410. The FAC similarly does not allege that Guster-Hines had a reasonable fear that "the axe was about to fall." *Id.* at 409. Indeed, when Guster-Hines gave notice of her intent to resign from McDonald's in September 2021, she wrote that she was "electing to retire" with an effective date of "[March 15, 2022] or sooner." [478-1]. She gave this notice after having been on paid leave for almost a year with no change in conditions. Plaintiffs' proposed allegations that the Guster-Hines Investigation caused Guster-Hines to resign, as a form of constructive discharge and as retaliation for purposes of a § 1981 claim, are thus futile.

Finally, because Guster-Hines did not know about the investigation at the time of her resignation, Plaintiffs are left wanting for an explanation as to why they did not seek leave to amend their complaint until 30 months after Guster-Hines's

13

resignation. As Defendants argue, and Plaintiffs do not dispute, the parties litigated for over two years with an understanding that Plaintiffs were no longer bringing constructive discharge allegations. [487] at 9. Defendants credibly argue that granting the motion would require additional depositions and document productions in a case in which fact discovery has been ongoing since July 2021. Plaintiffs point out that delay on its own is usually not a reason to deny motion to amend. But the longer the delay, "the greater the presumption against granting leave to amend." King v. Cooke, 26 F.3d 720, 723 (7th Cir.1994); see also *Morningware, Inc. v. Hearthware Home Prod., Inc.*, No. 09 C 4348, 2011 WL 5239226, at *2 (N.D. Ill. Nov. 1, 2011) (denying a motion to amend when the parties were near the close of fact discovery and Plaintiffs were aware of the factual predicate giving rise to proposed amendment 15 months before they sought leave to amend). In its discretion under Rule 15(a), the Court here finds that Plaintiffs' delay was too great to allow the proposed amended pleading.

For the above stated reasons, the Court denies Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, the Court overrules Plaintiffs' motion to override Defendants' assertion of privilege [478] and denies Plaintiffs' motion for leave to file a fourth amended complaint. [475]; [482].

E N T E R:

Dated: October 11, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge