IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-00117 |
| v. | ) ) ) | Honorable Mary M. Rowland |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG, | ) ) ) ) ) ) ) ) | Honorable Sheila M. Finnegan |
| Defendants. | ) | |

## DEFENDANTS' COMBINED MOTION FOR SANCTIONS, MOTION TO COMPEL AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE

## TABLE OF CONTENTS

**Page(s)**

I.     OVERVIEW OF PLAINTIFFS' DISCOVERY INFRACTIONS AND ABUSE OF DISCOVERY PROCESS ............................................................................5

     **a.**    Plaintiffs' Counsel Failed To Review 7,916 Documents And Only Disclosed This To Defendants After Repeated Requests. ........................5

     **b.**    Plaintiff Guster-Hines And Her Counsel Misrepresent That Her Text Messages Have Been Preserved And Subsequently Admit To Spoliation ............10

     **c.**    Plaintiffs Repeatedly Misrepresent to Defense Counsel And This Court That Their Written Discovery Responses Were Accurate And Complete, Requiring Plaintiffs To Each Sit For Three Depositions to Date. ........................12

     **d.**    Plaintiffs' Abusive Discovery Tactics Cannot Be Viewed In A Vacuum ............15

II.    STANDARD FOR SANCTIONS.......................................................................15

III.   ARGUMENT ......................................................................................................17

     **a.**    Plaintiffs Have Engaged In A Pattern Of Discovery Abuses. .............................17

          **i.**    None Of Plaintiffs' Failures Were Substantially Justified.........................20

          **ii.**   Plaintiff's Spoliation Of Text Messages and Misrepresentations Regarding Same Also Warrant Sanctions.................................................22

     **b.**    Plaintiffs Should Both Be Compelled to: (i) Sit For an Additional Seven Hours of Deposition; and (ii) Produce the Remaining Withheld Documents. ........................26

CONCLUSION...........................................................................................................27

CERTIFICATE OF SERVICE ...................................................................................29

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adv. Magnesium Alloys Corp. v. Dery*,
    No. 20-cv-02247, 2024 WL 244931 (S.D. Ind. Jan. 23, 2024)................................................25

*Babych v. Psychiatric Sols., Inc.*,
    271 F.R.D. 603 (N.D. Ill. 2010)........................................................................................26

*Baxter Int'l, Inc. v. Becton, Dickinson & Co.*,
    No. 17 C 7576, 2019 WL 6258490 (N.D. Ill. Nov. 22, 2019)...............................................26

*Beaton v. SpeedyPC Software*,
    338 F.R.D. 232 (N.D. Ill. 2021)........................................................................................20

*Brown v. Chicago Trans. Auth.*,
    No. 17-cv-08473, 2020 WL 777296 (N.D. Ill. Feb. 14, 2020) (Rowland, J.) ........................16

*City of Aurora, Colo. ex rel. Aurora Water v. PS Sys., Inc.*,
    720 F. Supp. 2d 1243 (D. Colo. 2010).................................................................................17

*City of Inglewood v. Time Warner NY Cable LLC*,
    No. CV1309464BROCWX, 2015 WL 12803767 (C.D. Cal. June 9, 2015) ...........................17

*Davidson v. Evergreen Park Cmty. High Sch. Dist. 231*,
    No. 15 C 0039, 2016 WL 6892882 (N.D. Ill. Nov. 23, 2016) (Rowland, J.) .........................17

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
    513 F. Supp. 3d 839 (N.D. Ill. 2021) ...........................................................................18, 19

*e360 Insight, Inc. v. Spamhaus Project*,
    658 F.3d 637 (7th Cir. 2016) ..............................................................................................15

*Hollis v. CEVA Logistics U.S., Inc.*,
    603 F. Supp. 3d 611 (N.D. Ill. 2022) ............................................................................16, 17

*Hudgins v. Total Quality Logstics, LLC*,
    No. 16-c-7331 (N.D. Ill. Apr. 15, 2024) ..............................................................................16

*Icon Int'l, Inc. v. Elevation Health LLC*,
    347 F.R.D. 274 (S.D.N.Y. 2024) .......................................................................................17

*In re Local TV Advertising Antitrust Lit.*,
    No. 18-c-6785, 2023 WL 5607997 (N.D. Ill. Aug. 30, 2023) ...............................................17

i

*Johnson v. Kakvand*,
    192 F.3d 656 (7th Cir. 1999) ............................................................................15

*Pable v. Chicago Trans. Auth.*,
    No. 19-cv-7868, 2023 WL 21333414 (N.D. Ill. Mar. 2, 2023) ...............................22

*Ramirez v. T&H Lemont, Inc.*,
    845 F.3d 772 (7th Cir. 2016) ..............................................................................4

*Saldaña v. Cnty. of Cook*,
    No. 19-cv-6178, 2022 WL 2967422 (N.D. Ill. July 27, 2022) ...............................20

*Salgado by Salgado v. Gen. Motors Corp.*,
    150 F.3d 735 (7th Cir. 1998) ..............................................................................20

*Segerdahl Corp. v. Ferruzza*,
    No. 17-cv-3015, 2022 WL 21295096 (N.D. Ill. Sept. 20, 2022)...........................25

*Sonrai Sys., LLC v. Romano*,
    No. 16-c-3371, 2021 WL 1418405 (N.D. Ill. Jan. 20, 2021)............................23, 25

*Steinfeld v. Jones Lang LaSalle Ams.*,
    No. 20-cv-5838, 2024 WL 4213214 (N.D. Ill. Sept. 17, 2024)........................15, 17

*Torgersen v. Siemens Bldg. Tech., Inc.*,
    No. 19-cv-4975, 2021 WL 2072151 (N.D. Ill. May 24, 2021)..........................24, 25

*Traffix USA, Inc. v. Bay*,
    No. 21-cv-02093, 2022 WL 2046282 (N.D. Ill. June 7, 2022)...............................15

*Tribble v. Evangelides*,
    670 F.3d 753 (7th Cir. 2012) ..............................................................................16

*United States v. Dish Network, L.L.C.*,
    292 F.R.D. 593 (C.D. Ill. 2013) ...........................................................................17

Pursuant to Fed. R. Civ. P. 37, Defendants McDonald's Corp., McDonald's USA, LLC ("McDonald's USA"), Christopher Kempczinski, Charles Strong and Steve Easterbrook (collectively, "Defendants"), move for sanctions and to compel following the recent revelation of significant discovery violations by Plaintiffs and their counsel.[1]

Written discovery has been closed since October 16, 2023. On Monday, November 11, 2024 (over a year after the close of written discovery), Plaintiffs' counsel advised – for the first time, and only after being pushed by counsel for Defendants – that they were in possession of **7,916 additional documents** that counsel represented were collected by Plaintiffs' former counsel, Carmen Caruso, years ago.

The parties have engaged in significant motion practice around discovery. Plaintiffs' counsel made multiple representations to Defendants' counsel and to this Court that all responsive documents had been produced to Defendants. Notwithstanding these representations, counsel now advises that these documents had not been reviewed and responsive documents had not been produced in the three years and four months that the parties have engaged in discovery – even though Plaintiffs have now each sat for three depositions because of repeated, belated discovery infractions.

Plaintiffs' current counsel represented that she believed a "vast majority" of the withheld documents were "Ms. Neal's communications from her McDonald's account to her personal e-

---

[1] The Parties met and conferred by telephone about the relief requested herein on December 9, 2024, and December 10, 2024. The Parties were unable to reach agreement regarding the relief requested herein. While Plaintiffs appear willing to sit for a further deposition, the parties were unable to reach agreement regarding the time limit for that deposition. Defendants request that the Court enter an expedited briefing schedule to resolve this dispute and schedule a telephonic status hearing at the Court's earliest convenience to discuss the case schedule given the significant issues raised herein. Defendants request an expedited briefing schedule because Plaintiffs' belated production of documents has already resulted in the re-scheduling of the deposition of Luis Quintiliano and warrants further depositions of Plaintiffs and potentially other witnesses, which may, in turn, have an impact on the expert discovery schedule. At Plaintiffs' request, the Parties have agreed to confer further about a briefing schedule after Plaintiffs have received and reviewed the Motion. The Parties will then promptly advise the Court if an agreement was reached regarding a briefing scheduling.

mail account[.]" (Group Ex. A; Nov. 7, 2024, e-mail from H. Lewis-Donnell). Such documents are responsive to written discovery propounded by Defendants as early as **September 3, 2021** and are directly relevant to Defendants' thirteenth affirmative defense to Plaintiffs' claims, which states: "Plaintiffs' claims are barred, in whole or in part, by the after-acquired evidence doctrine." (ECF No. 146 at 114; ECF No. 103 at 96). The failure to review and produce such a significant number of documents and the extremely belated production at this juncture in the litigation is not only inexcusable, but also prejudicial to Defendants.

On November 19, 2024, Plaintiffs supplemented their production at 9:11 p.m., producing **776 additional documents** consisting of **4,182 pages**. No explanation was provided regarding the discrepancy between the 7,916 *collected* documents and the 776 *produced* documents given the prior representation that the "vast majority" of the documents were relevant communications. While Plaintiffs represented that they were withholding certain documents on privilege grounds, they failed to provide a privilege log.

On November 20, 2024, Defendants sought confirmation that Plaintiffs' document production was complete. On November 21, 2024, Plaintiff's counsel advised that there would be an additional limited production of documents with a privilege log by the following week (i.e., November 29, 2024). However, Defendants did not receive any further production or privilege log by that date. Rather, in the late evening of December 2, 2024, and only after being prompted by Defense counsel for an update on the production, Plaintiffs produced **40 additional documents** consisting of **185 pages** and provided two privilege logs.[2] Notably, Plaintiffs' counsel represented

---

[2] The logs identified a total of 114 documents being wholly or partially withheld on "privilege" grounds, including by way of example, communications solely between Plaintiffs nearly two weeks *before* they retained counsel and communications between Plaintiff Neal and a McDonald's HR employee who is not a lawyer.

in a follow-up email that yet another production of documents would be made by December 9, 2024. However, Plaintiffs failed to provide the additional documents by December 9, 2024.

Based on Defendants' initial review of these recently produced documents, it is clear that many contain new information pertaining to the claims or defenses at issue in the litigation and others identify new witnesses and/or present information that would have been important for defense counsel to have reviewed in preparation for many if not all of the **_23_** prior depositions from 18 different deponents that have already occurred in this case. Indeed, **_17 of the 18_** deponents are referenced within the belated productions.

To date, the belated production of 4,367 pages of documents now requires Defendants to request that both Plaintiffs sit for a *fourth* deposition. Each Plaintiff has already been deposed ***three times*** over the course of three years. The second and third depositions were necessitated as a direct result of Plaintiffs' belated production of documents, destruction of text messages, failure to serve complete privilege logs and significant amendments to their written discovery responses after incorrectly attesting under oath that their responses were accurate and complete. Defendants have incurred significant expense as a direct result of Plaintiffs' repeated discovery abuses. After multiple warnings from this Court, an award of Defendants' fees and costs are warranted.

Defendants also bring this motion for sanctions to redress the deliberate destruction of ESI by Plaintiff Guster-Hines and her counsel. The discovery record now confirms that Plaintiff Guster-Hines and her former counsel, Carmen Caruso, misrepresented at the outset of discovery that Ms. Guster-Hines' text messages dating back to 2012 had been collected and preserved. During her recent deposition on October 2, 2024, Ms. Guster-Hines testified that such representation was false, she did not produce text messages in this litigation because they were spoliated, her cell phone was set to and continues to be set to auto-delete text messages after one

day, her former counsel, Carmen Caruso, was aware that the auto-delete setting was destroying potentially relevant evidence, yet he never informed Defendants or the Court of the destruction of evidence nor did he do anything to stop this destruction.[3] Ms. Guster-Hines also admitted that she did not take any action to attempt to retrieve the spoliated text messages, change the settings on her phone or otherwise take any steps to attempt to preserve her text messages so that they could be produced in this litigation.

Plaintiffs' discovery abuses have led to an unnecessarily protracted discovery period and unnecessary motion practice at significant cost to Defendants. Defendants request that the Court:

1. Order production of the remaining withheld documents, including those that are currently being withheld on belatedly asserted privilege grounds and which were not previously identified on any privilege log prior to December 1, 2024, no later than December 31, 2024;

2. Order both Plaintiffs to sit for a fourth deposition regarding the belatedly produced materials on or before January 31, 2025;

3. Order expert discovery be stayed pending Plaintiffs' production of the remaining withheld documents and the completion of a fourth deposition of Plaintiffs;

4. Award Defendants their costs and fees in connection with (i) bringing this motion, (ii) reviewing the belatedly produced materials, and (iii) the re-deposition of Plaintiffs;

5. Bar Plaintiffs from relying upon the belatedly disclosed evidence, and permitting Defendants to rely on such evidence at their discretion;

6. Preclude Plaintiffs from opposing Defendants' After-Acquired Evidence affirmative defense;

7. Presume that the spoliated ESI was unfavorable to Plaintiff Guster-Hines and instructing the jury that it may so presume; and

8. Order any other sanction that this Court deems just and appropriate, including the full dismissal of Plaintiffs' claims with prejudice.[4]

---

[3] *See* Ill. Rules of Prof. Conduct, Rule 3.4.

[4] *See Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 775-776 (7th Cir. 2016) (affirming the District Court's dismissal of the case with prejudice as a sanction, and further stating dismissal is an appropriate sanction under both FRCP 37 and the court's inherent sanction powers.)

4

All of this relief is warranted given the egregious conduct and supported by precedent.

## I.     OVERVIEW OF PLAINTIFFS' DISCOVERY INFRACTIONS AND ABUSE OF DISCOVERY PROCESS

### a.     Plaintiffs' Counsel Failed To Review 7,916 Documents And Only Disclosed This To Defendants After Repeated Requests.

The Loevy firm appeared in this case as new counsel for Plaintiffs on January 22, 2023. During the course of the Loevy firm's representation of Plaintiffs, there were several instances that Defendants learned that Plaintiffs previously failed to produce a significant amount of documents that were collected by prior counsel (discussed below). Written discovery closed on October 16, 2023 (ECF No. 382).

There have been repeated confirmations from Plaintiffs and their counsel that all responsive documents have been produced after **prior issues with belated productions were discovered**.[5] Nonetheless, on Monday, November 11, 2024, Plaintiffs' counsel disclosed that they failed to review up to 7,916 documents that they represent had been collected by Plaintiffs' previous counsel years ago. Plaintiffs' counsel also represented that they believed a "vast majority" of these documents "are Ms. Neal's communications from her McDonald's account to her personal email." Such documents are responsive to Defendants' discovery requests from 2021 and are directly relevant to, among other things, McDonald's affirmative defenses.

How did we get here?  Pursuant to this Court's Order dated July 11, 2024 (ECF No. 522), Defendants were permitted to take a third deposition of both Plaintiffs because of ongoing discovery infractions, discussed below.  At the June 5, 2024 status hearing prior to the third

---

[5] (*See Exhibit B*, correspondence dated April 19, 2023 from Edward Young, and *Exhibit C* correspondence dated May 18, 2023 from Quinn Rallins; *Exhibit D;* 6/5/2024 Transcript at 28:21-23, court transcript dated June 5, 2024 during which Plaintiffs' counsel stated "we undertook last fall…an extra effort to make sure and to search that everything had been, you know, searched for and produced again by this counsel.").

depositions, Defense Counsel sought confirmation that "all documents that should be produced prior to the deposition" were, in fact, produced so Defendants are able "to adequately and effectively take the depositions." (Ex. D; 6/5/2024 Transcript at 46:8-12). In response the Court stated:

> I am certain that plaintiff counsel has no desire to have to go back for another deposition because documents weren't produced. So I don't expect that to happen. ***If it did, I think it would be a request for fees and costs for having to go back and do another deposition***. But I really don't expect that to happen given the circumstances here. So, you know, there is nothing for me to do. They have produced everything. It if it turns out they haven't I'm sure I'll hear about it. And yes, you know, I'll have to decide what to do about that. (*Id.* at 46:13-24).

At the same hearing, this Court further emphasized its expectation that Plaintiffs' counsel **"cross every T, dot every I, and make sure that every document that they have has been produced" and "whether McDonald's has [a document] or not…doesn't matter."** (*Id.* at 16:1-13) (emphasis added).

Defendants proceeded with Plaintiffs' third depositions based on the expectation that all responsive documents had been produced. On October 1, 2024, Plaintiff Neal testified that she "created"[6] a "Paulo Pena Info" document around the same time she created her "Tracker" document and sent both documents to counsel. Plaintiff Neal further testified at her deposition that the "Paulo Pena Info" document had been produced in this litigation. After Plaintiff Neal's deposition, Defendants requested the Bates Number of that document from Plaintiffs' production. On November 7, 2024, Plaintiffs' counsel confirmed that such document had **<u>not</u>** been produced by Plaintiffs and that there were, in fact, a trove of other documents that similarly had been

---

[6] Plaintiff Neal testified that she "created" a document entitled "Paul Pena Info" at the direction of her attorney. (Exhibit E, Neal Third Deposition 55:57:13). Such testimony is undermined by the fact that the referenced document consists of internal McDonald's information that Ms. Neal took screenshots of and provided to her counsel. It is clear from the face of the document that McDonald's created the document in question. Ms. Neal's representation under oath that she "created" this document is untruthful or at best misleading.

collected but had not been produced. Plaintiffs' counsel represented that they needed two weeks to review the withheld documents.

On Monday, November 11, 2024, Plaintiff's counsel disclosed that there are 7,916 documents that had not been reviewed or produced. They noted that, given the volume, they would not be able to review and produce these documents by November 13th as requested, and instead stated they would produce responsive documents by November 18th. While Plaintiffs' counsel agreed to produce Plaintiffs for the additional deposition, counsel refused to agree to reimburse Defendants for fees and costs associated with taking these depositions. The Parties' correspondence on this issue is attached as Group Exhibit A.

Plaintiffs did not produce all of the responsive documents on November 18th as promised. Instead, in the evening of November 19th, Plaintiff produced only 776 documents consisting of 4,182 pages. By way of just a few examples, the production showed:

- Plaintiffs misappropriated McDonald's confidential information, taking hundreds of pages of highly sensitive business reports (some of which have clear disclaimers stating "**Confidential** For McDonald's Internal Leadership Use Only"), internal confidential presentations on key initiatives and the Field First Restructure ("FFR") (a company-wide restructuring effort that has been a central focus of this litigation), confidential documents regarding McDonald's franchisees, including sensitive business information regarding franchisee performance, profitability, business plans and cash flow projections, organizational charts, performance documents, compensation documents, diversity statistics and plans, internal e-mails about personnel changes for comparators and others, job descriptions for various roles, and confidential benefit, severance and compensation plans. (*See* Group Ex. V.)

- Plaintiff Guster-Hines (who was on leave of absence at the time) sent herself documents regarding a McDonald's franchisee, in addition to other documents. (*See* Group Ex. W.)

- On March 13, 2022, Plaintiff Guster-Hines (who had already retired from McDonald's by this time) retrieved a FFR presentation from her email account associated with her ***subsequent*** employer and forwarded it to her personal e-mail account. Had Defendants received this e-mail during the discovery period, they would have sent a third-party subpoena requesting the production of all

7

McDonald's documents that Plaintiff Guster-Hines misappropriated and retained on her employer's computer servers. (*See* Group Ex. X.)

- While counsel had previously represented that a "vast majority" of the 7,916 documents contained e-mails that Neal sent from her McDonald's account to her personal e-mail address, Defendants' review has determined that characterization to be inaccurate. Rather, Plaintiffs' production of 776 documents only contained 81 such e-mails from Neal (not including attachments/family documents). By way of context, McDonald's production of similar e-mails earlier in the case in support of its After-Acquired Evidence Defense included 113 such e-mails, meaning Neal has still failed to produce a significant number of e-mails that she forwarded to herself which raises concerns of spoliation and/or further calls into question the adequacy of Plaintiffs' search for responsive documents. There is also a tranche of documents relating to McDonald's internal communications and confidential materials where it is entirely unclear how Plaintiffs retained the information (e.g., Plaintiffs were not the sender, and the documents were not sent to Plaintiffs' personal email account), and Defendants are missing important information about how Plaintiffs obtained these documents and emails.

- There are many documents relating to the issue of mitigation of damages. For example, Plaintiffs engaged in numerous communications with recruiters or hiring managers about similar positions that Plaintiffs were presented with but did not pursue. These emails are directly relevant to Defendants' affirmative defenses regarding mitigation of alleged damages. Had Defendants been in possession of these e-mails during the discovery period, they would have pursued further discovery regarding these job opportunities. (*See* Group Ex. Y.)

- Plaintiffs were communicating with and sending confidential McDonald's documents to numerous individuals, including a former McDonald's employee. (*See* Group Ex. Z.)

- The production suggests that Plaintiffs and their counsel corresponded with the press regarding the allegations in the Complaint. Plaintiffs were interviewed for a news article and Plaintiff Neal continued to have follow-up correspondence with that journalist regarding McDonald's-related topics. Defendants did not have the opportunity to review or question Plaintiffs about these conversations or seek third-party discovery of the journalist. (*See* Group Ex. AA.)

- Plaintiff Neal also produced a complaint with exhibits relating to an entirely different McDonald's litigation filed in the United States District Court for the Northern District of Ohio.

- 17 of the 18 individuals who have been deposed in this case were referenced in the belated production.

8

Plaintiffs did not provide a privilege log for the documents they continued to withhold from production (and have now withheld for years), instead claiming that such a log would be provided the week of November 25, 2024.

Late in the evening of December 2, 2024, Plaintiffs produced 40 additional documents consisting of 185 pages and provided two privilege logs. The production included an Attorney-Client Privileged communication dated September 2, 2019 (*i.e.*, just weeks before Plaintiffs sent their demand letter to McDonald's) between McDonald's in-house legal counsel and Plaintiffs' supervisor that appears to have been inappropriately accessed by a former employee who accessed the supervisor's e-mail without permission. The employee appears to have printed the e-mail and then provided it to Plaintiffs with a hand-written description stating that the e-mail was sent by a McDonald's attorney. Other documents produced in these belated productions confirm that this same employee also assisted Plaintiffs by taking pictures of Plaintiffs' supervisor's calendar and sending same to Plaintiffs. None of these documents were produced prior to Plaintiffs' many depositions. Additionally, at no point in the litigation prior to this production did Plaintiffs' counsel notify Defense counsel, consistent with their ethical obligations, that they were in possession of McDonald's privileged communications. There has been no explanation offered as to how this document was obtained and whether there are other similar privileged documents in Plaintiffs' and/or their counsels' possession.

Finally, Plaintiffs' counsel represented that yet another production of documents would be made by December 9, 2024. However, Defendants have yet to receive such documents.

      **b.     Plaintiff Guster-Hines And Her Counsel Misrepresent That Her Text Messages Have Been Preserved And Subsequently Admit To Spoliation**

On August 23, 2021, Plaintiffs served their Rule 26 Initial Disclosures which represented that Plaintiffs' counsel was in the process of collecting the emails and text messages from each Plaintiff. (Ex. F, Plaintiffs' Initial Disclosures).

Defendants served their first set of discovery requests on September 3, 2021. On November 5, 2021, Plaintiffs responded and agreed to produce documents in response to these requests. Notably, in a response to a request seeking communications between the Plaintiffs concerning the allegations in the Complaint, Plaintiff Guster-Hines responded: "**Plaintiff has collected Guster-Hines' emails from years 2012 through July 2020 and Guster-Hines' texts from years 2012 through July 2020**." (*See Exhibit G*, Plaintiffs' Responses to Defendants' First Set of Document Requests at No. 2) (emphasis added).[7]

Plaintiffs' subsequent productions, however, did not contain any text messages belonging to Plaintiff Guster-Hines. After several follow-up inquiries from Defendants, and after the Loevy firm attempted to use *Ms. Neal's* text messages during a deposition even though such messages had also not been produced (discussed below), Plaintiffs' counsel represented that Plaintiff Guster-Hines had spoliated her text messages by failing to turn off an "auto-delete" feature on her phone and therefore could not produce any text messages. (*See Exhibit H*, Sep. 18, 2023,

---

[7] Text messages from Plaintiff Guster-Hines would have also been responsive to several other discovery requests. *See, e.g.,* Exhibit J, Defendants' Request For Production ("RFP") No. 6 (seeking communications between Plaintiff Guster-Hines and "any current or former employee of McDonald's…at any time relating to any of the allegations in the Complaint"); RFP No. 13 (seeking all documents related to or concerning any similarly situated employee whom Plaintiff Guster-Hines contends or believes received better treatment from Defendants than she because of race); RFP No. 50 (seeking all documents evidencing any alleged admissions by Defendants, its employee, agents, or any person acting on behalf of Defendants related to the allegations raised in the Complaint); RFP No. 52 (seeking all communications in Plaintiff's possession that Plaintiff received or sent during her employment that references, involves or otherwise concerns McDonalds USA or Corporation, Plaintiff Guster-Hines' employment with McDonald's USA, and/or the claims asserted in the Third Amended Complaint ("TAC")); RFP No. 54 (seeking all text messages concerning or relating to any current or former employee of McDonald's USA, LLC or Corporation, that Plaintiff believes supports one or more of the allegations asserted in the TAC.)

Letter from H. Donnell at 1-2). This admission contradicted Plaintiff's prior representation in her 2021 discovery responses that she had collected and preserved her text messages dating back to 2012. Defendants' counsel brought this to the Court's attention in September 2023 (ECF No. 370 at 29) and Your Honor ordered Plaintiff Guster-Hines to sit for further deposition regarding the preservation of her text messages. (ECF No. 522).

During her deposition on October 2, 2024 (her **third** deposition in this case), Plaintiff Guster-Hines admitted:

- She reviewed the text messages that existed on her personal cell phone when responding to Defendants' written discovery requests. (Ex. I, Oct. 2, 2024 Dep. Tr. at 34:16-20).

- Her written response to Defendants' First Set of Document Requests No. 2 was not truthful because, among other reasons, Ms. Guster-Hines did not even have a personal cell phone until 2013 or 2014 and, more significantly, the only text messages that might have been collected by her counsel were those that she exchanged on the specific date that she provided her phone to counsel. (*Id.* at 35:23-41:4).

- Her phone settings were set to auto-delete her text messages. Such messages were deleting so quickly that the only text messages likely remained on her phone for only one day. (*Id.* at 40:19- 44:18).

- She would not be surprised to learn that no text messages were produced from her personal cell phone. (*Id.* at 46:1-11).

- When she handed her cell phone over to prior counsel, counsel informed her that there were "very few text messages" due to "factory settings." (46:1-48:15).

- After learning the settings on her phone were causing her text messages to be destroyed, Ms. Guster-Hines: (i) did nothing to investigate or otherwise check the settings on her phone; (ii) did not adjust the settings on her phone to begin saving text messages; (iii) did not take any steps to learn how to change the settings on her phone; (iv) made no attempt to try to recover the text messages that were spoliated; (v) did not contact her phone provider to inquire if the text messages could be restored; and (vi) did not check her Apple account or any cloud storage accounts to see if the text messages could be recovered. (*Id.* at 50:20-56:8).

- Ms. Guster-Hines was provided with the names of numerous individuals who are identified as witnesses in her initial disclosures and she did not deny that she may

have texted with such individuals from her personal cell phone. (*Id.* at 62:7-64:12).

- Ms. Guster-Hines testified that her counsel at the Caruso law firm told her to not delete her text messages, but did not instruct her to change her settings to preserve relevant evidence. Similarly, while Ms. Guster-Hines attempted to testify on re-direct that she did not "intentionally" delete text messages, on cross-examination she become evasive to questioning, but nonetheless confirmed that she did not take any intentional steps to ensure that relevant evidence from her phone would be preserved for this litigation. (*Id.* at 141:9-144:23).

   c.   **Plaintiffs Repeatedly Misrepresent to Defense Counsel And This Court That Their Written Discovery Responses Were Accurate And Complete, Requiring Plaintiffs To Each Sit For Three Depositions to Date.**

Plaintiffs sat for their first depositions in this case on July 13 and 18, 2022. During her deposition, Plaintiff Neal testified that her interrogatory responses were not complete and that she had additional information to supplement. (*See Exhibit K*, Excerpts from the first Deposition of Domineca Neal ("Neal Tr. I") at 280:11-287:24). Plaintiff Neal testified that she provided additional information to her counsel, Carmen Caruso, **the week prior to her deposition** concerning "additional examples" of conduct that she believed would bolster her claims. (*Id.* at 280:11-20, 283:4-285:1). Despite this, neither Plaintiff nor her counsel supplemented her interrogatory responses prior to her deposition, prompting Defendants to request that supplementation and an additional deposition. (*Id.* at 280:21-24, 281:12-282:4, 283:16-19, 285:12-286:4, 287:15-17).

On July 29, 2022, Plaintiff Neal provided supplemental responses to Defendants' Second Set of Interrogatories, which consisted of another **23 pages** of information. (*See Exhibit L*, Plaintiff Domineca Neal's Supplement to her Responses to Defendants' Second Set of Interrogatories). Nine months later, on April 14, 2023, Plaintiff Neal provided Defendants with what she labeled as her "final" supplement to Defendants' First Set of Interrogatories. After Defendants requested that Plaintiff confirm that supplemental production was complete,

12

Plaintiff Neal further confirmed on May 18, 2023 that she did not have any additional documents. (*See Exhibit B*, correspondence dated April 19, 2023 from Edward Young, and *Exhibit C*, correspondence dated May 18, 2023 from Quinn Rallins). Given the volume of supplemental information, on May 23, 2023, Defendants deposed Plaintiff Neal again during which Plaintiff Neal confirmed that her discovery responses were complete and that she did not have any additional information to supplement. (*See Exhibit M*, Excerpts from the Second Deposition of Domineca Neal ("Neal Tr. II") at 379:20-380:13).

Despite the representations made by Plaintiff Neal at her deposition, on July 2023 Plaintiffs attempted to question a deponent about certain of Plaintiff Neal's text messages that had not been produced in this litigation. (*See Exhibit N*, Excerpts from the Deposition of William Lowery at 94:5-103:11). It soon became clear that Plaintiff Neal had a cache of text messages that were responsive to Defendants' requests that had not been produced. According to Plaintiffs' current counsel, the reason for the failure of production was because Plaintiffs' prior counsel failed to produce the documents. (*See Exhibit O*, correspondence dated August 18, 2023 from Dan Twetten). After meet and confers between the parties, on July 24, 2023 and September 18, 2023, Plaintiff Neal produced nearly 500 pages of text messages. (ECF No. 428 at 2).

The text messages produced by Plaintiff Neal made several references to a "Tracker" document relating to Plaintiff Neal that had not been produced or disclosed in this litigation. When Defendants requested that Plaintiffs produce the referenced "tracker" document, Plaintiffs refused, stating that it was privileged (notwithstanding the fact that they had not disclosed the document on a privilege log).[8]

---

[8] Only after Defendants requested production of the "Tracker" document did Plaintiffs identify that document on privilege log dated September 22, 2023. (Exhibit Q, Correspondence dated September 22, 2023). Thereafter, Plaintiffs

Next, more than two years after Defendants served their First Set of Interrogatories on Plaintiffs and after Neal repeatedly testified under oath that her discovery responses were accurate and complete, late in the evening on October 16, 2023—*the close of written discovery*—Plaintiff Neal surprised Defendants yet again with another supplemental response to Defendants' First Set of Interrogatories. This supplemental response was **_14_** pages in length and contained numerous additional fact allegations not previously disclosed in this litigation. (*See Exhibit P*, Plaintiff Domineca Neal's Third Supplement to her Responses to Defendants' First Set of Interrogatories for Request No. 11). That same evening, Plaintiff Guster-Hines also supplemented her responses to Defendants' First Set of Interrogatories. (*See Exhibit R*, Plaintiff Victoria Guster-Hines' Supplement to her Responses to Defendants' First Set of Interrogatories). Plaintiffs offered no explanation regarding why they were suddenly supplementing their responses with many pages of additional material at the close of discovery and after sitting for two depositions each.

When asked whether Neal's supplemental responses were made in reliance on the Tracker document, counsel for Plaintiffs expressly stated in a face-to-face conversation with Defense counsel that Plaintiff Neal did *not* rely on her Tracker when preparing her third supplement to Defendants' First Set of Interrogatories. Then, Plaintiff Neal reversed course: on November 22, 2023, she produced the "Tracker" document with a new representation that she in fact *had* used it to help supplement her discovery responses. Upon review, Defendants quickly determined that the Neal Tracker contained numerous statements and actions attributed to various employees of Defendants that were identical to the information in Plaintiff Neal's supplemental responses (*See, e.g.,* Ex. P at 8-10; Ex. S  at 8, 12), thereby undermining Plaintiffs'

---

withheld additional documents and did not disclose such documents on a privilege log until May 14, 2024 following the Court's prompting. (Dkt. No. 515)).

counsel's initial position that Plaintiff Neal did not rely on the Neal Tracker to prepare her third supplement to Defendants' First Set of Interrogatories.

 As a result, Plaintiff Neal was compelled to sit for a third deposition regarding her belated document productions and written discovery responses.  (Dkt. No. 522).

### d.    Plaintiffs' Abusive Discovery Tactics Cannot Be Viewed In A Vacuum

This Court has often commented about the excessive breadth of discovery sought by the Plaintiffs in a case involving two relatively straightforward, individual claims of discrimination, harassment and retaliation. Indeed, this Court observed that "the overall discovery in this case… is broader, far broader than I have seen in any other case involving individual plaintiffs in my … almost 14 years on the bench." (Ex. T, Oct. 23, 2023 Hearing Tr. at 9:8-11). In total, Plaintiffs served 2,592 total discovery requests across all defendants just as part of their Initial Requests. (ECF No. 199 at 5-6, 11). Plaintiffs were later permitted to reissue their requests and served another 733 Revised Requests. (ECF No. 199 at 5, 12-13).  The docket itself – with over 500 docket entries before the parties even commenced expert discovery – signifies the scorched-earth approach that Plaintiffs have taken.  Yet, as it turns out, while Defendants were forced to incur significant costs and fees responding to Plaintiffs' expansive discovery and disputes arising therefrom, Plaintiffs were at the same time disregarding their basic discovery obligations as set forth above.

### II.    STANDARD FOR SANCTIONS

Beyond the Federal Rules of Civil Procedure's grant of authority to impose sanctions, a district court also possesses the "broad, inherent power to impose sanctions for failure to produce discovery."  *Steinfeld v. Jones Lang LaSalle Ams.*, No. 20-cv-5838, 2024 WL 4213214, at *4 (N.D. Ill. Sept. 17, 2024) (quoting *Traffix USA, Inc. v. Bay*, No. 21-cv-02093, 2022 WL 2046282, at *7 (N.D. Ill. June 7, 2022).  A district court enjoys "wide latitude in fashioning appropriate sanctions"

for discovery violations. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2016) (quoting *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999)). In doing so, the court will "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *Id.* at 643.

Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, if a party fails to "provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Pursuant to Rule 26(e)(1)(A), "parties have a continuing obligation to supplement or correct their [discovery] responses," and failure to abide by that obligation may result in sanctions under Rule 37(c)(1). *Brown v. Chicago Trans. Auth.*, No. 17-cv-08473, 2020 WL 777296, at *1 (N.D. Ill. Feb. 14, 2020) (Rowland, J.). To be certain, Rule 37(c)(1)'s "exclusion of non-disclosed evidence is automatic and mandatory unless non-disclosure was justified or harmless." *Id.* (citing *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012)). In addition to precluding a party from relying on what it failed to disclose, the Court may impose other appropriate sanctions in addition, including directing facts or issues as established, prohibiting the disobedient party from supporting or opposing certain claims or defenses, instructing the jury as to the party's failure, or dismissing the action in whole or in part. Fed. R. Civ. P. 37(c)(1)(C); *Hudgins v. Total Quality Logstics, LLC*, No. 16-c-7331, at *5 (N.D. Ill. Apr. 15, 2024). The Court may also award the moving party its reasonable attorneys' fees and costs. Fed. R. Civ. P. 37(c)(1)(A).

While Rule 37(c) governs a party's failure to supplement its discovery responses, Rule 37(e) dictates how to address the loss of relevant electronically searchable information ("ESI"). Fed. R. Civ. P. 37(e). Under that rule, if ESI "that should have been preserved in the anticipation

or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may impose sanctions on the party that has spoliated the evidence. *Id.*; *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022). Rule 37(e) has five threshold requirements:

> (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery.

*Hollis*, 603 F. Supp. 3d at 617.

If these prerequisites are met, the court must determine whether the non-spoliating party was prejudiced by the spoliation and, if so, it may order curative measures, including but not limited to, an instruction that jurors may consider the circumstances surrounding the loss of the ESI. *See* Fed. R. Civ. P. 37(e)(1); *Hollis*, 603 F. Supp. 3d at 617-18; *In re Local TV Advertising Antitrust Lit.*, No. 18-c-6785, 2023 WL 5607997, at *5 (N.D. Ill. Aug. 30, 2023). Further, if the court determines that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," it may impose additional sanctions, "including presuming that the information was unfavorable, instructing the jury to presume the information was unfavorable, or entering dismissal or default." *Hollis*, 603 F. Supp. 3d at 618; Fed. R. Civ. P. 37(e)(2)(A)-(C).

## III.    ARGUMENT

### a.    Plaintiffs Have Engaged In A Pattern Of Discovery Abuses.

Courts in this District frown on discovery misconduct like that engaged in by Plaintiffs. *Davidson v. Evergreen Park Cmty. High Sch. Dist. 231,* No. 15 C 0039, 2016 WL 6892882, at *3-4 (N.D. Ill. Nov. 23, 2016) (Rowland, J.) ("the issue is not the [Plaintiff's imperfect discovery responses], but his failure to produce records relevant to the [Defendant's] defense, and such

failure is not harmless."; precluding plaintiff from offering evidence related to the documents plaintiff had failed to produce); *Steinfeld v. Jones Lang LaSalle Americas,* No. 20 CV 5838, 2024 WL 4213214, at *8 (N.D. Ill. Sept. 17, 2024) (precluding the sanctioned party from relying on a document because the sanctioned party "failed to preserve the full version of the document" but permitting Defendant the option to rely on such document).[9]

In addition, where, as here, new counsel transitions into a matter with apparent discovery deficiencies, such deficiencies put the counsel on notice that it may need to take affirmative steps to remedy such deficiencies and ensure the completeness of their responses. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin.*, Inc., No. 15 C 10340, 2018 WL 6694904, at *4 (N.D. Ill. Nov. 8, 2018) (noting that where new counsel took over a matter where spoliation occurred, "[t]hat ought to have put counsel and client on their most careful behavior.")

*DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 890 (N.D. Ill. 2021) is instructive. There, the sanctioned party failed to timely produce and prevent the spoliation of thousands of documents. The spoliation was in part the result of the sanctioned party's failure to remove auto-delete settings from their e-mail account. Further, due to the sanctioned party's prior counsel failing to conduct a proper ESI search, when such a search was conducted, the sanctioned party discovered thousands of relevant documents. *Id* at 900-901. When the sanctioned party retained new counsel, that counsel blamed former counsel for any discovery deficiencies that

---

[9] *City of Aurora, Colo. ex rel. Aurora Water v. PS Sys., Inc.*, 720 F. Supp. 2d 1243, 1262 (D. Colo. 2010) (precluding the sanctioned party from pursuing a counterclaim related to materials and information it had failed to disclose); *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 298 (S.D.N.Y. 2024) ("[Plaintiff] will be precluded from relying on evidence that was produced after the discovery deadline."); *United States v. Dish Network, L.L.C.*, 292 F.R.D. 593, 603 (C.D. Ill. 2013) (precluding the sanctioned party from using at summary judgment or trial, documents that had not been previously produced in discovery.); *City of Inglewood v. Time Warner NY Cable LLC*, No. CV1309464BROCWX, 2015 WL 12803767, at *3 (C.D. Cal. June 9, 2015) ("Because the [Plaintiff's] failure to disclose the documents and supplement its incorrect discovery responses was neither harmless nor non-prejudicial, exclusion of the evidence is appropriate under Rule 37(c)").

had occurred. *Id* at 912. As a result of the sanctioned party's failure to conduct timely and adequate searches, the sanctioned party produced thousands of documents after the close of discovery. *DR Distributors, LLC*, 513 F. Supp. 3d 839, 888, 893, and 972 (N.D. Ill. 2021).

Pursuant to its sanction powers under FRCP 26(g) and 37(a-c and e), the Court ordered that the sanctioned party: (i) conduct a reasonable search for all responsive ESI and produce the responsive material to the non-sanctioned party, which the non-sanctioned party could use if it chooses; (ii) barred the sanctioned party from using any information not disclosed to the non-sanctioned party by the date it was originally due; (iii) barred the sanctioned party from contesting factual allegations related to the documents they failed to produce; (iv) at trial, evidence relating to the sanctioned party's failure to preserve ESI could be presented to the jury with respect to the sanctioned party's related counterclaims and the jury would be informed of the sanctioned party's failure to produce relevant documents; and (v) the trial court may consider the sanctioned party's failure to preserve ESI when reaching its judgment. *Id* at 863.

A similar result is compelled here. As noted above, Plaintiffs failed to review approximately 7,916 documents and produce responsive documents, which should have been done three years ago. As a result, Defendants are just now receiving at least 4,367 pages of documents and have been deprived of these documents throughout the course of discovery, including documents that could have been used during the Plaintiffs' multiple depositions in this case and could have led to the discovery of additional evidence helpful to Defendants' defenses, and would have impacted how the Defendants approached discovery. Moreover, certain of these documents concern confidential company information that Plaintiffs sent to themselves and third parties and are directly relevant to Defendants' affirmative defenses. In other words, Fed. R. Civ. P 37(c)'s sanction to exclude the documents not timely produced is not sufficiently curative, because it could

19

further prejudice Defendants by depriving them of documents that are potentially helpful to its defense. Rather, Plaintiffs should now be barred from opposing Defendants' After-Acquired Evidence affirmative defense and/or barred from using those belatedly produced documents in their case in chief or at summary judgment, but Defendants should retain discretion to use such materials if appropriate. Fed. R. Civ. P. 37(c)(1)(A-C).

Egregiously, this is not the first time that Plaintiffs have failed to timely produce documents and information, or have misrepresented that their discovery responses are accurate and complete. As a result, Defendants have already had to depose each plaintiff **two additional times**, and additional lengthy deposition of both Plaintiffs is now warranted given the significant volume of documents that Plaintiffs have withheld from Defendants.

Defendants should not be forced to bear the continued prejudice of Plaintiffs' withholding of thousands of documents – certain of which may be supportive of Defendants' defense – only to have Plaintiffs produce such documents at this very late stage in the litigation. Nor should Defendants bear the associated costs and fees of reviewing the previously undisclosed evidence, deposing Plaintiffs for a fourth time, deposing any new witnesses whose relevance becomes known from the withheld documents or any other reasonable action that must be taken as a result of the extremely belated production. Sanctions are warranted.

### i. None Of Plaintiffs' Failures Were Substantially Justified.

Plaintiffs' discovery violations are apparent. And none of them are substantially justified or harmless. Each of the four factors courts in this District consider weigh conclusively, at a minimum, in favor of exclusion. The offending party bears the burden of demonstrating that the failure to supplement or correct their discovery responses was substantially justified or harmless. *See Saldaña v. Cnty. of Cook*, No. 19-cv-6178, 2022 WL 2967422, at *2 (N.D. Ill. July 27, 2022) (citing *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)). In evaluating

20

whether the offending party has satisfied that burden, a court must consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Beaton v. SpeedyPC Software*, 338 F.R.D. 232, 237-38 (N.D. Ill. 2021).

*First,* the surprise of Plaintiffs' discovery violations is palpable. More than one year after the close of written discovery, after the parties have taken 23 depositions, and after repeated representations to the Court that they had produced all relevant documents, Plaintiffs disclosed that they are in possession of 7,916 documents that had not been reviewed and responsive documents not produced. *Second,* the significant prejudice to Defendants' ability to prepare its defense of this case cannot be cured given the number of depositions that have already occurred without the benefit of these additional documents. *Third*, allowing Plaintiffs' production into the discovery record would cause an immediate, expensive and prejudicial disruption to the case. It may require additional depositions or re-opening of prior depositions, would significantly impact the case schedule going forward and would come at great expense to Defendants.

*Fourth,* Plaintiffs cannot present any colorable argument that the failure to produce such documents was not willful or done in bad faith. Plaintiffs themselves have repeatedly represented to Defendants and the Court that their discovery responses were complete. Plaintiffs have been represented by two very experienced law firms, including 14 different attorneys who have appeared in this case. It is unfathomable that this many years into the case, Plaintiffs' counsel did not realize that up to nearly 8,000 documents had not been reviewed and responsive documents produced. Moreover, when the Loevy firm realized that Plaintiff Neal's text messages and other documents had not been produced in July 2023 after a deposition where a portion of these

documents were introduced for the first time in this litigation (*see* ECF No. 428 at 5), it is common sense that the Loevy firm would have undertaken an effort assure themselves that all discovery – including that gathered by previous counsel—had been reviewed and produced if responsive. It is, at best, negligent if such steps had not been taken and inconceivable that, if they had done that, they would have missed these documents. At this point, Defendants have no confidence that (i) Plaintiffs have diligently fulfilled their discovery obligations; or (ii) all relevant and responsive documents in Plaintiffs' possession and/or control that could be helpful to the defense of this case have been preserved, secured, reviewed and produced. This concern is compounded by Plaintiffs' counsel's recent representation that 7,916 collected documents were being reviewed and that they believed the "vast majority" were relevant to Defendants' affirmative defense, yet only 776 documents were initially produced without any supporting privilege log.

The absolute minimum Defendants would ask this Court to impose given the undisputed conduct is an order prohibiting ***Plaintiffs*** from using the belatedly produced evidence, but permitting Defendants the opportunity to use such information so it is not prejudiced from the withheld evidence.

### ii. Plaintiff's Spoliation Of Text Messages and Misrepresentations Regarding Same Also Warrant Sanctions

Plaintiff Guster-Hines' spoliation of her text messages warrants sanctions under Rule 37(e), and the Rule's five threshold requirements are easily satisfied here. Text messages constitute ESI, *see Pable v. Chicago Trans. Auth.*, No. 19-cv-7868, 2023 WL 21333414, at *19 (N.D. Ill. Mar. 2, 2023), *report and recommendation adopted*, 2024 WL 3688708 (N.D. Ill. Aug. 7, 2024), and Plaintiff Guster-Hines knew that litigation was reasonably likely at the absolute latest when she served a demand letter, through counsel, on McDonald's USA, on September 22, 2019. Not only should the text messages have been preserved from that date forward, but Plaintiff Guster-

22

Hines was also aware of her obligation to preserve the text messages; indeed, she expressly responded to Defendants' initial discovery requests that her "texts from years 2012 through July 2020" had been collected and preserved—a representation that was ultimately proven not to be true. (*See Exhibit G*, Plaintiffs' Responses to Defendants' First Set of Document Requests at No. 2). Although Plaintiff Guster-Hines has testified that her cell phone automatically deleted text messages as quickly as one day after receiving them and that her attorney *informed her of this issue and told her not to delete her text messages*, she did nothing to investigate the settings on her phone that caused this automatic deletion, did not adjust those settings, did not take any other steps to preserve her text messages, and made no efforts to recover the spoliated text messages. (Ex. I, Oct. 2, 2024 Dep. Tr. at 50:20-56:8). Ultimately, Plaintiff Guster-Hines has not produced a single text message responsive to Defendants' discovery requests save for a "screenshot" she selectively took of two partial messages and sent to her e-mail to preserve.[10] It is Defense counsel's understanding that the spoliated text messages cannot be recovered at this point.

Plaintiff Guster-Hines' text messages would have presented a contemporaneous record of her thoughts and communications surrounding this litigation and many of the allegations and events at issue. Indeed, from September 2019 onward, Plaintiffs served a demand letter on McDonald's USA, took McDonald's information and documents without authorization, filed charges of discrimination with the EEOC, commenced this litigation, were terminated (Neal) or retired (Guster-Hines) from McDonald's USA. They should have engaged in efforts to mitigate alleged damages, all of which are important aspects of the claims and/or defenses at issue in this

---

[10] Plaintiff Guster-Hines produced two "screenshots" of partial text messages that she captured and e-mailed to herself to retain in April and June 2020. (Ex. U).

litigation and which communications regarding the same would have otherwise been critical and discoverable.

To be sure, "[a]ny deleted ESI from this critical time frame certainly might have been important to support" the defenses in this action. *Sonrai Sys., LLC v. Romano*, No. 16-c-3371, 2021 WL 1418405, at *13 (N.D. Ill. Jan. 20, 2021). Those text messages may well have contained evidence that Defendants could have utilized to defend against Plaintiff Guster-Hines' claims or factual allegations in this action. However, due to her spoliation of these text messages, Defendants have been permanently deprived of this evidence. *Sonrai Sys.*, 2021 WL 1418405, at *12 ("Since it is often impossible to know the exact nature of the lost and unrecoverable ESI, the moving party must only come forward with plausible, concrete suggestions as to what the destroyed evidence *might have been.*") (internal quotations omitted).

It is undisputed that Plaintiff Guster-Hines was aware that her text messages were automatically deleting as quickly as one day after being sent or received and it is further undisputed that her prior attorney informed her that there were "very few text messages" due to "factory settings." (Ex. I, Oct. 2, 2024 Dep. Tr. at 40:19-44:18, 46:1-48:15, 141:9-144:23). Notwithstanding all of this, both Plaintiff Guster-Hines and her counsel appear to have failed to take any action to investigate her automatic deletion, to alter those automatic deletion settings, to begin preserving text messages, or to even attempt to recover the text messages that she spoliated. (*Id.* at 50:20-56:8). Plaintiff Guster-Hines and/or her counsel made conscious decisions that caused the spoliation and prevented curative measures thus exacerbating the violation of her duty to preserve her text messages.

To be sure, Plaintiff Guster-Hines, her prior counsel and her current counsel all became aware at some point in this litigation that Plaintiff Guster-Hines was not preserving relevant

evidence, and none of them did anything to remedy this infraction or promptly bring this to Defendants' attention. *See Torgersen v. Siemens Bldg. Tech., Inc.*, No. 19-cv-4975, 2021 WL 2072151, at *4 (N.D. Ill. May 24, 2021) ("Intentional destruction and bad faith may be proved inferentially and with circumstantial evidence, and this Court need not leave experience and commonsense at the courthouse door when making its determination."). A decision not to render a significant sanction in these circumstances would set a dangerous precedent.

Accordingly, Defendants request that the Court issue, in addition to any other sanctions it deems appropriate, an adverse inference instruction to the jury in any future trial of this action that it may presume that Plaintiff Guster-Hines' spoliated text messages from September 2019 onward were unfavorable to her. *See Sonrai Sys.*, 2021 WL 1418405, at *12 (granting plaintiff's motion for sanctions and finding that an adverse inference instruction to the jury would be an appropriate sanction for defendant's destruction of text messages and other ESI); *Torgersen*, 2021 WL 2072151, at *5 (finding that an adverse inference instruction requiring the jury to presume that information contained on plaintiff's Facebook page that was spoliated was unfavorable to his claims); *Segerdahl Corp. v. Ferruzza*, No. 17-cv-3015, 2022 WL 21295096, at *5 (N.D. Ill. Sept. 20, 2022) (finding that defendant intended to deprive plaintiff of his text messages where, among other things, he deleted text messages after he was aware of his obligation to preserve them, and determining that an adverse inference instruction was appropriate to address the spoliation); *Adv. Magnesium Alloys Corp. v. Dery*, No. 20-cv-02247, 2024 WL 244931, at *8 (S.D. Ind. Jan. 23, 2024) (affirming report and recommendation's grant of an adverse inference instruction at trial as a result of defendants' spoliation of text messages).

   **b.**  **Plaintiffs Should Both Be Compelled to: (i) Sit For an Additional Seven Hours of Deposition; and (ii) Produce the Remaining Withheld Documents.**

Finally, given the belated productions, Plaintiffs should be compelled to sit for another full deposition with an award of fees and costs to Defendants for such deposition. There have been a number of new documents produced, some of which are discussed above, that require an explanation from Plaintiffs including how they obtained these documents, and their involvement in any taking of private and/or privileged communications without permission by third parties.

In addition, the Court should compel production of the remaining documents curated by Plaintiffs' counsel that were inexplicably not included in the recent production. Given the repeated deficiencies with Plaintiffs' productions, Defendants have no confidence that all responsive documents have been produced. As noted above, Plaintiffs' production only contained 81 e-mails from Neal sending McDonald's information from her McDonald's e-mail account to her personal e-mail account (either by directly forwarding such information to her personal e-mail account or by bcc'ing her personal e-mail account when sending communications from her McDonald's e-mail account). By way of context, McDonald's production of similar e-mails earlier in the case in support of its After-Acquired Evidence Defense included 113 such e-mails, meaning Neal has failed to produce back to McDonald's scores of e-mails that McDonald's knows she took. In order to avoid further motion practice, the withheld documents should be turned over.

 Plaintiffs' position that certain of those documents are being withheld on the basis of privilege is indefensible. Indeed, the law is clear that a failure to serve a timely and sufficiently detailed privilege log may result in a waiver of privilege. See, e.g., *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010); *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17 C 7576, 2019 WL 6258490, at *12 n. 13 (N.D. Ill. Nov. 22, 2019) (forfeiture of work product protection where protection was not asserted in privilege log). Here, the documents were due to

Defendants in 2021. As noted above, the Court has already addressed Plaintiffs failure to present timely and adequate privilege logs. The Court demonstrated tremendous patience in allowing Plaintiffs to cure the prior significant deficiencies concerning their lack of privilege logs. Plaintiffs' continued refusal to adhere to this Court's directive and the basic rules of discovery warrants sanctions.[11]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and:

1. Order production of the remaining withheld documents, including those that are currently being withheld on belatedly asserted privilege grounds and which were not previously identified on any privilege log prior to December 1, 2024, no later than December 31, 2024;
2. Order both Plaintiffs to sit for a fourth deposition regarding the belatedly produced materials on or before January 31, 2025;
3. Order expert discovery be stayed pending Plaintiffs' production of the remaining withheld documents and the completion of a fourth deposition of Plaintiffs;
4. Award Defendants their costs and fees in connection with (i) bringing this motion, (ii) reviewing the belatedly produced materials, and (iii) the re-deposition of Plaintiffs;
5. Bar Plaintiffs from relying upon the belatedly disclosed evidence, and permitting Defendants to rely on such evidence at their discretion;
6. Preclude Plaintiffs from opposing Defendants' After-Acquired Evidence affirmative defense;
7. Presume that the spoliated ESI was unfavorable to Plaintiff Guster-Hines and instructing the jury that it may so presume; and
8. Order any other sanction that this Court deems just and appropriate, including the full dismissal of Plaintiffs' claims with prejudice.

Dated: December 10, 2024                    Respectfully submitted,

| /s/ Nelson M. Hua | /s/ Nigel F. Telman |
|---|---|
| Nelson M. Hua | Nigel F. Telman |
| Venable LLP | Edward C. Young |
| 227 W. Monroe Street, Suite 1900 | Proskauer Rose LLP |

---

[11] While Plaintiffs finally served privilege logs for the withheld documents on December 2, 2024, the identification of privilege documents well after the close of discovery does not cure the prejudice to Defendants. Moreover, should the Court not grant the relief sought in this Motion, Defendants anticipate filing a separate motion to challenge the clear deficiencies in the belatedly provided privilege logs and to compel production of the withheld materials on a document-by-document basis.

| | |
|---|---|
| Chicago, Illinois 60606<br>Phone: 312-820-3438<br>Fax: 312-820-3401<br>[INSERT EMAIL]<br><br>*Attorney for Defendant Steven Easterbrook* | 70 W Madison, Suite 3800<br>Chicago, IL 60602-4342<br>Phone: 312-962-3548<br>Fax: 312-962-3551<br>ntelman@proskauer.com<br>eyoung@proskauer.com<br><br>Atoyia S. Harris<br>Proskauer Rose LLP<br>650 Poydras Street, Suite 1800<br>New Orleans, LA 70130<br>Phone: 504-310-2027<br>Fax: 503-310-2022<br>aharris@proskauer.com<br><br>*Attorneys for Defendants McDonald's Corporation, McDonald's USA, LLC, Christopher Kempczinski and Charles Strong* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 10, 2024, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF System, and notice was provided to All Counsel of Record.


*/s/ Edward C. Young*
Edward C. Young