IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-00117 |
| v. | ) ) | Judge Mary M. Rowland |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEPHEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG, | ) ) ) ) ) ) ) ) | Magistrate Judge Laura K. McNally |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**THEIR MOTION FOR SANCTIONS AND MOTION TO COMPEL**

Defendants McDonald's Corp., McDonald's USA, LLC, Christopher Kempczinski, Charles Strong, and Stephen Easterbrook (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this Reply in Further Support of their Motion for Sanctions and Motion to Compel ("Motion") (Dkt. No. 536).

**PRELIMINARY STATEMENT**

Plaintiffs' record of discovery misconduct paints a troubling picture. Rather than take responsibility for their actions, Plaintiffs now present a litany of excuses, deflections and misdirection by making material misrepresentations to this Court, blaming prior counsel, and attempting to equate Plaintiffs' significant and repeated discovery infractions, including their recent productions of more than ***12,000 pages of documents*** more than a year after the close of fact discovery, to Defendants' production of a single document *during the discovery period*. Once closely scrutinized it becomes clear that none of Plaintiffs' arguments justified their egregious discovery abuses; nor should their excuses and finger pointing be sufficient to dissuade the Court from issuing appropriate sanctions.

*First*, Plaintiffs' attempt to blame prior counsel is not a basis to avoid sanctions, especially given that it is *Plaintiffs* who have the obligation to ensure compliance with their discovery obligations. *LiiON, LLC v. Vertiv Grp. Corp.*, No. 10 CV 6133, 2020 WL 6038055, at *2 (N.D. Ill. Feb. 28, 2020) ("[u]ltimately it is the party, not the attorneys, that is responsible for ensuring compliance with its discovery obligations.)

*Second*, Plaintiffs have no excuse for their *current* attempt to skirt their discovery obligations and this Court's December 22, 2024 Order ("Order"). (Dkt. No. 545.) In what can be fairly characterized as an unfair game of hide and seek, the evidence suggests that Plaintiffs continue to withhold responsive documents and information from Defendants.

*Third*, despite Plaintiffs' attempts to diminish the prejudice of their belated-production to Defendants, there is no question that their discovery abuses put Defendants at a clear disadvantage which *is* by definition *prejudice*. To be clear, had Defendants received these documents in a timely manner, they certainly would have informed Defendants to potentially make different decisions with respect to their strategies in this litigation. Given Plaintiffs' continuous misconduct, significant sanctions are warranted.

## ARGUMENT

### I. Plaintiffs Cannot Continue to Point to Prior Counsel to Avoid the Consequences of Their Own Misconduct.

Plaintiffs' attempt to avoid sanctions by placing the blame for their misconduct on the shoulders of their previous counsel, specifically arguing that (i) Plaintiffs' belated productions of thousands of documents, (ii) Plaintiffs' belated production of their privilege logs totaling more than a thousand log entries, and (iii) Guster-Hines' spoliation of text messages, are all their previous counsel's doing.

Plaintiffs do not, however, offer an affidavit or statement from prior counsel in which prior counsel acknowledges and accepts responsibility for failing to review and produce responsive documents in a timely manner. Instead, Plaintiffs expect Defendants (and this Court) to simply accept

their representations as true. Given the egregious conduct at issue here, Defendants (nor this Court) should not be required to take Plaintiffs word and accept these critical representations as true without some corroboration from their previous counsel.

## II. Plaintiffs Continue to Misrepresent the Completeness of Their Production.

Although Plaintiffs represent that "[c]urrent counsel has now certified that every responsive, non-privileged document in Plaintiffs' possession has been produced to Defendants," (Opp. at 10), the evidence suggests this too is a misrepresentation. For the first time in this litigation, Plaintiffs appear to be withholding non-privileged documents based on a time-period objection *asserted* by Defendants (not Plaintiffs) in response to Plaintiffs' discovery requests. (Opp. at 9; Dkt. No. 553).[1] Plaintiffs' apparent continued withholding is of concern given the long history of belated-productions and the fact that Plaintiffs themselves have disputed and otherwise objected to Defendants' limiting the scope of their production to a "relevant time period." (*See, e.g.*, Dkt. No. 145 at 6-8). On the other hand, Plaintiffs have never asserted any time limit objections to Defendants discovery requests and instead have produced documents during discovery with no such limitation. The fact that they are making this objection for the first time suggests they are in fact withholding responsive documents.[2]

Indeed, the fact that of the 7,916 documents Plaintiffs' counsel represented on November 11, 2024 that Plaintiffs located, over 5,000 documents remain unaccounted for in the production or the privilege log. A timeline of Plaintiffs' productions helps put the nature of their conduct into perspective:

---

[1] In their Certificate of Compliance, Plaintiffs' counsel states "all responsive, non-privileged documents *within the relevant timeframe* have been produced." (Dkt. No. 553).

[2] Plaintiffs' belated objection results in a waiver similar to their waiver of privilege due to their belated privilege logs. *See, e.g.*, *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17 C 7576, 2019 WL 6258490, at *12 n.13 (N.D. Ill. Nov. 22, 2019) (forfeiture of work product protection where protection was not asserted in privilege log); *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 236 F.R.D. 396, n.2 (N.D. Ill. 2006) ("The text of Rule 33 includes an automatic waiver provision where there has been an untimely objection. Rule 34(b) does not. Nonetheless, courts are uniform in their interpretation of the rules as permitting a finding of waiver where objections are not timely made and the objector cannot show good cause for the delay.").

- On November 11, 2024, Plaintiffs represented to Defendants that **7,916 documents** had been collected by Plaintiffs' prior counsel that had not been reviewed, produced and logged;

- On November 19, 2024 —13 months after the close of fact discovery — Plaintiffs produced 776 documents totaling 4,190 pages;

- On December 2, 2024, Plaintiffs produced 40 documents totaling 188 pages;[3]

- On December 11, 2024, Plaintiffs produced 89 documents totaling 357 pages;

- On December 16, 2024, Plaintiffs produced 19 documents totaling 103 pages;

- On December 30, 2024, Plaintiffs produced 9 documents totaling 31 pages; and

- On January 24, 2025, Plaintiffs produced 857 documents totaling 7,204 pages.

In sum, Plaintiffs produced **1,790 documents totaling 12,073 pages 13 months after the close of discovery**. Even with this production, however, Plaintiffs appear to *still* be withholding responsive documents, notwithstanding making representations that their production and privilege logs are complete.

Adding further confusion to the number of documents at issue, Plaintiffs now represent that there were 9,369 documents they reviewed after the close of discovery. (Opp. at 26). This is 1,453 documents *more* than Plaintiffs' counsel represented to defense counsel less than three months ago they had located and were reviewing. These continuous shifts in positions and inconsistencies have left Defendants with no confidence that Plaintiffs have turned over to their counsel for review all responsive documents in their possession and/or control.

### III. Defendants are prejudiced by Plaintiffs' Failure to Produce Documents in a Timely Manner.

Plaintiffs rely heavily on their assertion that "McDonald's has not made a showing of prejudice

---

[3] Notably, at the time Plaintiffs made their December 2nd production, they represented to Defendants that they were reviewing "one additional set of documents" and would make a final limited production by December 9th. (Group Exhibit A of Motion, 12/2/2024 Correspondence) (Dkt. No 536-1). That production was not made until December 11th and was accompanied by what Plaintiffs characterized as their "final" privilege logs.

3

resulting from this production that justify their extreme sanctions," (Opp. at 20) in order to avoid sanctions; however, the prejudice is plainly evident, some of which was noted in Defendants' Motion (Dkt. No. 536, at 7-8), and include the following examples:

- Screenshots provided to Neal by a former McDonald's employee regarding performance notes and correspondences. One such document was a privileged e-mail from a McDonald's employee to McDonald's internal counsel wherein the employee sought the provision of legal advice. The belated production of these documents prevented Defendants from inquiring as to the circumstances which led to Neal receiving these documents, including potentially deposing the former employee on how she obtained McDonald's privileged information and why she shared it with Neal. *See* Ex. A; *See also* Ex. B.

- Several correspondences between Neal and other individuals on social media platforms which relate directly to her claims. *See* Ex. C. For example, Neal produced what appears to be a social media correspondence between herself and another McDonald's employee wherein Neal stated: "underrepresented persons and women have done extremely well growing their careers at McD under Easterbrook and Chris K" and further asserts that McDonald's spent a year and a half "recruiting blacks to make it look better than when we gave legal notice…." Even though these screenshot messages were produced partially cut-off, Defendants would have certainly inquired about Neal's basis for the aforementioned claims, and how she procured the information upon which those assertions are based.

- Plaintiffs also belatedly produced a message exchange between Neal and a former McDonald's employee, wherein she stated she is "proud of how he and Salvador succeed [sic] successfully embraced and transition through the program while learning how to excel in the McD culture." To the extent Neal is referring to Salvador Almanza within this message, Defendants would have inquired as to the basis of Plaintiff's representation that Mr. Almanza was "successfully embraced," particularly because Mr. Almanza was deposed on February 5, 2024 and also submitted a declaration in this action wherein he alleged he was mistreated by his supervisor because he was a person of color. *Id* at 7; *See* Ex. D, *Exhibit 1* of Almanza's Deposition.

- Plaintiffs produced an e-mail from Guster-Hines' "Illinois.wish.org" e-mail account to her Yahoo account, which included an attachment of a July 13, 2018 McDonald's Field Office Kickoff Working Session presentation. *See* Ex. E. Notably, Guster-Hines forwarded this document to herself on March 13, 2022—well after she had initiated the current action and after she had been put on notice of Defendants' after-acquired evidence defense. Had Defendants timely received this e-mail, they would have, among other things, sought third-party discovery on Illinois Make a Wish for the production of all McDonald's documents Guster-Hines placed on their servers/computers.

- Finally, Plaintiffs' belated production included a March 15, 2022 correspondence chain from what appears to be a representative from a consulting firm to Guster-Hines, wherein they discussed McDonald's related materials. Notably, the consultant informed Guster-Hines of internal personnel changes that occurred within McDonalds.

4

> Defendants could have inquired as to the working relationship between Guster-Hines and the consultant, and why he provided her information regarding McDonald's personnel changes. *See* Ex. F; *See also* Ex. G.

To the extent Plaintiffs would have timely produced these and other documents, Defendants may have, among other things, (i) asked questions of the deponents who may have had information about the belated-production, (ii) interviewed additional potential witnesses referenced in the documents or with knowledge about the documents, (iii) served additional discovery requests relating to the facts/statements contained in these documents, (iv) issued third-party subpoenas, and (v) addressed Plaintiffs' improper possession of attorney-client privilege communications between McDonald's in-house counsel and another employee. Plaintiffs' proposed solution of allowing Defendants the opportunity to depose each Plaintiff a *fourth* time will not come close to remedying the significant prejudice suffered by Defendants because it will not return to Defendants the opportunity to pursue additional avenues of discovery they would have been entitled to pursue had they received the documents within the discovery period.

To deflect from Plaintiffs' own misconduct, Plaintiffs assert that because some of the belatedly produced documents within their productions may reside on McDonald's servers, those documents cannot be prejudicial. (Opp. at 1 and 18). Plaintiffs make this absurd assertion with no supporting legal authority, effectively asking this Court to conclude that Defendants were responsible for reviewing every document contained on their internal servers.[4] Plaintiffs conveniently ignore that Courts in this district have found prejudice in far less egregious circumstances. *See Putnam v. CaramelCrisp LLC*, No. 20 C 2074, 2024 WL 197361, at *2 (N.D. Ill. Jan. 18, 2024) (finding prejudice even where the belated production was partially publicly available because it prevented the prejudiced party from "not knowing until after the discovery is over that a public document is going to be used [in the course of

---

[4] Further, to the extent Plaintiffs rely on this constructive notice, Plaintiffs fail to explain how Defendant Easterbrook, who has not been employed by McDonald's since the inception of this lawsuit and who is represented by separate counsel, does not suffer tremendous prejudice from the belated production of such documents.

5

litigation].")).There is an inherent level of prejudice with respect to all documents that have not been previously produced in this action. As Plaintiffs admit, at least 1,489 documents in their belated production were *not* previously produced by either party. Moreover, Plaintiffs did not take into consideration the 857 documents produced on January 24, 2025. This means that up to 2,346 documents from Plaintiffs' production may be new documents produced outside the discovery period.

Plaintiffs further assert that if any of the belated documents were responsive, and were within McDonald's possession and control, then Defendants had an equal obligation to produce such documents. (Opp. at 11). Plaintiffs improperly equivocate their discovery obligations with Defendants' obligations. Plaintiffs had an independent obligation under FRCP 34(b)(2) to timely produce documents in response to Defendants' various discovery requests. Plaintiffs do not assert that Defendants failed to timely produce documents with respect to their discovery requests, and they have not pointed to a single discovery request served by Plaintiffs to which any of these documents would have been responsive notwithstanding Defendants objections.[5]

Moreover, McDonald's Corp. and USA were not obligated to review and produce every single email and file of all their employees to fulfill their discovery obligations which is what would have been required if Plaintiffs' argument is to be accepted. *Health & Beauty Tech., Inc. v. Merz Pharma GmbH KGaA*, No. 7:18-CV-117-FL, 2018 WL 6345369 (E.D.N.C. Dec. 5, 2018) ("As a practical matter, Defendants cannot search every email inbox of every employee"). That is well-beyond the bounds of their discovery obligations and does not reflect the basic discovery process.

Further, to the extent Plaintiffs maintain the assertion that Defendants were equally responsible to produce the documents within their belated production, the lack of reciprocal discovery stems from

---

[5] Plaintiffs' assertion that McDonald's did not produce a full set of responsive emails Neal sent to her personal email address is yet another distraction from Plaintiffs' actions. To the extent Plaintiffs have 28 additional emails that were not in Defendants' production, there are a myriad of reasons for this discrepancy including Neal possibly deleting the emails. Moreover, the discovery request to which Defendants produced Neal's self-help e-mails, did **not** seek the production of every single e-mail Neal ever sent to herself. *See* Ex. H, Plaintiffs' Supplemental Rule 34 Requests. Regardless, any such discrepancy only further speaks to the prejudice to Defendants to the extent Neal was in possession of additional documents relevant to Defendants' after-acquired evidence defense.

6

Plaintiffs' prior counsel refusing to collaborate with Defendants on mutual search terms for ESI, and instead propounded so many discovery requests that the Court observed that the requested discovery was "far broader than I have seen in any other case involving individual plaintiffs in my…almost 14 years on the bench." *See* Ex. I, October 23, 2023 Hearing Transcript at 6:8-11. This argument also disregards this Court's clear instructions directed to Plaintiffs six months before their recent belated production… Plaintiffs must "cross every T, dot every I, and make sure that every document that they have has been produced" and "whether McDonald's has [a document] or not…doesn't matter." (Ex. D of Motion; June 5, 2024 Transcript. at 16:1-13) (Dkt. No. 536-4).

      Plaintiffs further attempt to minimize prejudice by artificially narrowing their description of the productions' contents and unduly cropping the focus. For example, Plaintiffs assert that the "impact of the late production is vastly overstated," and cite 264 documents and e-mails in support of this assertion, however this leaves 1,526 of 1790 documents unaccounted for in the total belated production. (*See* Opp. at 10). Plaintiffs attempt to account for this delta by listing: (i) two e-mail exchanges, (ii) e-mails that Guster-Hines sent from her McDonald's account to her personal account, (iii) a singular e-mail regarding a McDonald's DEI initiative; (iv) a public complaint; and (v) Plaintiffs' personal financial information. *Id.* Missing from Plaintiffs' list are hundreds of correspondences between Plaintiffs and McDonald's employees, as well as various internal documents, videos, and pictures which accompanied those emails — including documents with confidential business information. Finally, Plaintiffs' assertion that their personal financial information was "not responsive until Plaintiffs disclosed their expert reports and accompanying materials" is incorrect. Defendants' prior discovery requests include requests for such financial information. *See* Ex. J, Defendants' First Request For Production to Domineca Neal Nos. 54 and 55 and Ex. K, Defendants' Second Request For Production to Victoria Guster-Hines Nos. 56 and 57.

      Plaintiffs similarly attempt to miscast the vast scope of their belated production by improperly characterizing such documents as mostly bearing on Defendants' after-acquired evidence defense. This

7

is not the case. Plaintiffs belated production included a multitude of documents related to other claims and defenses.[6] Moreover, Plaintiffs attempt to minimize the egregiousness of their self-help discovery by arguing in general terms that "employees forwarding business emails to non-business email accounts is well-known…in society at large" (Opp. at 19). This is not correct and does not excuse clear violation of company policies that dictate how employees are to handle sensitive confidential and proprietary documents belonging to their employers. Here, McDonald's Standards of Business Conduct required Plaintiffs to maintain the confidentiality of business information. *See* Ex. L at 27. Plaintiffs did not seek or receive permission from an authorized representative of the Company to ignore these requirements.

While Defendants maintain prejudice exists as a result of Plaintiffs' entire belated production, Plaintiffs' assertion that "many of the documents at issue are McDonald's own documents and are duplicates of those already in Defendants' production" (Opp. at 9) is also a clear misrepresentation. Even when excluding the documents previously produced in this action, and further excluding documents which Plaintiffs allege Defendants should have constructive knowledge of, troves of prejudicial documents, including but not limited to those identified above and the documents identified in Defendants' initial memorandum of law, remain. *Supra* Sec. III, 3-4; *See also* Dkt. 536, 7-8. These documents do not need to amount to a "smoking gun" to justify sanctions as Plaintiffs claim. (Opp. at 2). These documents would have resulted in Defendants exploring additional discovery, and, as such, the belated production is prejudicial and can serve as a basis for sanctions. *See Lujano v. Town of Cicero*, No. 07 C 4822, 2011 WL 6822204, at *3 (N.D. Ill. Dec. 23, 2011) (finding Plaintiff's belated

---

[6] Further, Plaintiffs' cited authority does not stand for the proposition that discovery requests solely based on the after-acquired evidence defense are not permitted. Plaintiffs' cited authority instead prohibits discovery requests which only seek documents in hopes of finding a basis to assert an after-acquired evidence defense. *See Perry v. Best Lock Corp.*, No. IP 98-C-0936-H/G, 1999 WL 33494858, at *2 (S.D. Ind. Jan. 21, 1999) ("The broad scope of the "after-acquired evidence" defense was not intended to be an invitation to pursue discovery for the sole purpose of finding some basis for establishing such a defense.") Defendants' basis for the after-acquired evidence defense is well established in the record, evidenced by the fact that Plaintiffs themselves sought discovery related to the defense. *See* Ex. H. Even if Plaintiffs' mistaken interpretation were correct, Plaintiffs' decision to belatedly produce such documents effectively waives Plaintiffs' objection. *See Autotech Techs. Ltd. P'ship*, 236 F.R.D. 396, n.2.

production of documents at the end of discovery prejudicial in part because such discovery "could have been developed at an earlier stage…"); *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07-CV-3 JVB, 2011 WL 3880426, at *2 (N.D. Ind. Sept. 2, 2011) ("[Plaintiff] was prejudiced because [Defendant's] late production inhibited its ability to conduct further discovery.")

Plaintiffs cite *DR Distributors, LLC v. 21 Century Smoking, Inc.* for the proposition that discovery sanctions should be proportional (Opp. at 17), but do not address the similarities between the discovery violations committed in *DR. Distributors* and their own discovery violations. Instead, Plaintiffs distort the holding in *DR Distributors* by suggesting Defendants' awareness of Plaintiffs forwarding work e-mails to their personal accounts also made Defendants responsible for assuming that Plaintiffs intentionally withheld such e-mails in discovery. However, the Court in *DR Distributors, LLC v. 21 Century Smoking, Inc* did not find that the prejudiced party should have been more aware of the opposing parties' propensity for discovery violations. To the contrary, the *DR Distributors* Court noted that because the implicated party's new counsel was on notice of the multiple discovery problems they inherited from prior counsel, new counsel was obligated to investigate such deficiencies. *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 966 (N.D. Ill. 2021). Likewise, Plaintiffs also fail to recognize that there has been prior court intervention with respect to Plaintiffs' discovery deficiencies[7] and as explained in more detail above, their belated productions did cause prejudice and surprise. Intentionality is not required to issue sanctions.[8]

As another deflection from their conduct, Plaintiffs conflate the production of a 4-page memorandum by Defendants *during the discovery period* with Plaintiffs' belated-production of 1,790 documents totaling more than 12,000 pages produced more than a year *after the close of discovery* and

---

[7] *See* Dkt. 522, Court's Order permitting a third deposition of both Plaintiffs because of ongoing discovery infractions.

[8] Plaintiffs conveniently omit *DR Distributors, LLC v. 21 Century Smoking, Inc*. from their list of purported "inapt" precedent because the *DR Distributors* Court ordered sanctions while also finding "former defense counsel [did not] intentionally destroy[], with[hold], or hid[e] ESI." *Id* at 884.

9

after repeated representations that their productions were complete. Defendants promptly supplemented their production upon learning about the non-privileged memorandum and produced the document several months b*efore the close of discovery* and before most depositions had been completed—this does not compare to Plaintiffs' repeated actions of withholding information and **thousands** of documents from the production, falsely certifying the completion of discovery at least **six times**, and requiring Defendants to depose the Plaintiffs for a **fourth time**.

**A. Defendants are Prejudiced by Guster-Hines' Spoilation of Text Messages.**

Plaintiffs assert that Defendants have the entire universe of responsive text messages between the Plaintiffs. However, it is not possible to verify this assertion because there was no opportunity to compare the messages between Plaintiffs' devices prior to spoliation occurring. Moreover, neither party will ever know what messages existed between Guster-Hines and others. Indeed, Guster-Hines testified she was unable to recall whether she texted anyone from her personal cellular device regarding her asserted claims. *See* Ex. M, GH Deposition III Tr. 72:5-22.

Plaintiffs' assertion that Guster-Hines did not intentionally delete responsive messages is implausible because Guster-Hines also testified that she owned the same phone (i.e., an iPhone) from 2013 to 2022, then acquired an upgraded model of that phone in 2022; but would have this Court believe that she somehow failed to recognize that her phone automatically deleted messages. *See Id.,* GH Deposition III Tr. 17:19-18:7; 37:8-16. In fact, when Guster-Hines previous counsel alerted her in 2021 to the fact that the settings on her phone were causing messages to be deleted, she testified that she took no affirmative steps to investigate how to change those settings, or to recover her deleted text messages. *See Id.,* GH Deposition III Tr. 50:20-51:2. Counsel also did not take any steps to alert Defense counsel of the spoliation, never corrected their written discovery responses attesting that text messages had been collected and did not take any steps to recover Guster-Hines' texts. *See* Ex. N, Guster-Hines Responses to Defendants' First Set of Document Requests No. 2. One can only assume that Plaintiffs hoped that their destruction of potential evidence would never have come to light,

10

Further, Plaintiffs' presumption that no relevant text messages existed on Guster-Hines' McDonald's cellular device because Defendants have not produced any is undermined in the very next sentence in the Opposition, where Plaintiffs aver that Guster-Hines "viewed text messaging as immediate communication and would delete text messages on her work phone to keep the phone clear." (Opp. at 5). Not only does such an admission highlight Guster-Hines' tendency to intentionally delete text messages, but Plaintiffs effectively encourage the Court to reward spoliation by asserting that Defendants' failure to provide evidence of missing responsive text messages on Guster-Hines' work phone is somehow indicative of none existing on her personal phone. If the Court were to adopt Plaintiffs' logic, then all a party would need to do to avoid sanctions is allow the deletion of responsive text messages, while preserving favorable text messages, and then claim that all undeleted messages are representative of the entire universe of responsive documents. That is precisely what occurred here. (Ex. U of Motion) (Dkt. No. 536-21). Finally, Guster-Hines cannot avoid responsibility by claiming she followed her counsel's instructions and relied on them to produce all relevant information because the "remedy for bad legal advice lies in malpractice litigation against the offending lawyer." *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006) ("Yet bad legal advice does not relieve the client of the consequences of her own acts. A lawyer is the client's agent, and the client is bound by the consequences of advice that the client chooses to follow").

## IV. Plaintiffs' Continued Discovery Misconduct Warrant Sanctions.

It is clear that Plaintiffs do not take their discovery obligations seriously based on their cavalier statement in the Opposition that "there is nothing particularly unusual about what has happened here." (Opp. at 1). *Everything* about what has happened here is unusual. Given the countless misstatements and numerous representations that Plaintiffs have produced all responsive documents only to subsequently find out that was not the case leaves Defendants unsure at this point as to whether they have all responsive documents and/or whether Plaintiff is purposely withholding documents that might undermine aspects of their case or support Defendants' defense.

11

Courts determine the appropriate sanctions for a party's fault based on a review of the "entire procedural history of the case." *Davidson v. Evergreen Park Cmty. High Sch. Dist. 231*, No. 15 C 0039, 2016 WL 6892882, at *3-4 (N.D. Ill. Nov. 23, 2016). As reconfirmed by Plaintiffs' cases cited in their Opposition, courts in the Seventh Circuit impose discovery sanctions "when ***a party displays willfulness, bad faith, or fault***." See *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005) (emphasis added). Courts deem a party's conduct as "fault" when it is "objectively unreasonable behavior," like the conduct displayed here. *Davidson*, 2016 WL 6892882, at *3. After more than six hearings before the Court where the parties addressed varying issues regarding Plaintiffs' fact discovery, Plaintiffs' belated productions *after the close of fact discovery* on October 16, 2023, and repeated false confirmations from Plaintiffs that their production was complete, significant sanctions, including dismissal and an award of Defendants' fees and costs, are warranted.

Plaintiffs assert that the proper response to their belated production should be a "limited" re-deposition. (Opp. at 8). Such a remedy is inapt to address the Plaintiffs' deficiencies. After four years of navigating through Plaintiffs' discovery misconduct (at significant expense and delay to Defendants), Defendants have attempted to address various instances of misconduct by re-deposition only; notwithstanding, Defendants have continued to be prejudiced by Plaintiffs' practices. *See Hamilton v. Ill. Dep't of Hum. Servs.*, No. 21 C 6373, 2023 WL 1980119, at *6 (N.D. Ill. Jan. 27, 2023), *report and recommendation adopted*, No. 21 C 6373, 2023 WL 1988359 (N.D. Ill. Feb. 13, 2023*)* (dismissing case where plaintiff continued to break promises that discovery was complete and plaintiff's long patterns of delays and disregard of basic discovery obligations). Enough is enough.

In support of their proposed remedy, Plaintiffs rely on *G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 323 F.R.D. 67 (D.D.C. 2017). This case, however, is factually distinguishable and not binding or persuasive. In *G & E Real Estate Inc.*, a plaintiff's counsel inadvertently produced 16,000 native documents that counsel understood were previously produced by the plaintiff's prior

12

counsel in a non-native format. *Id.* at 69-70. In applying the District of Columbia Circuit's high burden to issue sanctionable conduct and ordering the reopening of discovery to address the 16,000 belated-produced documents, the Court determined that it must find "clear and convincing evidence of misconduct" in order to apply a "severe sanction[]" like dismissal of the case. *Id.* at 70.

This high standard does not apply here as the Seventh Circuit has expressly rejected that a court's dismissal of a case for sanctionable conduct *has* to be established by "clear and convincing evidence." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016) ("[t]he interests implicated by the dismissal of a suit as a sanction for misconduct occurring in civil litigation (including discovery) are not so important as to demand that the facts underlying the dismissal be established by clear and convincing evidence.")

Instead, courts in the Seventh Circuit review sanctionable conduct under the lesser preponderance of evidence standard and are authorized to "use their discretion to impose the appropriate sanctions —up to dismissal—to penalize and discourage parties' misconduct." *Zollicoffer v. Gold Standard Baking, Inc.*, No. 13 CV 1524, 2019 WL 13470556, at *4 (N.D. Ill. Jan. 16, 2019) (issuing monetary sanctions and excluding belated evidence due the discovery lapses of failing to preserve, disclose and produce relevant evidence three years after first obtaining the material). Applying the appropriate standard to the continuing egregious nature of Plaintiffs' misconduct clearly support issuing sanctions against Plaintiffs.

## CONCLUSION

For these reasons and as set forth in the Motion, Defendants respectfully request that the Court grant Defendants' Motion and the requested relief referenced within.

Dated: February 7, 2025

Respectfully submitted,

| */s/ Nelson M. Hua* | */s/ Nigel F. Telman* |
|---|---|
| Desirée F. Moore | Nigel F. Telman |
| Daniel J. Hayes | Edward C. Young |

13

| | |
|---|---|
| Nelson M. Hua<br>Venable LLP<br>227 W. Monroe Street, Suite 1900<br>Chicago, Illinois 60606<br>Phone: 312-820-3400<br>Fax: 312-820-3401<br>DMoore@Venable.com<br>DJHayes@Venable.com<br>NMHua@Venable.com<br><br>Allison B. Gotfried<br>Venable LLP<br>151 West 42nd Street<br>New York, NY 10036<br>Phone: 212-307-5500<br>Fax: 212-307-5598<br>ABGotfried@Venable.com<br><br>*Attorneys for Defendant Stephen Easterbrook* | Proskauer Rose LLP<br>70 W Madison, Suite 3800<br>Chicago, IL 60602-4342<br>Phone: 312-962-3548<br>Fax: 312-962-3551<br>ntelman@proskauer.com<br>eyoung@proskauer.com<br><br>Atoyia S. Harris<br>Proskauer Rose LLP<br>650 Poydras Street, Suite 1800<br>New Orleans, LA 70130<br>Phone: 504-310-2027<br>Fax: 503-310-2022<br>aharris@proskauer.com<br><br>*Attorneys for Defendants McDonald's Corporation, McDonald's USA, LLC, Christopher Kempczinski and Charles Strong* |

**ATTORNEY CERTIFICATION OF WORD COUNT**

I HEREBY CERTIFY that this Reply In Further Support Of Defendants' Motion For Sanctions And Motion To Compel contains 4,949 words, excluding the case caption, title, tables of contents or authority, and signature blocks. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Reply

Dated: February 7, 2025
       Chicago, Illinois

                                              */s/ Edward C. Young*
                                              Edward C. Young

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 7, 2025, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF System, and notice was provided to All Counsel of Record.

*/s/ Edward C. Young*
Edward C. Young