IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Victoria Guster-Hines and ) | |
| Domineca Neal, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 20-cv-00117 |
| v. ) | |
| ) | Magistrate Judge Laura K. McNally |
| McDonald's USA, LLC, et al. ) | |
| ) | |
| Defendants. ) | |

<u>ORDER REGARDING MOTION TO COMPEL AND FOR SANCTIONS</u>

Defendants have moved to compel and for sanctions against Plaintiffs for discovery violations regarding their production of documents. (Dkt. 536.) For the reasons stated herein and discussed at length at the hearing on February 13, 2025, Defendants' motion to compel is granted, and the motion for sanctions is granted in part.

I.  BACKGROUND

The Defendants' motion was prompted by Plaintiffs' November 11, 2024 disclosure that they had discovered a group of potentially-responsive documents that had been collected by prior counsel but never reviewed or produced. This disclosure came more than a year after the close of fact discovery.

From the inception of this case in January 2020 through February 2023, Plaintiffs were represented by Carmen Caruso of Carmen D. Caruso Law Firm and Linda Chatman of Chatman Law Offices. In January 2023, members of Loevy & Loevy filed appearances on behalf of Plaintiffs, and a few weeks later, Judge Rowland granted Mr. Caruso's and Ms. Chatman's motions to withdraw.

By the time the Caruso/Chatman team withdrew, discovery was well underway. Indeed, there were already more than 300 docket entries, and the parties had jointly persuaded the Court to extend fact discovery from May 2022 to July 2022 to September

1

2022, and then to a period in 2023 after the change in counsel. When the Caruso/Chatman team withdrew, everyone was operating under the belief that Plaintiffs had completed their production of documents.

In June 2023, Judge Finnegan set the close of fact discovery to a date proposed by the parties: October 16, 2023. (Dkt 343.) The first clear sign of trouble with the adequacy of the Plaintiffs' document production arose only a month later, in July 2023, when Plaintiffs' counsel attempted to use a Bates-numbered text message from Plaintiff Neal during a deposition of a McDonald's executive. McDonald's counsel alerted Plaintiffs' team that those text messages had never been produced in discovery. In the months of investigation and discussions that followed, the Loevy team disclosed that it had learned that the Caruso/Chatman team had failed to produce responsive Bates-numbered text messages to Defendants. By September 2023, Plaintiffs had supplemented their production with more than 500 additional text messages.

The parties continued their productions, and fact discovery closed on October 16, 2023, except for a few remaining depositions due by December 15, 2023. (Dkt 382.) Unfortunately, the Parties' unfolding discovery disputes made these dates once again impossible. It is beyond the scope of this ruling to catalog the motions, cross-motions, amendments, and disclosures that took up the next calendar year. Those disputes ultimately led the Court to order both Plaintiffs to sit for a third deposition. (Dkt. 522.)

In her third deposition, Plaintiff Guster-Hines disclosed that the auto-delete feature on her text messaging application had led to the loss of some unknown number of otherwise responsive text messages. Defendants were able to examine Plaintiffs about the missing texts. Ultimately, the text messages between the two Plaintiffs were separately recovered from Plaintiff Neal's device. Defendants did not seek leave to issue subpoenas to any of the other individuals who were identified as recipients of the deleted text messages.

Plaintiff Neal's deposition the next day led to the revelation of an entirely separate problem with the Plaintiffs' discovery compliance. During that deposition, Plaintiff Neal referenced an obviously responsive letter (the "Pena Document"), and she confirmed that she had delivered that letter to her prior counsel. Following the deposition, Defendants asked Plaintiffs' counsel to identify that document in their production. Over the next six weeks, the parties exchanged a long series of emails about this simple request. Finally, on November 11, 2024, Plaintiffs disclosed that in researching the location of the Pena Document, they had learned that there was a cache of 7916 documents that prior counsel had collected but never reviewed for

responsiveness. Plaintiffs further disclosed that at least some of these documents were responsive to Defendants' discovery requests.

The parties then embarked on nearly a month of correspondence and meetings to figure out a path ahead. More than a year had passed since the nominal close of fact discovery, and more fundamentally, at least some of these documents were more than three years overdue. During that month of negotiations, the Parties reached agreement that the Plaintiffs would each sit for a fourth deposition, although the Parties did not agree on the duration of those depositions.

Throughout November and December 2024, Plaintiffs represented that they were working to finish their review of the newly discovered documents, and they did provide supplemental productions on November 19 and December 2, 2024. During this same time period, however, there were several occasions in which Plaintiffs promised productions by certain dates and then failed to meet those dates. With no agreement on the final production date or the consequences for this untimely discovery, on December 10, 2024, Defendants filed docket entry 536: Motion for Sanctions, Motion to Compel and Request for Expedited Briefing Schedule.

Although the Plaintiffs were forecasting that they would complete their review and production in December, this Court gave the Plaintiffs until January 17, 2025 to complete their review and production of responsive documents. (Dkt. 545.) The Court also ordered Plaintiffs to serve a final privilege log and certification of completeness by January 24, 2025. (*Id.*) On January 14, 2025, Plaintiff asked for a one-week extension on the production deadline, which the Court granted, making everything (documents, log, and certification) due on January 24, 2025. (Dkt. 552.)

On January 24, 2025, Plaintiffs served their final supplemental document production, along with a final privilege log and certification. Between November 11, 2024 and January 24, 2025, Plaintiffs had reviewed 9369 documents (up from the 7916 originally identified), from which they had produced 1790 new documents.

The certification of completeness included the following language: "Plaintiffs hereby certify that that have complied with the Court's order and all responsive, non-privileged documents within the relevant timeframe have been produced and corresponding privilege logs served on Defendants as of January 24, 2025." (Dkt. 553.) In their Opposition brief to Defendants' motion for sanctions and to compel filed that same day, Plaintiffs disclosed more information about the time period limitation:

> Plaintiffs produced all responsive, non-privileged documents within the "Relevant Time Period" as framed by McDonald's, in an effort to ensure thoroughness. See Exhibit 19 (Def.'s Resp. & Supp. Resp. to Pl.'s Supp. Rogs.) The "Relevant Time Period" is: "(i) from March 5, 2019 to January 7, 2020 for Plaintiffs' remaining disparate treatment, hostile work environment, retaliation, and disparate impact claims asserted under Title VII; (ii) from September 22, 2015 to July 16, 2021 for Plaintiffs' remaining disparate treatment, hostile work environment, and retaliation claims asserted under Section 1981; and (iii) the applicable limitation periods for damages associated with Plaintiffs' claims asserted under Title VII and Section 1981." Defendants have disputed that timeframe as applicable to these productions, and the Parties have exchanged correspondence regarding the dispute.

(Dkt. 555 n.3.)

The Court held a hearing on Defendants' motion on February 13, 2025. At that hearing, Plaintiffs confirmed that they had withheld otherwise-responsive documents based on the "Relevant Time Period" restriction. Plaintiffs also confirmed that none of their responses to Defendants' document requests had ever asserted an objection based on the applicable time period, nor had they previously disclosed to Defendants that they would be limiting their production to this date range.

Following the hearing, Plaintiffs discovered yet another cache of documents that should have been produced. As they disclosed in a supplemental filing on February 14, 2025, (Dkt. 569) Plaintiffs had learned that their e-discovery vendor had accidentally failed to include 328 documents in the set to be reviewed and produced by January 24, 2025. None of the counsel supervising the review process noticed this error. Plaintiffs reported to the Court that they had completed their review of those documents by February 14, 2025 and would be producing 148 responsive documents that day.

II. ANALYSIS

The Court must now determine the consequences for this set of discovery errors. As discussed below and at the February 13, 2025 hearing, Plaintiffs are ordered to complete production of documents and make themselves available for depositions relating to the newly-disclosed documents. Plaintiffs' current counsel[1] are also ordered

---

[1] The Court takes no position on whether the Loevy team can or should seek reimbursement from the Caruso/Chatman team.

to reimburse Defendants for the fees and costs associated with the motion to compel and for the deposition costs that are duplicative of costs incurred in earlier depositions. Certain other requests for sanctions are denied without prejudice because they seek rulings about the use of legal theories or specific evidence at trial. Finally, certain requests for other fees and costs are denied.

> A. Final Production of Documents and Updated Privilege Log

As discussed at the February 13, 2025 hearing, Plaintiffs must supplement their document production. First, to the extent not already completed, they must produce all responsive, non-privileged documents from the set that the e-discovery vendor overlooked. (*See* Dkt. 569.) Second, they must produce all responsive, non-privileged documents that were withheld because they were dated outside the so-called Relevant Time Period. While a date range objection might have made sense if it had been timely asserted, the deadline for that objection passed several years ago. Any time period limitation was thus forfeited.

If any documents are withheld on the basis of any privilege, Plaintiffs must also provide an updated privilege log. Finally, Plaintiffs must file a certification of completion on the docket. The due date for the documents, the log, and the certification is **February 21, 2025.**

> B. Supplemental Depositions

In Docket Entry 565, the Court asked the Defendants to specifically identify any depositions they seek regarding the newly disclosed documents. The Defendants identified three groups of potential deponents: (1) the Plaintiffs; (2) individuals to be named after the Plaintiff depositions; and (3) prior counsel.

> 1. *Plaintiff Depositions*

Defendants ask for the opportunity to depose each Plaintiff for up to seven hours regarding the newly produced documents. (Dkt. 566.) Plaintiffs agree to sit for another deposition but offer only one hour per person. (Dkt. 567.)

As discussed at the February 13, 2025 hearing, the Court agrees that another round of Plaintiff depositions is warranted. As for the duration of these depositions, the Court cannot conclude that one hour is sufficient. In its discretion, the Court determines that the seven-hour limitation found in Rule 30 should apply here.

The Plaintiffs may be asked about the new documents, as well as matters that relate to the new documents. In other words, Defendants need not limit their questions

to the specific new documents, but they must be able to articulate a connection between areas of inquiry and the new productions. The Court anticipates that Defendants might not need the full seven hours to explore these productions. Nevertheless, the Defendants are given up to seven hours to conduct their examinations.

The Court is optimistic that the parties will be able to complete the remaining depositions without the need for additional motion practice. Should disputes arise regarding scope or instructions not to answer, the parties may contact chambers and ask for the Court to hear the dispute during a break. The Court will make every effort to accommodate such requests. To do so, the parties may call Courtroom Deputy White or the Chambers number listed on the Northern District of Illinois website, or email Chambers_McNally@ilnd.uscourts.gov.

These depositions must be completed by **March 7, 2025**.

### 2. *Additional Depositions, To Be Identified Later*

Defendants ask for the opportunity to depose additional individuals, to be identified after the Plaintiffs' depositions. (Dkt. 566.) The Court denies this request. Defendants were ordered to specifically name potential deponents by February 11, 2025. (*See* Dkt. 565.) The opportunity to add names is now closed.

The Court recognizes, however, that more documents will be produced, and the Plaintiffs might say unexpected things in their upcoming depositions. If Defendants believe that either of these sources reveal that further depositions are truly necessary, they may file a motion that reveals the specific basis for seeking those additional depositions. Leave will be granted only if the basis is found exclusively in the deposition answers or in the documents produced after January 24, 2025.

### 3. *Prior Counsel Depositions*

Defendants seek the deposition of Plaintiffs' prior counsel Carmen Caruso and Linda Chatman "in order to confirm the representations Plaintiffs make in their Opposition brief as to why the newly-produced documents were not produced in a timely manner before the close of discovery." (Dkt. 566.) This request is denied. The Court understands the desire to better understand how we got here, but the parties all have enough work to do to get this case ready for trial (or meaningful settlement discussions). In its discretion, the Court does not believe that depositions of prior counsel will materially advance those goals.

C.      Evidentiary Limitations on the Use of Newly Produced Documents

Defendants seek a ruling prohibiting Plaintiffs from using the newly produced documents at trial but not limiting their own use of those same documents. This motion is denied without prejudice to Defendants' ability to raise this request before Judge Rowland as a motion in limine. The rulings herein are designed to minimize any prejudice to Defendants that may have resulted from the late disclosure. At this time, the Court finds that Defendants have not shown irreparable prejudice from the delay. It may be, however, that the upcoming final productions and depositions change that conclusion. Defendants will be free to raise this issue with Judge Rowland.

D.      Concession of After-Acquired Evidence Affirmative Defense

Defendants seek a ruling that the Plaintiffs are precluded from opposing Defendants' after-acquired evidence affirmative defense because, they say, the new documents provide further evidence supporting this defense. This motion is denied. Defendants may of course use the new evidence to support their affirmative defense to the degree they see fit, but the weight of such evidence will not be addressed as a sanction for a discovery violation.

E.      Adverse Inference Regarding Text Messages

Defendants seek an adverse inference instruction to address the alleged spoliation caused by the auto-deletion of Plaintiff Guster-Hines's text messages. This motion is denied without prejudice to Defendants' ability to raise this request before Judge Rowland as a motion in limine.

This Court finds that Defendants have not established they are entitled to an instruction under Federal Rule 37(e)(2), which requires a showing that the responding party acted with the intent to deprive another party of the information's use in the litigation. Defendants may seek an instruction under Rule 37(e)(1), which requires that the sanction for failure to preserve be no greater than necessary to cure the resulting prejudice. In the Court's discretion based on the information known to date, Defendants have not established that they have been so prejudiced by the auto-delete that the only possible remedy would be an adverse inference instruction.

F.      Attorney-Client Privilege Waiver

Defendant seeks a ruling that privilege has been waived as to all documents that did not appear on a timely privilege log (*i.e.*, all documents in the new production). The Court does not find good cause for this request, and it is denied.

G.  Fees and Costs

Defendants seek fees and costs for a variety of different tasks. The Court grants some but denies others, as discussed below.

1.  *Fees for Time Spent Preparing for and Attending Plaintiffs' Depositions*

Defendants seek fees and costs relating to Plaintiffs' upcoming depositions. The Court grants this motion, but only to the extent that those fees and costs are duplicative of fees or costs that were previously incurred in the first three depositions. The goal here is to only capture "do-over" costs.

If Defendants need to pay additional court reporter set-up fees, or there are travel or hosting costs that would not have been charged had the production been timely, those fees may be submitted for reimbursement.

But as discussed above, the Plaintiffs' depositions should not be covering terrain already explored in earlier depositions. These depositions are limited to the new production. Accordingly, the fees and costs for the deposition examinations will not be charged to Plaintiffs.

2.  *Fees for Time Spent Reviewing New Document Productions*

For the same reason, Defendants' request that they be reimbursed for time spent reviewing the Plaintiffs' supplemental production is denied. These fees would have been incurred if the production had been timely, and the delay alone is not a sufficient reason to shift the financial burden of that review.

3.  *Fees for Time Spent Briefing the Motion to Compel*

Finally, the Court addresses Defendants' request for fees and costs relating to the motion to compel. That motion is granted.

Plaintiffs argue that they should not be compelled to pay fees because the overwhelming bulk of the documents at issue could have been found on McDonald's own server, and therefore, they argue, McDonald's was not prejudiced. The Court disagrees. First, even Plaintiffs admit that there are documents in the new production that were never on any McDonald's server.

Second, Federal Rules of Civil Procedure define discoverable information by looking to materials in the responding party's possession, custody, or control. There is no corollary rule about materials in the requesting party's possession, custody or control.

It may be that had Plaintiffs objected to the initial requests on the basis that they sought materials equally available to both parties, the two sides could have either reached agreement or sought relief from the Court. But that did not happen, and there very well might have been strategic reasons for the Plaintiffs not to highlight that they had emailed company documents to their personal accounts. Instead, Plaintiffs filed responses that made no mention of any such limitation. Accordingly, Plaintiffs cannot now justify their failure to comply with discovery by pointing to McDonald's internal server.

Plaintiffs argue that they should not have to pay fees and costs because as replacement counsel, they were entitled to have trusted prior counsel's representation that the document productions were complete. Ordinarily, that would be so, but as discussed above, there were plenty of red flags in the record suggesting that prior counsel had not been thorough, starting most obviously with the text messages that were numbered but never produced. This Court concludes that although it is a close call, the Court will not impose a sanction on replacement counsel on the theory that they should have redone Caruso/Chatman's discovery responses to ensure completeness.

Had Plaintiffs fully complied with the order to complete the entire supplemental production by January 24, 2025, this Court would not have ordered payment of fees for the motion to compel. The relief would have been limited to additional discovery to neutralize, as much as possible, prejudice caused by the untimely disclosure. But as discussed at the February 13, 2025 hearing, Plaintiffs failed to comply with the Court's order. First, they unilaterally restricted their January 24, 2025 production to documents falling within the so-called Relevant Time Period. For that reason alone, the Court concludes that Plaintiffs did not satisfy the December 22, 2024 order. (Dkt. 545.) And second, although this was not yet known at the February 13, 2025 hearing, their review had missed a group of 328 documents still needed to be reviewed, of which 148 were responsive. Fees are warranted.

Accordingly, Defendants may seek reimbursement of fees and costs associated with briefing connected to the motion to compel, except as limited below. Specifically, Defendants may seek reimbursement of fees related to the work reflected in Docket Entries 535-541, 545-546, 550-569, and any related hearings.

Defendants are not entitled, however, to the portion of fees relating to the text message auto-deletion argument, which is separate from the late-production issue.

Defendants' request for relief relating to the auto-deletion issue was not granted, and accordingly, fees are not appropriate.

Defendants may submit their itemized petition for fees and costs by **March 21, 2025.** That petition may include a very modest sum for compilation of the fee petition.

### H. Consequences, in Summary

In summary, Plaintiffs are ordered to complete their document production and serve an updated privilege log and certification by February 21, 2025. Each Plaintiff is ordered to sit for another deposition, to be completed by March 7, 2025. Defendants may file a fee petition that is consistent with this order by March 21, 2025.

### III. LOOKING AHEAD

Turning to the scheduling matters discussed at the end of the hearing on February 13, 2025, any motion to compel relating to attorney-client assertions at depositions taken by Plaintiffs must be filed by February 28, 2025.

Regarding experts, Plaintiffs have submitted their expert disclosures. Plaintiffs' experts shall be deposed by April 4, 2025. Defendants' experts must make their disclosures by May 9, 2025, and those experts shall be deposed by June 13, 2025.

So ordered.

DATED: 2/19/2025

Laura K. McNally

United States Magistrate Judge