IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Victoria Guster-Hines and | ) | |
| Domineca Neal, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 20-cv-00117 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| McDonald's USA, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

ORDER REGARDING MOTION FOR LEAVE TO TAKE LIMITED REDEPOSITION
OF GRACE SPEIGHTS REGARDING DEFENDANTS' INVESTIGATION

Plaintiffs have moved for leave to take a limited redeposition of Grace Speights regarding her investigation of Plaintiff Guster-Hines. (Dkts. 581, 582.) For the reasons discussed below, this motion is denied.

I.    BACKGROUND

This is not the first time the Court has been asked to rule on Ms. Speights' investigation of Plaintiff Guster-Hines (the "Guster-Hines Investigation"). In November 2023, Plaintiffs filed a Motion In Support of Overriding Assertions of Attorney/Client Privilege by the McDonald's Defendants and Grace Speights of Morgan, Lewis & Bockius LLP. (Dkts. 390, 391.) In that motion, Plaintiffs argued that the Guster-Hines Investigation was not privileged, or if it were, that privilege was waived when Defendants produced a memorandum from Ms. Speights to Chief People Officer Melissa Kersey (the "Guster-Hines Memo"). In that document, Ms. Speights shared certain non-privileged conclusions from the Guster-Hines Investigation.

Almost exactly one year ago, on March 5, 2024, Judge Finnegan ruled on Plaintiffs' motion (Dkt. 472), and the Court assumes the reader is familiar with that detailed order. In short, the Court concluded that the Guster-Hines Investigation was privileged, and that privilege had not been waived. Despite this privilege, Dkt. 472

permitted Plaintiffs to re-depose Ms. Speights for the limited purpose of addressing the admittedly non-privileged Guster-Hines Memo. Specifically, Dkt 472 stated:

> Since Defendants did not waive the attorney-client privilege as to the Guster-Hines investigation, Plaintiffs' broad request to re-depose Speights and Quintiliano about the subject matter of that investigation is denied. There is no dispute, however, that Defendants only recently produced the Guster-Hines Memo. Defendants may not plan on using the memo in this case, but that does not preclude Plaintiffs from asking questions about the document. Accordingly, Plaintiffs will be allowed to conduct a supplemental deposition of Speights of up to 2 hours to inquire about the contents of the Guster-Hines Memo.

Judge Rowland affirmed this ruling at Dkt. 529.

Ms. Speights' limited supplemental deposition proceeded on December 12, 2024. (Dkt. 582-3.) In that deposition, Defendants objected to nearly every substantive question and instructed the witness not to answer. The overwhelming number of those objections were based on attorney-client privilege or the work product doctrine, and many also prompted an objection that the questions went beyond the limited scope permitted by Dkt. 472. The parties certified those questions for later review by this Court.

Plaintiffs now move for a ruling on certified questions from that December 2024 deposition. The specific questions at issue can be found at Dkt 582-7.

II.     ANALYSIS

The Court starts, as it must, with the March 5, 2024 order. (Dkt. 472.) This order recognized that Ms. Speights conducted a single investigation of Ms. Guster-Hines, and that investigation produced the non-privileged Guster-Hines Memo as well as certain privileged materials unrelated to the instant motion. The Court held that by sharing certain HR-focused observations in the Guster-Hines Memo, neither Defendants nor Ms. Speights had waived the legal privilege that applied to the investigation more generally. The Court emphasized in its ruling that Defendants were not relying on the Guster-Hines Memo in their defense of this case, nor had they otherwise put the Memo at issue.

The distinction between the privileged investigation and the non-privileged Guster-Hines Memo led the Court to place a critical scope restriction on the supplemental deposition: Plaintiffs would be permitted to ask about "the contents of"

2

the Guster-Hines Memo, but the underlying investigation's privilege remained undisturbed.

In the supplemental deposition, Plaintiffs asked questions focused on understanding how Ms. Speights had come to her conclusions in the Guster-Hines Memo. These questions related to the scope of Ms. Speights' assignment, the nature of her analysis, the sources of information contained in the memo, the dates and times of interviews with people named in the memo, and the grounds for her conclusions.

There are two problems with these questions: privilege and scope. The Court's order at Dkt. 472 was unequivocal in holding that the Guster-Hines Memo derived from a privileged investigation. Accordingly, all of the questions that sought to examine the derivation of the Guster-Hines Memo unavoidably asked about privileged activities. Defendants were within their rights to refuse to answer those questions.

The second problem is scope. Dkt. 472 only permitted questions about "the contents of" the Guster-Hines Memo. Defendants interpret "contents" in a four-corners sense. Plaintiffs, on the other hand, interpret "contents" to include the context from which those contents arose. They argue, "Clearly, the scope of that deposition was not merely to have Ms. Speights read the words she had memorialized on the page." (Dkt. 581, 582 at 6.)

On a blank slate, Plaintiffs' interpretation of the scope limitation could be colorable. But Dkt. 472's reasoning and structure make clear that the scope limitation was designed to serve a single, specific purpose: protecting the privilege. Accepting Plaintiffs' interpretation would necessarily authorize an invasion of the very privilege the Court recognizes in the preceding 15 pages of Dkt 472. The Court will not apply Dkt. 472 in such a self-contradictory manner.

Plaintiffs were not, as they suggest, forced to simply ask Ms. Speights to recite her memorandum. A perfect example of a permissible content-based question appears at 43:21 of the deposition. After directing the witness to specific wording in the Guster-Hines Memo, counsel asked "What did you mean by that?" This question drew no objection, and properly so. The question addressed the Guster-Hines Memo's content, and it did not require invasion of the privilege. Such questions would have been entirely within the bounds of Dkt. 472.

When debating the scope objection at the deposition, Plaintiffs' counsel asserted, "I do not believe [Judge Finnegan] thought we would just sit here and have Ms. Speights read the literal words written on the page, and she could only answer

3

questions that comported with something literally written on the page because that's not a two-hour deposition." (Dkt. 581-3, 582-3 55:20-25.) Of course, permitting Plaintiffs two hours did not require Plaintiffs to take a two-hour deposition. Given the history of disputes between the parties in this case, however, Judge Finnegan could well have believed that two hours would be required to allow for all of the discussion and objections that would inevitably arise. (After all, the deposition that did proceed took an hour and 17 minutes, even though very few questions were answered.) In the end, the Court will not interpret Judge Finnegan's generosity in allotting time as a reason to disregard the plain meaning of Dkt. 472's scope limitation.

The scope limitation also precludes the several certified questions that drew a scope limitation but no privilege objection. These questions asked the witness to compare language in the Guster-Hines Memo with a different memo from the same date addressing Plaintiff Neal. To the extent the questions were seeking to determine whether written text is identical in the two documents, there is no prejudice to Plaintiffs in being precluded from asking the witness this question at a deposition. The answers are ascertainable by anyone who can read English. But if these questions were the first in a line of questions that would have explored inferences that could be drawn from such identical language, those questions would have been outside the scope limitation; inferences are not contents.

For those reasons, the motion is denied.

\* \* \*

A final word on the conferral obligation. Plaintiffs plainly did not confer with Defendants as required by Local Rule 37.2 before filing their motion. The day before the court-ordered deadline for filing, Plaintiffs sent an email asking Defendants if they intended to stand on their asserted objections or if they would be available for a video conference the following day. The parties were not able to schedule a meaningful conference before the deadline.

This was not an emergency motion. The topics in dispute became apparent during the early minutes of the December 12, 2024 deposition, and the deadline for this motion was announced on February 13, 2024. The filing deadline simply does not provide a basis for failing to satisfy Local Rule 37.2, which requires phone, video, or in person conferences on all disputed discovery matters (and all other disputed matters, per the McNally Standing Order available on the Court's website).

Going forward, the Court will strike motions that fail to reflect the conferral required by Local Rule 37.2, even if doing so will cause a motion to be untimely and thus not considered.

So ordered.

March 3, 2025

Laura K. McNally

United States Magistrate Judge