IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-00117 |
| v. | ) ) ) | Honorable Mary M. Rowland |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG, | ) ) ) ) ) ) ) ) ) | Magistrate Judge Laura K. McNally |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANTS' LATE-DISCLOSED WITNESS & FACTS**

Under Federal Rules of Civil Procedure 26 and 37, along with Local Rule 16.1, Plaintiffs Victoria Guster-Hines and Domineca Neal, by and through their counsel, respectively move this Court to bar Defendants[1] from using or relying on both (a) the declaration of (or any testimony from) Brian Czerwinski, and (b) the contradictory facts in the late-filed declaration of Luis Quintiliano. Both were disclosed, for the first time, over seven months *after* the written discovery deadline. As a result, Defendants should be prohibited from using this witness or these facts at summary judgment or trial.

---

[1]  For purposes of this motion, which applies equally to all Defendants, Plaintiffs simply refer to the collective Defendants as "Defendants" or "McDonald's."

## INTRODUCTION

Fact discovery has been closed for over *seven months*. Dkt. 528; Dkt. 529.[2] Despite that closure, and McDonald's insistence that *Plaintiffs* abide by their obligations to disclose any responsive information in their possession—which Plaintiffs have done—McDonald's belatedly disclosed a brand-new fact witness, Brian Czerwinski, who wrote a declaration full of new facts relevant to this case and that McDonald's was clearly in possession of during that period of fact discovery. On the same day, McDonald's also produced a "sham affidavit" from Luis Quintiliano, which also tried to introduce new facts into the case by contradicting his previous deposition testimony.

McDonald's cannot introduce a new witness or facts after discovery is closed, especially when McDonald's had *five years* to make these disclosures, including disclosing Mr. Czerwinski as a witness relevant to executive compensation—an issue raised from the outset of the case. Under Rules 26 and 37, courts can bar a party from using any "information or witness" that was not timely identified during discovery. And under the "sham affidavit" rule, courts routinely bar the same when parties try to smuggle in new (and contradictory) facts from a witness on the eve of summary judgment.

---

[2] Even the more recent discovery by Plaintiffs was fully produced over two months ago, and the Court admonished the Parties that "Discovery is closed. Fact discovery is closed, and we will move to experts." 3/12/25 Tr. at 35:1-2 (attached as **Exhibit L**). Indeed, in response to the Court's question, "otherwise am I right that now we can say fact discovery is over? Unless some other rock reveals something very unexpected, are we done," Defendants responded, "Yes, I would say yes, Your Honor[.]" *Id.* at 33:3-9.

That's exactly what McDonald's is trying to do here. Just two weeks ago, Plaintiffs had no idea who Czerwinski was—or that apparently, he is a McDonald's employee with relevant information about Plaintiffs' damages or documents produced on November 12, 2021. The same goes for Quintiliano. Despite being identified in 2021, sitting for a deposition in 2023, and McDonald's opposing a second limited deposition of Quintiliano in 2024, McDonald's *still* wants to use a new affidavit to change his story. The Court should reject this attempt to end-run discovery and bar McDonald's from using Czerwinski (in any capacity) or Quintiliano's long-overdue "sham affidavit" at summary judgment or trial.

## BACKGROUND

This case is about McDonald's racial discrimination and retaliation against Plaintiffs—two African American women and high-achieving executives. *See* Third Am. Compl. ("TAC"), [94] ¶¶1–2. After having "front row seats" to McDonald's systematic racism from 2015 to 2019, *see* TAC ¶¶86–87, Plaintiffs expressed their concerns to Defendants and offered positive solutions, *see, e.g., id.* ¶¶89–91. For their efforts, McDonald's demoted Plaintiffs and reduced their standing in the company. TAC ¶¶95, 103–09. And when McDonald's eventually learned about the substance of this lawsuit, it summarily fired Plaintiff Domineca Neal on February 28, 2020. TAC ¶¶120–22. That retaliation happened more than *five years ago*.

Since then, Plaintiffs and Defendants have exchanged several rounds of disclosures during a long and contentious discovery process. Defendants served their initial disclosures on August 23, 2021. *See* Defs.' Initial Discl. (attached as

3

**Exhibit A**). Brian Czerwinski was not included in these disclosures. Defendants then amended their disclosures twice—once in 2022 and again in 2023. *See* Defs.' Am. Discl. (attached as **Exhibit B**); Defs.' 2d Am. Discl. (attached as **Exhibit C**). Despite identifying at least forty new witnesses along the way, Czerwinski was never included in any disclosure from McDonald's. By the end of discovery, Plaintiffs didn't know that Czerwinski even existed, much less that he was somehow a relevant McDonald's employee with information that would be used in an attempt to undermine Plaintiff's claim for damages.

Nor would Plaintiffs have any reason to think Czerwinski (or the information in his declaration) existed. Back in 2021, Plaintiffs gave McDonald's their damages calculations. *See* **Exhibit D** (Plaintiff's Initial Discl.). Those calculations included Plaintiffs' projected promotions and commensurate salaries, including into the role of Executive Vice President, or "EVP." *See id*. Around the same time, Plaintiffs served McDonald's with discovery requests that specifically asked for documents that refuted Plaintiffs' damages calculations. In response, McDonald's said that they were not in possession of any such documents. *See* Disc. Resp., Req. Nos. 105 and 106 (attached as **Exhibit E**). That position did not change during discovery. Additionally, Plaintiff produced NEAL_04512, an internal McDonald's document listing different "job bands" within the company, on November 12, 2021, which Plaintiff intended to use to support their damages calculations. *See* Czerwinski Decl., at Ex. A (attached as **Exhibit F**) (showing the different bands, such as "G10 Senior Leadership" and "G 8-9 Leadership"). Indeed, before fact discovery closed, McDonald's never produced

4

any responsive documents to those requests, nor did it put forward any factual evidence challenging the "job bands" document. *See* Dkt.589 (confirming that fact discovery had closed). It comes as no surprise, then, that Plaintiffs' compensation expert eventually relied on the document in her report, which was created and produced to McDonald's after fact discovery ended.

But then, on May 16, 2025, McDonald's identified Czerwinski. *See* Exhibit F (Czerwinski Decl.) at ¶3. McDonald's disclosed Czerwinski (through his declaration) to inject several new facts into the case. Through Czerwinski, McDonald's now says that the "job bands" document that Plaintiffs relied on is, in fact, *not* used by McDonald's. Exhibit F (Czerwinski Decl.) at ¶5. McDonald's also uses Czerwinski to provide new facts about McDonald's alleged organizational structure, *id.* ¶¶6, 9–10, how McDonald's sets salary ranges and prepares compensation, *id.* ¶7, and how McDonald's conducts some market analysis to determine salary bands, *id.* ¶8. Czerwinski also claims that "the only EVP role within McDonald's USA is the position of President," *id.* ¶9, despite the fact that Defendant Kempczinski himself testified that he joined McDonald's as an "EVP of innovation and development" prior to becoming McDonald's president, and former Chief People Officer Melissa Kersey testified that her supervisor was the executive vice president, or EVP, for the global human resources office. *See* Kempczinski Dep., at 11:9-16 (attached as **Exhibit G**); *see also* Kersey Dep. at 21:17-22:1 (attached as **Exhibit H**). Czerwinski also provides new information about how McDonald's pays certain high-level employees, *id.* ¶10, despite McDonald's claiming during discovery that it would *not* provide such

5

information to Plaintiffs. *See* McDonald's USA, LLC's Obj. & Resp. to Plaintiff's First Set of Interrogatories, Resp. to No. 22 (attached as **Exhibit I**).

None of these facts—both new and contradictory—were disclosed during the previous *five years* of litigation. Instead, Plaintiffs first learned about Czerwinski and the alleged facts in his declaration a mere two weeks ago, well after fact discovery closed.

Also on May 16, 2025, McDonald's produced a new declaration from Luis Quintiliano. Quintiliano Decl. (attached as **Exhibit J**). Quintiliano was already deposed in this matter and the subject of a re-deposition, which Defendants opposed.[3]

Given that Quintiliano had been deposed already, Plaintiffs were surprised to review a declaration with new and contradictory facts. For instance, back in 2023, when Quintiliano sat for his deposition, he was asked whether he received complaints about Domineca before he recommended terminating her. *See* Quintiliano Dep. at 155:1-157:9 (attached as **Exhibit K**). In response, Quintiliano could not remember whether any specific person complained about Domineca before he recommended firing her to his boss, Charlie Strong. *See id.* at 156:3-4 ("A: I don't remember who did when[.]"); 156:19-157:3 (confirming that he couldn't say who, if anyone, came to him and complained about Domineca before his call with Strong). But in his new

---

[3] In late 2023, Plaintiffs sought to override Defendants' assertion of privilege over certain questions asked to Quintiliano and Speights during their depositions, and sought to redepose both individuals as to their knowledge of the Morgan Lewis investigation into Plaintiff Guster-Hines. Dkt. 390. Defendants argued in opposition to this Motion, opposing a redeposition of Quintiliano relative to Speights' investigation into Guster-Hines. Dkt. 410. A redeposition of Quintiliano relative to Plaintiff Neal was never requested in Plaintiffs' Motion, and was never a subject to any extension of the December 15, 2023 closure of fact discovery. Dkt. 424; Dkt. 528.

declaration, Quintiliano says the opposite about the timing: "Prior to giving my recommendation to Mr. Strong, employees expressed concerns to me about working with Ms. Neal and the poor treatment they were experiencing from Ms. Neal." *See* Exhibit J (Quintiliano Decl.) ¶4.

Similarly, Quintiliano's declarations about Domineca's "coaching" contradicts his previous deposition testimony. During his deposition, Quintiliano said he had no recollection of a meeting between another colleague, Lorelie Parolin, and Domineca about the outcome of the coaching. *See* Exhibit K (Quintiliano Dep.) at 188:17-25. But now, in his declaration, Quintiliano says he did have this conversation on August 27, 2019—including that "Parolin received an additional complaint about Ms. Neal from another employee." Exhibit J (Quintiliano Decl.) ¶10. Quintiliano's declaration also contradicts his prior testimony about the improvements he saw in Domineca through the coaching process, which he now claims didn't exist "[n]otwithstanding the coaching provided." *Compare* Exhibit K (Quintiliano Dep.) 218:25-219:21, *with* Exhibit J (Quintiliano Decl.) ¶7.

In sum, McDonald's created two deficient declarations months after discovery ended. One includes a previously unknown witness with brand new facts; the other includes contradictions from a witness that wants to change his story before summary judgment. As explained below, the Court should bar the use of both.

## ARGUMENT

Under Rule 26(a), parties are required to disclose, among other things, "the name of each individual likely to have discoverable information . . . that the

7

disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). This disclosure must happen early during the litigation, typically before discovery even begins. Fed. R. Civ. P. 26(a)(1)(A). Parties retain the duty to supplement their disclosures throughout discovery. Fed. R. Civ. P. 26(e)(1).

The purpose of Rule 26's disclosure requirement is simple. As the Supreme Court put it, the Rule makes "trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958). To the Court (or anyone) in the 1950s, "blind man's bluff" was a childhood game where one player was blindfolded before trying to catch and identify the other players. That game of surprise is exactly what Rule 26 (and Local Rule 16.1) is designed to prevent. *See* Local Rule 16.1(4) ("discovery must be *completed* before the discovery closing date") (emphasis original). Anything less would relegate litigation to "a game of 'gotcha,'" where parties are left guessing about what witnesses or facts they might find at trial. *See BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *3 (N.D. Ill. Feb. 20, 2018) (citation omitted).

To police this rule, Rule 37 allows courts to bar a party from using any "information or witness" that was not timely identified during discovery. *See* Fed. R. Civ. P. 37(c)(1); *see also Finwall v. City of Chicago*, 239 F.R.D. 494, 498 (N.D. Ill. 2006) (collecting Seventh Circuit cases). That exclusion is usually "automatic and mandatory," *Finwall*, 239 F.R.D. at 498 (citing *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005)), especially where, as here, the court would have to reopen

8

discovery if it wanted to allow the aggrieved party to depose the new witness or investigate the new facts. *Id.* at 499. Indeed, if a party could force the court to reopen discovery simply by introducing new facts or witnesses after discovery has closed, it would allow the party violating the rules "to usurp the handling of the case" and it would effectively swallow the rules altogether. *Id.* at 499; *see also id.* at 501 ("Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery."). Instead, the appropriate remedy for late disclosure is to exclude the new witness or facts from use in any summary judgment motions or at trial. *See* Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 16(f).

Exclusion orders of this kind are routine within the Seventh Circuit. For instance, this Court precluded the use of an affidavit at summary judgment when the party failed to produce the witness during the seven-month discovery window. *Aon Risk Servs., Inc. of Ill. v. Shetzer*, No. 01 C 7813, 2002 WL 1989466, at *2 (N.D. Ill. Aug. 27, 2002) (citing *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1024 (7th Cir. 1991)). And in a racial-discrimination case, an affidavit was excluded at summary judgment because the affiant "was not disclosed as a witness in [the party's] disclosures or discovery response." *Austin v. Auto Handling Corp.*, No. 1:18-cv-82, 2023 WL 5985133, at *4 (N.D. Ind. Sept. 12, 2023) (quoting *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 768 (7th Cir. 2020)); *see also Finwall*, 239 F.R.D. at 498–99.

Rule 37 also tracks the "sham-affidavit rule." Generally, at the summary-judge stage, a party is allowed to use "[a]n affidavit or declaration [ ] to support or oppose a motion." Fed. R. Civ. P. 56(c)(4). But in doing so, "every federal court of appeals

9

permits a judge to disregard a 'sham' affidavit," *James v. Hale*, 959 F.3d 307, 315–16 (7th Cir. 2020) (collecting cases), which is an affidavit "that contradicts the party's prior deposition or other sworn testimony." *Id.* at 316. That rule makes sense in the context of Rule 26 and Rule 37. Just like a party can't rely on a new witness that was never disclosed during discovery, a party can't rely on a witness's new story that was never disclosed during discovery. In both situations, the Rules prohibit a party from trying to smuggle a new witness or information into the case *after* the discovery deadline. *See James*, 959 F.3d at 315–16; *Finwall*, 239 F.R.D. at 498–99.[4]

But that is exactly what McDonald's is attempting to do here. As described above, *supra* pp. 4–7, McDonald's had five years to disclose any witness or fact it wanted. But despite all that time, it never disclosed Czerwinski or the information he purports to share. Thus, Czerwinski, and any information or testimony he provided, should be excluded completely from summary judgment and trial. Plus, at this late stage, with discovery ending seven months ago and briefing on dispositive motions starting soon, the Court should not reward McDonald's failure to follow the Rules by allowing it to reopen discovery. *See Finwall*, 239 F.R.D. at 499–501. As Judge Cole explained, "It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will. Nor is it the prerogative of the

---

[4] The Seventh Circuit has recognized three exceptions to the sham affidavit rule: (1) an affidavit that contradicts prior testimony but contains newly discovered evidence; (2) a statement that contradicts a statement in a deposition if the statement is "demonstrably mistaken;" and (3) an affidavit that clarifies ambiguous deposition testimony. *James v. Hale*, 959 F.3d 307, 317 (7th Cir. 2020). None of those three exceptions apply here to admit McDonald's attempt to contradict Quintiliano's prior testimony.

violator to require his victim to accept his largesse in the form of allowing discovery to proceed after the deadline set for the close of discovery by the court." *Ibid.*

The same goes for Quintiliano. During his deposition (and through years of discovery), he answered questions one way. Did you receive complaints about Domineca before you suggested firing her? Can't say. Did you have conversations about Domineca's coaching with Parolin? No recollection. Did Domineca improve after her coaching? Yes, she was. *See supra* pp. 6–7. But now, Quintiliano wants to change his story. According to his declaration, he did receive complaints before wanting to fire her. He did have a specific conversation with Parolin on a specific date. And Domineca did fail to improve "notwithstanding" her coaching. *See* Quintiliano Decl. ¶¶4, 7, 10. The Court should see this change of heart for what it is—a "sham"—and bar McDonald's from using Quintiliano's new testimony during summary judgment or at trial. *See Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 956 (7th Cir. 2024) ("[C]ourts may disregard affidavits that add new factual details not previously disclosed in deposition testimony when those details seek to undo the effects of the prior testimony[.]"); *Hickey v. Protective Life Corp.*, 988 F.3d 380, 389–90 (7th Cir. 2021) (describing the proper exclusion of an affidavit in a slip-and-fall case when the witness "disclaimed knowing precisely what the object was" that caused the fall in her deposition, although she did provide some "commentary on its physical nature," but then, later in her sham affidavit, "she was much more specific" about the object); *id.* at 390–91 (concluding that an affidavit was a "sham" affidavit when it purported to remember, contrary to the deposition, the timing of an alleged

11

job offer); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) ("The concern in litigation, of course, is that a party will first admit no knowledge of a fact but will later come up with a specific recollection that would override the earlier admission.").

Plaintiffs anticipate that Defendants may try to mitigate their violations of the Rules by arguing that these declarations were submitted so late because Plaintiffs produced additional documents in the fall and winter of 2024–25. But any such argument, should Defendants try to make it, should be easily dismissed as both a distraction and an attempt to shift the blame to Plaintiffs because, as the declarations themselves show, Defendants do not reference any of the recently produced information in these belated disclosures. What's more, given the length of time since the closure of fact discovery in this case (which was needed to tie up loose ends), it is particularly egregious that McDonald's waited until nearly the closure of expert discovery to disclose a new witness and attempt to fix Quintiliano's deposition testimony from back in 2023.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court, pursuant to Federal Rules of Civil Procedure 26 and 37, bar the testimony of Brian Czerwinski in any capacity, and exclude the contradictory facts in Luis Quintiliano's declaration that was provided long after discovery ended.

Dated: June 2, 2025.   RESPECTFULLY SUBMITTED,

By: /s/ *Heather Lewis Donnell*

Jon Loevy
Heather Lewis Donnell

>Meg Gould
>LOEVY & LOEVY
>311 N. Aberdeen St., 3rd Fl.
>Chicago, IL 60607
>T : 312-243-5900
>F : 312-243-5902
>jon@loevy.com
>heather@loevy.com
>gould@loevy.com
>
>*Attorneys for Plaintiffs*

## Local Rule 37.2 Certification

Plaintiffs certify that, on June 2, 2025, prior to filing this motion, they conferred by phone and by videoconference with Defendants and were unable to resolve their dispute without the Court's assistance.

>/s/ Heather Lewis Donnell
>Attorney for Plaintiff