IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | ) ) ) |
| Plaintiffs, | ) Case No. 1:20-cv-00117 ) |
| v. | ) Honorable Mary M. Rowland ) |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation, STEVEN EASTERBROOK, CHRISTOPHER KEMPCZINSKI, and CHARLES STRONG, | ) Magistrate Judge Laura K. McNally ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO QUASH NON-PARTY SUBPOENAS**

Plaintiffs Victoria Guster-Hines and Domineca Neal respectfully ask the Court to deny Defendants' Motion to Quash Non-Party Subpoenas. Dkt. 627. Plaintiffs' subpoenas ask for standard documents from Defendants' experts, of which they have had notice for weeks. For those reasons and the following reasons, the Court should deny Defendants' Motion and order Defendants' experts to respond to the subpoenas.

**Background**

1. Defendants hired three experts in this case, Julia Moore, Wayne Guay, and Canetta Reid. Depositions of those experts occurred on June 3, 2025, June 5, 2023, and June 13, 2025, respectively.

2. In advance of those depositions, Plaintiffs sent Defendants document subpoenas for their experts, requesting that Defendants advise if they would accept

service on behalf of the experts. This occurred on May 28, 2025. *See* Ex. A (5/28/25 O. Toppel Correspondence). Defendants' Motion is wrong about this date. Dkt. 627 ¶1. Plaintiffs did not receive a response to that email.

3. Plaintiffs' narrow subpoenas ask for standard and relevant documents. Specifically, Plaintiffs included eleven requests that covered just four topics, including (i) documents, materials, or notes related to their opinions and the case (*see, e.g.*, Dkt. 627-1 ¶¶1-2, 9-10); (ii) documents related to their compensation and retention (*id.* ¶¶3-5); (iii) a list of their previous expert cases (*id.* ¶6); and (iv) non-privileged communications related to the case (*id.* ¶¶ 7-8, 11).

4. For one of these topics—compensation—the Court has already ordered Defendants to provide compensation information for their experts. *See* Ex. B (agreed upon proposed order sent to the Court following a June 3, 2025, call with the Court, during which the Court granted Plaintiffs oral motion for these materials).

5. On June 2, 2025, Plaintiffs conferred with Defendants regarding the expert subpoenas. Contrary to Defendants' representation, during this conferral Defendants could not provide an answer as to whether they were, or were not, going to represent their experts in connection with these subpoenas; they simply represented they were not authorized to do so at that time. Plaintiffs advised that they had not attempted direct service on the experts given the Defendants' lack of response as to representation. During that meet-and-confer, Defendants indicated that they intended to object to the subpoenas. Plaintiffs agreed to move the return date of the subpoenas to June 12, 2025, so that the Parties could confer prior to any

motion practice. Ex. C (6/2/2025 H. Lewis Donnell Correspondence). Plaintiffs asked for confirmation as to whether Defendants intended to represent the experts regarding the subpoenas. *Id.*

6. Defendants did not respond to Plaintiffs' June 2, 2025, correspondence.

7. After waiting multiple days for a response to Plaintiffs' request for confirmation whether Defendants were representing the experts in connection with the subpoenas, and receiving none, Plaintiffs sent the subpoenas to the experts by certified and electronic mail on June 4, 2025. On June 4, Plaintiffs notified counsel for Defendants via telephone that they would be serving the experts via certified mail and emailing a courtesy copy to two experts for whom they had emails. Plaintiffs copied McDonald's counsel on those emails. *See* Ex. D (6/4/25 O. Toppel Correspondence); Ex. E (email to Guay with subpoena and rider); Ex. F (Email to Moore with subpoena and rider).

8. On June 12, Plaintiffs confirmed service of Mr. Guay's subpoena by certified mail and Ms. Moore's refusal of service. *See* Ex. G (6/12/25 O. Toppel Correspondence); *see also* Ex. H (Defendants' counsel confirming that Ms. Reid would accept service at her deposition). Plaintiffs' counsel personally served Ms. Reid at her deposition on June 13, 2025.

9. Defendants provided their objections to Plaintiffs at approximately 3:00 p.m. on June 12, 2025. Plaintiffs made themselves available to promptly meet-and-confer as to Defendants' objections. At that meet-and-confer, Defendants' counsel

3

represented that they did not have authority to assert objections on behalf of their experts.

10. Now, after an unsuccessful meet and confer, Defendants asked the Court to quash the subpoenas. The Court should deny the Motion.

## Analysis

11. To start, Defendants lack standing to challenge the subpoenas because, as they have insisted, the subpoenas are directed to their non-party experts, not Defendants. *See* Dkt. 627 ¶2. Finding otherwise would let Defendants have their cake and eat it, too. That's why, as this Court has put it: "The law is clear that generally, a party does not have standing to quash a subpoena to a non-party." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013). Rather, "it is usually up to the non-party to bring its own motion to quash." *Id.*

12. None of the experts filed their own motions to quash. For this reason alone, the Court should deny Defendants' Motion.

13. Still, Defendants say they have standing to move to quash the subpoenas under *Roman v. City of Chicago*, No. C 1717, 2023 WL 121765 (N.D. Ill. Jan. 6, 2023). Defendants are wrong about *Roman*'s application here.

14. To be sure, "a party has standing to quash a non-party subpoena if it 'infringes upon the movant's legitimate interests.'" *Roman*, 2023 WL 121765, at *2 (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)). But that means Defendants must have a "legitimate interest" to challenge the non-party subpoena, such as "asserting work product or attorney-client privilege, interference with

4

business relationships, or production of private information about the party that may be in the possession of a third party." *Id.* (collecting cases). Defendants recognize this limitation in their own parenthetical describing *Roman*. *See* Dkt. 627 ¶7.

15. Defendants claim that four reasons support their request to quash the subpoenas. *See* Dkt. 627 ¶¶8(a)-(d). None of these reasons, however, implicate a "legitimate interest" of Defendants as required.

16. Start with the "100 miles" rule. Defendants claim that the subpoenas violate Rule 45(d)(3)(A)(ii) because their experts would have to send the documents to Plaintiffs' counsel in Chicago, "which is in excess of 100 miles from Experts' locations." Dkt. 627 ¶8(a). That is not an objection that impacts Defendants' legitimate interests. And this Court has explicitly agreed with this reasoning when denying a party's motion to quash a non-party's subpoena. *Parker*, 291 F.R.D. at 186 (Judge Leinenweber describing *Square D Co. v. Breakers Unlimited, Inc.*, No. 1:07-cv-806, 2009 WL 1702078 (S.D. Ind. June 11, 2009) ("[The party] did not have standing to raise [the 100-mile] issue on behalf of the non-parties, and the motion to quash was denied.")).

17. Even if Defendants could quash a non-party's subpoena under the 100-mile rule, Defendants are wrong about the rule's application. First, the Subpoenas are directed to the experts' locations, not the Proskauer office in Chicago. *See* Dkts. 627-1, 627-2, 627-3. Second, the Subpoenas seek production of documents and information in the possession of the experts themselves. Defense counsel has repeatedly emphasized that they do *not* represent the experts, and therefore they are

5

not acting as the agents of the experts here. Thus, the scope of the subpoena is limited to the information in the *experts'* possession. That does not implicate information solely in the possession of Defendants' counsel. *See* Dkt. 627 ¶8(a). (Of course, it *does* implicate information shared with the experts by defense counsel that is now in the experts' possession by virtue of electronic or other access.)

18. Further, if Defendants are seeking to quash the subpoenas because of some geographic non-compliance with Rule 45, then their motion is misplaced. "[T]he court in which compliance is required under Rule 45(c) is the court in the district within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person." *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017); *Dou v. Carillon Tower/Chicago LP*, No. 18 CV 7865, 2020 WL 5502345, at *2 (N.D. Ill. Sept. 11, 2020) ("[S]ubpoena-related disputes must initiate in the court where compliance is required"). These disputes should have been initiated in the locations in which compliance is required, rather than in the Northern District of Illinois. That's why this objection belongs to the experts themselves, not Defendants.

19. Finally, should the Court deem this the proper venue to dispute compliance with the subpoena, Defendants' statement that this Court has held that accepting production of documents via email "does not permit non-compliance with Rule 45(c)" is utterly misleading. *See* Dkt. 627 at 3 n.2 (relying on *Dou*). In *Dou,* while the court noted that compliance by email is not expressly an exception to Rule 45(c)'s 100-mile radius rule, it explained that the court still "has the inherent authority to

modify subpoenas issued from this district." *Dou*, 2020 WL 5502345, at *2 (citing cases). As a result, the Court granted Plaintiffs' request to modify their subpoena to allow their representative to retrieve any responsive documents from the subpoenaed entity's out-of-radius office, noting that "[s]imilar modifications have been allowed by courts in this circuit." *Id.* (citing *In re: Subpoena Upon Nejame Law, PA.*, No. 16-cv-4619, 2016 WL 3125055, at *3 (N.D. Ill. June 3, 2016); *Ott v. City of Milwaukee*, 274 F.R.D. 238, 242 (E.D. Wis. 2011) (requiring an agent of a serving party to travel to a non-party's offices to retrieve copies of documents)). Thus, should this Court find the same issue present here, then Plaintiffs request the relief sought and granted in *Dou*. That would resolve any hypothetical problem with Rule 45. Defendants present no reason why this Court cannot grant that relief.

20. Next, Defendants raise service issues about the subpoenas. *See* Dkt. 627 ¶8(c). Not only were many of these claimed issues a product of Defendants' own making by refusing to state whether they represented their experts or not, but this objection, too, fails to raise a "legitimate interest" of Defendants. *Parker*, 291 F.R.D. at 187 ("Relevance, burden or service objections fall to the subpoena's recipient to make.") (collecting cases).

21. Third, Defendants say the subpoenas are overly broad for their experts to respond to. But that interest (again) runs only to the experts—not Defendants. *See Kessel v. Cook Cnty.*, No. 00 C 3980, 2002 WL 398506, at *2 (N.D. Ill. Mar. 14, 2002) (explaining that "relevance, burdensomeness and over breadth . . . objections

7

properly lie with the subpoenaed party, and not with [a party]"); *see also Parker*, 291 F.R.D. at 187 (same).

22. Even if Defendants could raise an overly broad objection on behalf on a non-party, Plaintiffs' requests are not overly broad nor unduly burdensome. For example, Defendants consider it burdensome for their experts to list the cases they've been a part of for the last ten years. *See* Dkt. 627 ¶8(c). But that conclusory statement (a) cannot meet Defendants' heavy burden, *see Willaims v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (explaining that the objecting party must "specifically detail" and establish why a request is overly broad or burdensome) (citations omitted); and (b) contradicts the testimony of their experts, where Ms. Moore said she maintains a list of her old cases, Ms. Reid has *never* been a disclosed expert before (so there is no list), and Dr. Guay remembered specific details about his testimony in old cases. More simply, replying to this simple request is not overly broad or burdensome, much less unduly so. The same is true for Plaintiffs' request for communications relating to this case. *See* Dkt. 627 ¶8(c). That request, of course, is a standard discovery request that is limited in time and scope.

23. Finally, Defendants argue that the subpoenas ask for "duplicative" material. Once again, this does not implicate a "legitimate interest" of Defendants. *See Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 WL 2974083, at *5 (N.D. Ill. Apr. 17, 2023) (rejecting a "duplicative" objection by a party because "it is for the subpoena recipient, not the party to the litigation" to make this evaluation); *Parker*, 291 F.R.D. at 187 (same).

8

24. Even if the subpoenas were duplicative *and* Defendants could properly raise this objection, Plaintiffs already told Defendants that they are willing to confer with the experts to determine which aspects of their production, if any, may be duplicative of Defendants' prior production. Plaintiffs' willingness to confer, however, does not excuse the experts from complying wholesale with the subpoenas. Plus, Defendants' characterization of what information is "duplicative" is misleading. *See* Dkt. 627 ¶8(d). Defendants seem to claim that they have produced "all documents and communications . . . relating to their civil case." *Id.* But Plaintiffs have not received *any* production of communications with Defendants' experts; no pre-retention communications, no communications between Dr. Guay and the individuals whom he testified assisted him in preparing his report (or the other experts with their teams); and no non-privileged communications with counsel. *See, e.g.*, Dkt. 627-1 ¶¶7-8, 11. Put simply, any "duplicativeness" objection is both legally and factually wrong.

25. In sum, Defendants lack standing to challenge the subpoenas on the grounds stated in their motion. And even if Defendants did have standing for those reasons, they are also wrong on the merits.

26. Finally, Defendants' Motion transitions to attacking Plaintiffs. *See* Dkt. 627 ¶¶ 9-11. The Court should ignore these ad hominem attacks out-of-hand. To the extent they deserve a response at all, Plaintiffs gave Defendants notice weeks in advance of the expert discovery deadline (*see* Dkt. 627 ¶11), and since then, the Court had to both (a) order Defendants to produce some of the requested information (*see*

*supra* ¶4), and (b) excluded Defendants' late-disclosed witness (*compare* Dkt. 624, *with* Dkt. 627 ¶¶9-10).

## CONCLUSION

WHEREFORE, Plaintiffs respectfully ask the Court to deny Defendants' Motion to Quash Non-Party Subpoenas.

Dated: June 13, 2025.   RESPECTFULLY SUBMITTED,

By: /s/ *Brian A. Morris*

Jon Loevy
Heather Lewis Donnell
Meg Gould
Brian Morris
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
T : 312-243-5900
F : 312-243-5902
jon@loevy.com
heather@loevy.com
gould@loevy.com
morris@loevy.com

*Attorneys for Plaintiffs*