**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VICTORIA GUSTER-HINES and DOMINECA NEAL, | ) | |
| Plaintiffs, | ) | Case No. 1:20-cv-00117 |
| v. | ) | Honorable Mary M. Rowland |
| McDONALD'S USA, LLC, et al., | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS'**
**MOTION TO EXCLUDE TESTIMONY OF DR. WAYNE GUAY**

Plaintiffs Victoria Guster-Hines and Domineca Neal, by and through their counsel, submit their reply in support of Plaintiffs' Motion to Exclude Testimony of Dr. Wayne Guay. Dkt. 642 & 646 (under seal version of motion to bar Dr. Guay). The Court should grant the motion to exclude and bar Guay from offering his testimony related to promotion uncertainty and risk-free discount rate and from relying on the [redacted] Declaration.

**ANALYSIS**

Defendants are correct that Plaintiffs are not disputing Dr. Guay's credentials or moving to bar his testimony in its entirety. Plaintiffs are only moving to bar the portions of Dr. Guay's testimony that do not rest on a reliable methodology, contradict with legal restrictions on damages calculations, and would be used to admit testimony that has been excluded from the case. In an effort to support their arguments, Defendants rely on an incorrect legal argument that rebuttal experts do not have to "articulate a reliable methodology and demonstrate that [they have] reliably applied that method." Dkt. 700 at 4-5. As set forth below, even in attacking

another expert's opinion, a rebuttal expert still needs to apply a reliable method to do so. Dr. Guay has failed to do this for certain opinions; accordingly, the Court should bar those opinions.

## I. Rebuttal experts must apply reliable methods to attack expert opinions

Defendants' response largely rests on an incorrect legal argument that Dr. Guay is subject to a less stringent standard of the Court's gatekeeping role under Rule 702 and *Daubert*. The Defendants' argument lacks merit. To begin, the cases cited by Defendants do not stand for the proposition that a rebuttal expert does not need to reliably apply a reliable methodology to attack an expert's report. Dkt. 700 at 4-5. Rather, the cases they cite explain that a rebuttal expert is not required to "perform independent studies." *Dennis v. Andersons, Inc.,* No. 20-CV-4090, 2024 WL 4433471, at *4 (N.D. Ill. Oct. 7, 2024), *objections overruled,* No. 20 C 4090, 2024 WL 5127313 (N.D. Ill. Dec. 17, 2024).

Similarly, Defendants cite *Noffsinger v. The Valspar Corp.,* No. 09 C 916, 2011 WL 9795, at *6 (N.D. Ill. Jan. 3, 2011) for the notion that the "difference between an expert's testimony in a party's case in chief and in rebuttal is significant." Dkt. 700 at 4. However, *Noffsinger* also does not stand for the proposition that a rebuttal expert does not have to identify and use a reliable methodology. Rather, in that case, the court was analyzing whether experts were improperly disclosed as rebuttal experts in order to skirt a deadline for disclosure of affirmative experts. *Id.* The court explained that when a scheduling order allows rebuttal experts, a party may submit an expert report limited to contradicting or rebutting evidence on the same subject matter as a previously disclosed expert but may "not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Id.* This gives no support to the assertion that the reliability standards are different for rebuttal experts.

The same is true for the Defendants' reliance on *United States v. Grintjes,* 237 F.3d 876(7th Cir. 2001). In that case, the Seventh Circuit was analyzing whether a forgery expert was properly used as a rebuttal expert when the defendant argued that his testimony "was essentially a continuation of the government's case-in-chief." It found that the forgery expert was properly responding to evidence presented by the Defendant. *Id.* at 879. Significantly, the Seventh Circuit did not find or even discuss that a forgery expert offered in rebuttal did not have to disclose a reliable methodology for identifying forgery just because he was rebuttal expert.

In fact, in another case cited by Defendants, *Toyo Tire & Rubber Co. v. Atturo Tire Corp.,* No. 14-CV-00206, 2019 WL 7020654, at *2 (N.D. Ill. Dec. 20, 2019), *aff'd sub nom. Toyo Tire Corp. v. Atturo Tire Corp.,* No. 2022-1817, 2024 WL 4404358 (Fed. Cir. Oct. 4, 2024), this Court recently analyzed the admissibility of three experts' affirmative expert reports and rebuttal reports, applying the same three-part *Daubert* admissibility analysis for reach opinion. Dr. Guay's opinions on promotional uncertainty and risk-free discount rates should be barred because they do not meet prongs two and three of the *Daubert* test as explained below. Just as in *Toyo Tire*, the Court should review Dr. Guay's opinions proffered here with the same rigor as applied to Plaintiffs' experts.

## II. Dr. Guay does not explain the basis for promotion uncertainty as a reliable method or how he has applied it reliably

Both in their response and in Dr. Guay's report, Defendants and Dr. Guay defend his opinions as reliable because they are based on his "review of the Guster-Hines Report and the Neal Report and other materials in the record, my experience, and my professional judgement." Dkt. 700 at 6 (citing Dkt 700-2 (Guay Report)) at 4. While a rebuttal expert's opinions can "flow from his review of relevant literature, his expertise, experience and knowledge," the expert still needs to "sufficiently explain[] the underpinnings for his opinions" and how they "flow" from

this expertise. *Dennis*, 2024 WL 5127313, at *4. In *Toyo,* 2019 WL 7020654, at *2, relied upon by Defendants, this Court found that an expert's opinion was reliable because he explained that he analyzed the testimony in that case and reports in that field and "applied marketing principles from scholarly research articles." This Court reasoned that the expert was not "[t]alking off the cuff--deploying neither data nor analysis" or relying "solely or primarily on experience." *Id.* (citing *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) and Fed. R. Evid. 702, 2000 Advisory Committee Notes). In contrast, in this case Dr. Guay does not explain how "promotional uncertainty" and its application to Kucsma's analysis is based on his "experience and professional judgment." He cites a few articles for the idea that promotions can be harder to obtain the higher that someone rises in a company. However, he does not explain how Kucsma's calculations that Guster-Hines would be promoted to VP-GM in 2015, to SVP in 2018, and to EVP in 2022 and that Neal would be promoted to Field VP in 2018, SVP in 2020, and EVP in 2025 are incorrect. These calculations build in more time to reach the highest positions.

Dr. Guay's opinion on promotion uncertainty falls short of another case cited by Defendants, *Olson v. Gomez,* No. 18 CV 2523, 2024 WL 3455066, at *14 (N.D. Ill. July 18, 2024), because there the expert "identifie[d] the source materials he viewed in conducting his forensic assessment." In contrast, Dr. Guay does not cite any research, materials, or parts of his own experience that support his opinion on promotion uncertainty. Instead, he cites only articles about the decrease of promotional opportunities at higher levels and pyramid organizational structures at companies like McDonald's. Dkt. 642-1 (Guay Report) at 10. None of this is in dispute and does not require expert testimony. Kucsma's calculations are based on higher up positions within McDonald's pyramid organizational structure, positions for which Plaintiffs were qualified or would have been qualified if they did not receive differential treatment based

on race. Dr. Guay does not provide any research or basis for adding promotional uncertainty.

Defendants do not point to any case that supports the use of "promotion uncertainty" in calculating damages for failure to promote or by experts in damages calculations. Instead, Defendants cite to *Alexander v. City of Milwaukee*, 474 F.3d 437, 449 (7th Cir. 2007), in which the Seventh Circuit ruled that the "loss of a chance doctrine" should be applied to compensatory damages for failure to promote because without presenting evidence that they were the only candidates qualified for promotion or were far more qualified than other candidates, plaintiffs were not "entitled to an instruction that treated them as though they were the *only* qualified individuals." *Alexander v. City of Milwaukee,* 474 F.3d 437, 451 (7th Cir. 2007) (emphasis in original); *Biondo v. City of Chicago, Ill,* 382 F.3d 680, 688 (7th Cir. 2004) (jury calculated damages with 100% certainty that each of 15 plaintiffs would reach the rank of promotion rather than using the "loss of chance" method to calculate the probability that being held back cost the plaintiffs future promotions). Dr. Guay admitted that he was not an expert on the promotions schedule at McDonald's, did not do research on promotions at McDonald's, and did not talk to anyone about promotions at McDonald's. Dkt. 642-2 (Dr. Guay Dep.) at 203:12-204:2.

Here, Defendants can ask Kucsma about promotion uncertainty and the basis for her calculations at trial. They can also present evidence that other people were or would be entitled to the promotions in her calculations. What Defendants should not be able to do is submit an unsupported expert opinion that Kucsma's opinion is "unreliable and/or incomplete" because she did not add an unspecified risk for promotion uncertainty in addition to the years she added for each plaintiff to reach promotion. This is especially true, when as pointed out in the Plaintiff's motion, Dr. Guay admitted that it was not necessary to add promotion uncertainty into Kucsma's calculations. Dkt. 642-2 (Dr. Guay Dep.) at 204:3-19.

## III. Dr. Guay errs in attacking Kucsma's use of a risk-free discount rate

Dr. Guay opines that by using " a non-risk-adjusted—and hence lower—discount rate, Ms. Kucsma substantially overestimates the present value of Plaintiffs' lost future earnings." Dkt. 642-1 at 28. This opinion is misleading to the jury because it ignores Supreme Court law and exaggerates its findings.

First, as Dr. Guay admitted at his deposition that his opinion was based on "economic principles . . . not . . . court decisions." Dkt. 642-2 at 297:14-25. Because of this, Dr. Guay ignores the legal principle articulated in *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 537 (1983), that an injured worker "is entitled to a risk-free stream of future income to replace his lost wages; therefore, the discount rate should not reflect the market's premium for investors who are willing to accept some risk of default." Defendants incorrectly argue that Dr. Guay's opinion does not contradict *Pfeifer* because the case does not select "the exclusive method in all federal courts for calculating an award for lost earnings in an inflationary economy." *Id.* at 547. It is true that the Court does not proscribe a method for every case, but it does provide general guidance explaining that a trial court does not commit reversable error "if it adopts a rate between one and three percent and explains its choice." *Id.* at 548-49.

In this vein, Kucsma selected a rate with even slightly more risk than recommended in *Pfeifer:* a 3.25% rate for Ms. Guster-Hines and 3.5% rate for Ms. Neal. She explains that this is based on "after-tax yields on safe fixed income securities like U.S. Treasuries and high-grade municipal bonds." Dkt. 708-1 (Kucsma Neal Report at 22). This is appropriate under *Pfeifer* because it follows the rate for low-risk investments in the current market. Instead, Dr. Guay selected a rate of 7.36% based on the McDonald's weighted average cost of capital ("WACC") which he explains is the "rate of return that investors require on a portfolio of all of the company's outstanding debt and equity." Dkt. 642-1 (Guay Report) at 29 While this makes sense

from an economic perspective, it contradicts *Pfeifer* because it based the rate on that of investors willing to assume some risk. Further, Dr. Guay does not cite to any case or research to support applying this as the discount rate for courts to apply in calculating future wage/loss of income damages.

Defendants then argue that *Pfeifer* is limited to the Longshoremen's and Harbor Workers' Compensation Act, however, even the source cited by Dr. Guay,[1] Brush, Brian C., "Risk, Discounting, and the Present Value of Future Earning," Journal of Forensic Economics 16.3 (2003): 263-274 at 264 explains that beyond that statute, *Pfiefer* sets the standard in many other legal contexts and in a 1993 survey 82% of the members of the National Association of Forensic Economics used only U.S. government securities for discount rates.

Second, Dr. Guay's own calculations employing what he deemed a more appropriate discount rate - McDonald's weighted average cost of capital ("WACC") – only resulted in a 1% difference for Ms. Guster-Hines. This is hardly a "substantial overestimate," making Dr. Guay's opinion not only unsupported but overstated and thus misleading for a jury.

**IV. Defendants cannot use expert testimony to sidestep the exclusion of the late disclosed disclosure**

Defendants misrepresent the record when they argue that Magistrate Judge McNally "expressly permitted Guay to rely on the contents of the [redacted] declaration in forming his opinion." Dkt. 700 (Guay Response) at 3. Not so. The docket entry states that Defendants may not use [redacted] declaration or have him testify at trial or use the newly disclosed job-band

---

[1] Defendants argue that Dr. Guay's use of the "risk-free discount rate" is supported by citation to "multiple scholarly articles." Dkt. 642-1 (Guay Report) at 9. In actuality, Dr. Guay cited two scholarly articles, Brian C. "Risk, Discounting, and the Present Value of Future Earnings." Journal of Forensic Economics 16.3 (2003), and Jennings, William P., and G. Michael Phillips. "Risk as a Discount Rate Determinant in Wrongful Death and Injury Cases." Journal of Risk and Insurance (1989), and he includes no quotes or explanations for the latter.

documents in his declaration. Dkt. 624. Judge McNally stated that Dr. Guay could rely on this information to the extent permitted by Federal Rule of Evidence 703. To support using Dr. Guay's reliance on untimely evidence, Defendants rely on *Greene v. Sears Prot. Co.,* No. 15 CV 2546, 2018 WL 4716189, at *8 (N.D. Ill. Mar. 8, 2018), *report and recommendation adopted,* No. 15-CV-2546, 2018 WL 3104300 (N.D. Ill. June 25, 2018). However, in *Greene* Magistrate Judge Mason noted that the Court had not yet rule on whether the untimely evidence was admissible and explained "a later finding of inadmissibility may impact Hosfield's ability to testify about the document in support of his position, thus affecting the weight assigned to his opinions." *Id.* Similarly, in *Baker v. Obaisi,* No. 16 CV 7668, 2024 WL 1300484, at *12 (N.D. Ill. Mar. 27, 2024). Judge Pallmeyer explained that under Rule 703, an expert can only disclose inadmissible evidence to the jury if "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* at *12. The Court also explained, "the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence." *Id.* (quoting *Matter of James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992). In *Baker,* the Judge had also not yet determined whether the references to the inadmissible evidence would be admissible at trial but deferred that decision until after summary judgment. *Id.* Here, the Magistrate Judge has already deemed the [redacted] declaration and [redacted] documents inadmissible.

In attacking Kuczma's conclusions related to promotions, Dr. Guay states, [redacted] Dkt. 642-1 (Guay Report) at 13. His only support for this conclusion is [redacted] declaration. In his conclusion, relying again only on [redacted] declaration, Dr.

Guay states, "Again, it is my understanding that McDonald's no longer uses salary pay bands for Officer-level roles and thus Ms. Kucsma's assumption is inappropriate and inaccurate to actual McDonald's roles and compensation." Dkt. 642-1 (Guay Report) at 15. Thus, Defendants are impermissibly using Dr. Guay's report "as a vehicle for circumventing the rules of evidence." *Matter of James Wilson Assocs.,* 965 F.2d 160, 173 (7th Cir. 1992).

**Conclusion**

For the reasons set forth in Plaintiffs' motion and above, Plaintiffs respectfully seek an order from the Court granting their motion to bar certain opinions proffered by Dr. Guay.

RESPECTFULLY SUBMITTED,

**DOMINECA NEAL and VICTORIA GUSTER-HINES**

By: /s/ *Lindsay Hagy*

Jon Loevy
Heather Lewis Donnell
Brian Morris
Lindsay Hay
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607